**IN THE**
**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **CARLOS MANUEL AYESTAS,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| | § | |
| **-v-** | § | **USDC No. 4:09-cv-2999** |
| | § | |
| | § | |
| | § | |
| **RICK THALER,** | § | |
| **Director, Texas Department of Criminal** | § | |
| **Justice, Correctional Institutions Division** | § | **CAPITAL CASE** |
| | § | |
| **Respondent.** | § | |

# MOTION FOR THE APPOINTMENT OF AN INVESTIGATOR

TO THE HONORABLE JUDGE OF THIS COURT:

NOW COMES, Petitioner, Carlos Manuel Ayestas, whose real name is Denys Humberto Zelaya Corea ("Petitioner"), by and through the undersigned counsel, and files this Motion for Appointment of an Investigator, and respectfully would show the Court as follows:

## *I. Introduction*

1. Petitioner files this motion in accordance with 18 U.S.C. § 3599(f) and *McFarland v. Scott*, 512 U.S. 849 (1994). He is seeking authorization to retain the services of an investigator to assist his appointed counsel in the investigation of facts necessary to develop the claims within his federal post-conviction writ of habeas corpus.

2. On July 10, 1997, Petitioner was convicted of capital murder and sentenced to death in the 230th District Court of Harris County, Texas. The conviction stemmed from a 1995 capital murder of Santiaga Paneque. Petitioner has filed a petition for a writ of habeas corpus by a person in state custody under 28 U.S.C. § 2254.

3. Petitioner is seeking funding to retain a mitigation specialist to travel to Honduras to interview and obtain affidavits from identified individuals who have testimony relevant to a claim pending before this Court. To date, no person associated with Petitioner's case, from trial through appeal and in both state and federal habeas, has been to Honduras to investigate mitigation evidence. Additionally, Petitioner is seeking funding to continue an investigation into acquaintances of his who live in the Houston, Texas area. This investigation is reasonably necessary to show that the state habeas court's holding was an unreasonable application of clearly established federal law and that the court's fact findings were unreasonable; it is also necessary to enable Petitioner to rebut the state court fact findings with clear and convincing evidence. *See* 28 U.S.C. § 2254(d) & (e)(2).

## *II. Petitioner's Need for an Investigator to Develop Evidence is Reasonably Necessary under § 3599(f)*

*Legal Background*

4. The integral nature of investigative assistance in the context of federal post-conviction representation is well-recognized for the factual development of claims. *See McFarland v. Scott*, 512 U.S. at 854-57. A habeas petitioner is entitled to investigative assistance where such assistance is reasonably necessary. *Fuller v. Johnson*, 114 F.3d 491, 502 (5th Cir. 1997); *Cherrix v. Braxton*, 131 F. Supp. 2d 756, 762-63 (E.D. Vir. 2001).

> The statute does not define reasonable necessity. However, established habeas corpus and death penalty precedent suggests that Congress intended to provide prisoners with "all resources needed to discover, plead, develop, and present evidence determinative of their 'colorable' constitutional claims." . . . The

> determination of a habeas claim often depends on the full development of factual issues, and experts play an important role in the fact-finding process.

*Patrick v. Johnson*, 48 F. Supp. 2d at 646 (quoting J. LIEBMAN & R. HERTZ, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE, § 19.3 at 702 (3[d] ed. 1998) (reprinted in 1 J. LIEBMAN & R. HERTZ, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE, § 19.3 at 858-59 (5th ed. 2005) [hereinafter HERTZ & LIEBMAN). *See also Wingo v. Wedding*, 418 U.S. 461, 468 (1974) ("More often than not, claims of unconstitutional detention turn upon the resolution of contested issues of fact."). Because of the often times fact intensive nature of habeas proceedings, Congress and the federal judiciary have "insisted . . . that full development of determinative factual questions precede the final adjudication of habeas corpus claims," and, as a result

> federal courts have a "duty" to provide a particular fact-development procedure [as in this case, investigative assistance] whenever (1) "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief," and when (2) the fact-determining procedure in question is "indispensable to a fair, rounded, development of the material facts.'"

1 HERTZ & LIEBMAN, § 19.3 at 859-60 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969), and *Coleman v. Zant*, 708 F.2d 541, 547 (11th Cir. 1983)).

5. In assessing whether a request for funding under § 3599 is reasonably necessary, a court may consider various factors; however, case law dealing with funding requests are "very case-specific and the analyses fact-intensive." *Bradford v. Johnson*, 162 F. Supp. 2d at 579-80. The first and perhaps most important factor is whether the petitioner states a viable claim for relief. *Id.* at 580. *See also Powell v. Kelly*, 492 F. Supp. 2d 552, 557 (E.D. Vir. 2007); *Cherrix v. Braxton*, 131 F. Supp. 2d at 762-65 (discussing underlying merits of petitioner's constitutional claims as justifying funding request as reasonably necessary). This factor must take into account the limitations on review imposed by AEDPA under 28 U.S.C. § 2254. *See Powell*, 492 F. Supp. 2d at 557-58. A

second factor, which is related to the first, considers the specificity with which the petitioner states the request. *Bradford*, 162 F. Supp. 2d at 580. In other words, the petitioner must state specifically what is needed, why it is needed, and how the funding will be used if granted. *DeLong v. Thompson*, 790 F. Supp. 594, 617 (E.D. Vir. 1991) (on motion to alter or amend). Federal funding is not available for a "fishing expedition" to support what would otherwise be speculative claims. *Bradford*, 162 F. Supp. 2d at 580. *See also Fuller v. Johnson*, 114 F.3d at 502 (criticizing the petitioner for not pleading the need for funding with sufficient specificity). Finally, a third factor concerns whether the claim, even if viable on its face, is barred by procedural defenses that the respondent may raise, such as exhaustion or procedural default. *Id*. *See also Fuller*, 114 F.3d at 502 (noting that petitioner's claims would be procedurally barred absent a showing of cause and prejudice); *Patrick v. Johnson*, 48 F. Supp. 2d at 646-47 (rejecting funding request for unexhausted and procedurally barred claims). However, a court may authorize funding that would allow a petitioner to investigate the application of possible exceptions to the exhaustion requirement and whether an otherwise procedurally defaulted claim may be subject to cause and prejudice. *See Patterson v. Johnson*, No. 3:99-cv-0808-G, 2000 WL 1234661, at *1-*2 (N.D. Tex., Aug. 31, 2000) (not designated for publication).

6. Petitioner has satisfied the reasonable necessity test. To begin, Petitioner presented to this Court at the very least a viable claim with respect to whether trial counsel were ineffective for failing to investigate mitigation evidence for use at the punishment phase. Furthermore, the evidence presented, particularly through supplemental affidavits from Petitioner's sisters, shows that additional factual development is warranted. No investigator in this case, from trial through federal habeas, has been to Honduras to gather important mitigation evidence. Furthermore, the sisters' affidavits identify specific witnesses and their putative testimony.

*The Underlying Claim*

7. Petitioner's ineffective assistance of counsel claim at punishment (the *Wiggins* claim) is set forth in full in his original petition and his reply to Respondent's answer and motion for summary judgment. Additionally, Petitioner's claim with respect to ineffective assistance of counsel for failing to assert violations of international treaties as well as the substantive claims relating to the State's violations of these treaties is set forth in the original petition and his reply. Petitioner incorporates those arguments in this motion as if fully set forth.

8. To summarize, Petitioner anticipates that a full investigation will enable him to prove that his trial counsels' investigation into punishment evidence was deficient and inadequate when measured against the constitutional standard set forth in *Strickland*, as elucidated in *Williams*, *Williams*, and *Rompilla*. The evidence that he has obtained to date strongly indicates that he will be successful. Therefore, with respect to this prong of the *Strickland* test, Petitioner's claim is not speculative or conjectural; instead, he presents a valid, provable claim, and he is entitled to federal resources to investigate it fully. Furthermore, with respect to prejudice, the mitigation evidence is not merely cumulative or inconsequential because the jury in this death penalty case heard essentially nothing about Petitioner that mitigated against the imposition of a death sentence. This enabled the State to argue forcefully that Petitioner was the embodiment of evil. Mitigation evidence would have humanized Petitioner and undercut the force of the State's argument.

*Specificity of the Funding Request/The Duty to Conduct Investigation*

9. Petitioner's funding request is based upon the two affidavits of Xiomara Zelaya and Blanca Keller, which were attached to a motion to expand the record.[1] Blanca Keller identified by

[1] For this Court's convenience, the English versions of the affidavits are attached to this motion as Exhibits A & B.

name some 15 individuals that could testify about Petitioner's life in Honduras and his value as a human being, matters that the jury never heard. Of course, Petitioner comes from a large family and has many siblings, many of whom have never been interviewed though they have personal knowledge of relevant information to this issue. Xiomara Zelaya asserted that 13 of Petitioner's siblings and half-siblings are in contact with them and could provide important information. Finally, the affidavits aver that there were friends and acquaintances in Houston who knew Petitioner and could have provided information about Petitioner's family and life in Honduras.

10. The investigation that Petitioner seeks is specific and is not a fishing expedition. He desires to obtain specific evidence from witnesses who have first-hand personal knowledge of the underlying facts. Importantly, federal habeas counsel is obligated to conduct this investigation. *See* SUPPLEMENTARY GUIDELINES FOR THE MITIGATION FUNCTION OF DEFENSE TEAMS IN DEATH PENALTY CASES, Guideline 10.11 (reprinted in 36 HOFSTRA L. REV. 677, 689-90) [hereinafter SUPPLEMENTARY GUIDELINES]. Specifically, counsel must "conduct in-person, face-to-face, one-on-one interviews with the client, the client's family, and other witnesses who are familiar with the client's life, history, or family history or who would support a sentence less than death." SUPPLEMENTARY GUIDELINES, Guideline 10.11.C. The investigation must be "ongoing, exhaustive and independent" and must cover "every aspect of the client's character, history, record and any circumstances of the offense, or other factors, which may provide a basis for a sentence less than death." SUPPLEMENTARY GUIDELINES, Guideline 10.11.B.

*Responses to Procedural Defenses*

11. The *Wiggins* claim has been exhausted and is not procedurally defaulted (as demonstrated in Petitioner's reply to Respondent's answer and motion for summary judgment). In his original petition with this Court, Petitioner contended that his sisters could provide additional

examples of his good character and his value to his family and friends. *Petition for Writ of Habeas Corpus*, at p. 23. Additionally, he asserted that there were at least 12 witnesses in Honduras–family, friends, and other professionals–who had "insight into his life and character." *Id*. Counsel was unable to conduct a full investigation in Honduras because of a military coup.[2] *Id*. at 24. Respondent alleged in response that these factual contentions were conclusory and not sufficient to support the claim. *Respondent's Answer*, at pp. 28-29.[3] Respondent also contended that evidence of Petitioner's good character and family history is unexhausted. *Respondent's Answer*, at pp. 20. In response to the contention that the factual allegations were conclusory, Petitioner has submitted the affidavits of Xiomara Zelaya and Blanca Keller, which set forth in detail factual matters to support the claims made in the original petition.

12. Contrary to Respondent's contention concerning exhaustion, the additional information provided by Petitioner's sisters in their supplemental affidavits does not fundamentally alter the claim as presented in state court. A petitioner for federal habeas relief must exhaust his

---

[2] Currently, the State Department has lifted its travel warnings concerning Honduras. *See* http://travel.state.gov/travel/cis_pa_tw/cis/cis_1135.html. Therefore, it appears that an investigator may safely travel to Honduras to conduct the requisite investigation.

[3] Petitioner also alleged that TDCJ-CID medical records created during his time on Texas Death Row show that he suffers from schizophrenia. Though referenced in his original petition, *Petition for Writ of Habeas Corpus*, at pp. 21-23, excerpts from these records were not included with the original habeas petition filed in this Court. When the undersigned counsel attempted to obtain these records from former counsel, counsel discovered that the records had been lost. Petitioner has since re-obtained these records, which contain more than 800 pages of documentation, and efforts to review these records is ongoing. Critically, however, for purposes of this motion, Respondent alleged that Petitioner had presented "no evidence to establish that he suffered from these alleged disorders prior to [September 2000], thus making it impossible for [trial] counsel to have discovered." *Respondent's Answer*, p. 27. In other words, Respondent argued that Petitioner has provided no information that trial counsel could have discovered mental illness evidence at the time of trial. *Id*. at pp. 27-28. In addition to investigating evidence of Petitioner's good character and family history, an investigation in Honduras, as proposed in this motion, would be useful to developing evidence that Petitioner manifested symptoms or indications of mental illness, as well as drug and alcohol abuse, prior to the trial in this case and that these could have been discovered by trial counsel.

claims in state court. 28 U.S.C. § 2254(b). *See also Picard v. Connor*, 404 U.S. 270, 275-76 (1971) (discussing history of exhaustion requirement and noting that "a state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus"). "The exhaustion doctrine seeks to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986). Exhaustion is satisfied when the substance of the federal habeas claim has been fairly presented to the state court. *Morris v. Dretke*, 413 F.3d at 491 (quoting *Mercadel v. Cain*, 179 F.3d 271, 275 (5th Cir. 1999)); *Anderson v. Johnson*, 338 F.3d 382, 386 (5th Cir. 2003). *See also Vasquez*, 474 U.S. at 257. This requirement "is not satisfied if the petitioner presents new legal theories or factual claims in his federal habeas petition." *Anderson*, 338 F.3d at 386 (emphasis added). If new evidence presented for the first time in federal court does not place the claim in a significantly different legal posture and merely supplements the claim, rather than fundamentally altering it, dismissal of the claim is not warranted for failure to exhaust. *Id*. at 386-87; *Wise v. Warden, Maryland Penitentiary*, 839 F.2d 1030, 1033 (4th Cir. 1988). As the Supreme Court noted in *Vasquez*, "We have never held that presentation of additional facts to the district court, pursuant to that court's directions, evades the exhaustion requirement when the prisoner has presented the substance of his claim to the state courts." *Vasquez*, 474 U.S. at 257-58 (emphasis added). Though the new evidence in *Vasquez* was presented in accordance with the district court's directions, the principle laid down applies to all new evidence presented in federal court, regardless of the vehicle leading to its presentation. *Id*. *See also Morris*, 413 F.3d at 492-93; *Dowthitt v. Johnson*, 230 F.3d 733, 746 (5th Cir. 2000). The determination whether "additional evidence fundamentally alters or merely supplements the state petition is necessarily case and fact specific." *Anderson*, 413 F.3d at 491.

13. Furthermore, variations in the legal theory relied upon in federal court does not render a claim unexhausted so long as "the substance of [the] . . . claim . . . [is] first . . . presented to the state courts." *Picard v. Connor*, 404 U.S. at 278. In other words, a petitioner does not have to reference federal law by quoting it "'book and verse.'" *Id*. (quoting *Daugharty v. Gladden*, 257 F.2d 750, 758 (9th Cir. 1958)). "[A] petitioner may reformulate [the state] claims so long as the substance of the claim remains the same." *Sweeney v. Carter*, 361 F.3d 327, 333 (7th Cir. 2004). Moreover, a federal court should not view a claim presented in state court narrowly or split claims up in order to "distill" an unexhausted claim. *See Henderson v. Frank*, 155 F.3d 159, 165 (3d Cir. 1998) (quoting *Engle v. Isaac*, 456 U.S. 107, 124 n.25 (1982)).

14. This case is readily distinguishable from those cases in which courts denied investigative funding because of the likelihood that the claims would be barred from a merits review. *See Powell v. Kelly*, 492 F. Supp. 2d at 560-61 & n.8 (holding that petitioner was not entitled to mitigation investigator in part because claims would be subject to exhaustion defense and there was no indication that an exception to the defense would be raised); *Patrick v. Johnson*, 48 F. Supp. 2d at 646-47 (holding that funding was not available under successor statute to § 3599(f) because claims were unexhausted and procedurally barred). In this case, the additional information does not fundamentally alter the claim made in state court, which was primarily focused on trial counsels' failure to conduct any mitigation investigation whatsoever. The additional evidence provides support for the basic claims made in state court, particularly that Petitioner was a valuable and cherished member of his family; that he possessed positive character traits as exemplified in his actions when around his family, friends, teachers, coaches, and acquaintances; and that he was not a criminal or troublemaker in Honduras.

15. Petitioner is not attempting to obtain a "second bite at the ineffectiveness apple." *Powell v. Kelly*, 492 F. Supp. 2d at 559. Instead, Petitioner is seeking to develop evidence that fills in the evidentiary picture presented in state court with testimony from family, friends, acquaintances, and other professionals (teachers, coaches, and a pastor) that supports the basic allegations made. Additionally, as set forth in Blanca Keller's supplemental affidavit, attached to this motion, this investigation could help establish ties between Houston and Honduras by demonstrating that there were people in Houston who knew Petitioner that had Honduran ties and that could have provided information about these witnesses in Honduras; thus, Petitioner anticipates being able to establish that there were additional avenues for investigation open to trial counsel that counsel failed to exploit, particularly in the important early stages of the representation. This investigation, therefore, is relevant to both the deficient performance and prejudice prongs of the *Strickland* standard.

*Specific Request for Funding to Hire a Mitigation Specialist*

16. Petitioner requests leave to retain the services of a mitigation specialist who has specialized experience in developing evidence in a Latin American country. Petitioner has contacted two such specialists–Dhyana Fernandez (located in Seattle) and Claudia Degrati (located in Los Angeles), and has obtained contact information for two additional specialists. Ms. Fernandez appears to have the time to take on this investigation, and her hourly rate (100/hr.) is comparable to other mitigation specialists who perform this work.

17. Initially, the investigator will have to become familiar with the underlying facts of the case in order to prepare for witness interviews. Arrangements will have to be made for travel, lodging, and ground transportation.

18. The proposed investigation is fairly extensive because of the number of identified witnesses (15 non-family and 13 family) who have never been interviewed at any stage of this

litigation, whether in state or federal court. However, because these witnesses have been identified and their proposed testimony is known, some of the difficult work entailed in an investigation of this sort in a foreign country may be circumvented. In other words, there are family members in Honduras who can assist with locating these witnesses, so it may not be necessary to involve governmental officials in the initial portions of the investigation. (It should be noted that this is a judgment that will have to be made by the investigator when confronted with the actual exigencies of the investigation at the time.)

19. Once witnesses have been located, interviews will have to be conducted. Average time for a substantive interview of this sort may take at least three hours per witness. An additional two to three hours will be spent writing and editing affidavits, which will have to be in Spanish with English translations. A qualified foreign notary will have to be secured as well.

20. A minimum estimate of time needed to conduct the proposed investigation is at least 100 hours and may exceed 200 hours. Expenses for travel and lodging will also have to be factored in. Because of the difficulty in estimating the precise number of hours that this investigation will entail until the investigator is actually in Honduras and because of the distance and inherent difficulties in traveling to a foreign country, petitioner requests that the funding be authorized at the upper end of this range in order to enable the investigator to conduct the requisite investigation without the necessity of seeking further funding from the court or making multiple trips to Honduras. Alternatively, Petitioner seeks the funding limits imposed by 28 U.S.C. § 3599 of $7,500 as an initial funding for this investigation.

WHEREFORE, PREMISES CONSIDERED, Petitioner respectfully requests that t grant this Motion for Appointment of an Investigator so that he may hire a qualified mitigation specialist to conduct investigations in Honduras and grant him any other relief to which he may be entitled.

Respectfully submitted,

PAUL E. MANSUR
Attorney at Law
Texas Bar No. 00796078
P.O. Box 1300
Denver City, Texas 79323
(806) 592-2797 (telephone)
(806) 592-9136 (facsimile)
pmansur@midtech.net

By: /s/ Paul E. Mansur
Paul E. Mansur
Member of the Bar of this Court

Attorney for Petitioner,
Carlos Manuel Ayestas

***Certificate of Conference***

I certify that I discussed the merits of this motion with counsel for Respondent, Jeremy Greenwell, and Mr. Greenwell informed me that Respondent is opposed to the relief sought.

/s/ Paul E. Mansur
Paul E. Mansur

***Certificate of Service***

I certify that on January 25, 2011, I served, by ECF, a true and correct copy of this motion for the appointment of an investigator upon opposing counsel at the following address:

Greg Abbott
attn: Jeremy Greenwell
Texas Attorney General
Postconviction Litigation Division
P.O. Box 12548
Austin, Texas 78711-2548

/s/ Paul E. Mansur
Paul E. Mansur

**IN THE**
**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **CARLOS MANUEL AYESTAS,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| | § | |
| **-v-** | § | **USDC No. 4:09-cv-2999** |
| | § | |
| | § | |
| | § | |
| **RICK THALER,** | § | |
| **Director, Texas Department of Criminal** | § | |
| **Justice, Correctional Institutions Division** | § | **CAPITAL CASE** |
| | § | |
| **Respondent.** | § | |

# ORDER

Came on this day to be considered Petitioner's Motion for Appointment of an Investigator, and the Court, after considering the pleadings of the parties filed herein, is of the opinion that the following order should issue:

It is ORDERED, ADJUDGED, and DECREED that Petitioner's motion is hereby GRANTED. The Court authorizes payment in the amount of $_________ to enable Petitioner to retain a mitigation specialist to investigate mitigation evidence in Honduras and in Houston.

SIGNED on this the ____ day of __________________, 2011

____________________________________
UNITED STATES DISTRICT JUDGE