**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS,
HOUSTON DIVISION**

| | | |
|---|---|---|
| **CARLOS MANUEL AYESTAS,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| | § | |
| **-v-** | § | **USDC No. 4:09-cv-2999** |
| | § | |
| | § | |
| | § | |
| **RICK THALER,** | § | |
| **Director, Texas Department of Criminal** | § | |
| **Justice, Correctional Institutions Division** | § | **CAPITAL CASE** |
| | § | |
| **Respondent.** | § | |

**MOTION TO ALTER OR AMEND JUDGMENT**

TO THE HONORABLE JUDGE OF THIS COURT:

NOW COMES, Petitioner, Carlos Manuel Ayestas, whose real name is Denys Humberto

Zelaya Corea (Mr. Zelaya) ("Petitioner"), by and through the undersigned counsel, and files this

Motion to Alter or Amend the Judgment in accordance with Federal Rule of Civil Procedure 59(e),

and respectfully would show the Court as follows:

*I.  Introduction*

On January 26, 2011, the Court entered a Final Judgment dismissing with prejudice all of

Petitioner's claims.  *Final Judgment, p. 1.*  The Court denied a certificate of appealability "because

petitioner Ayestas has not made a substantial showing of the denial of a constitutional right."  *Id.*

A motion to alter or amend a judgment is timely under Federal Rule of Civil Procedure 59(e) if it

is filed on or before February 23, 2011.

-1-

## *II.  Grounds for Relief*

Petitioner asserts the following grounds for relief:

a.      The Court erred in holding that Petitioner failed to prove deficient performance on his trial counsel's part.  Specifically, the Court erred in relying upon Fifth Circuit cases that addressed a much narrower issue than presented in this case and in not addressing cases from the Supreme Court of the United States concerning trial counsel's duty to investigate.

b.      The Court erred in refusing to grant a certificate of appealability with respect to Petitioner's ineffective assistance of counsel claim concerning his trial counsels' failure to investigate timely and fully potential mitigating evidence.

Petitioner respectfully requests that the Court reconsider these matters.

## *III.  Discussion*

Federal Rule of Civil Procedure 59(e) governs motions to alter or amend a judgment, and it provides that such a motion must be filed no later than 28 days after entry of a judgment.  FED. R. CIV. P. 59(e).  This rule applies in habeas corpus cases to the extent it is consistent with AEDPA. *Williams v. Thaler*, 602 F.3d 296, 303 (5th Cir. 2010).  A motion to alter or amend has been defined in broad terms as any motion that draws into question the correctness of a judgment.  *Id*. (noting that the scope of the rule is unrestricted).  *See also In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002).  However, the motion is not a proper vehicle to rehash arguments, legal theories, or evidence "that could have been offered or raised before the entry of judgment."  *Templet v. Hydrochem, Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004).  Instead, it serves the purpose of allowing

a party to correct manifest errors of law or fact or to present newly discovered evidence. *Id*. at 479 (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)).

Petitioner complained that his trial counsel abdicated their clearly established duty to investigate mitigating evidence for preparation of this death penalty case. For more than a year after their appointment, counsel made no apparent independent investigative efforts until a little more than a month before the trial began (and only weeks before jury selection began). By the time counsel obtained funding for investigative assistance and started efforts to investigate, it was too late to develop a mitigation case in any meaningful sense. Counsels' failure was not reasonable and fell below well-established norms of practice in capital cases.

The Court frames Petitioner's claim as a contention "that several of his family members would have come to the United States from Honduras to testify if asked." *Memorandum Opinion and Order*, p. 16. Though this may have been the ultimate result of a full mitigation investigation,[1] Petitioner's claim is not limited to securing the testimony of only family members; instead, his claim is that trial counsel failed to conduct a proper and timely investigation, and as a result, they were not prepared to present any sort of mitigation case. Relying upon the state habeas court's findings, which were presumed correct, the Court noted that counsel interviewed witnesses, talked to Petitioner's family, talked to him about his background and life, and attempted to secure the presence of family members for trial. Crucial to this Court's holding was the state court's finding that Petitioner refused to cooperate with trial counsel and did not want his trial counsel to contact his family in Honduras and that he did not change his mind about this until after jury selection was

---

[1] Petitioner asserts that potentially many witnesses, including non-family members, could have provided relevant mitigation testimony, and a full investigation could have uncovered admissible evidence that Petitioner did not have a prior criminal history in Honduras.

complete.  *Id*. at 17-18.   The Court held that counsels' efforts were reasonable under the circumstances (particularly the circumstance concerning Petitioner's refusal to cooperate with counsel) and that they made diligent efforts to investigate and develop evidence concerning Petitioner's background and childhood.  *Id*. at 19-21.

The Court held:  "Neither the Supreme Court nor the Fifth Circuit has ever held that a lawyer provides ineffective assistance by complying with the client's clear and unambiguous instructions to not present evidence."  *Memorandum Opinion and Order*, p. 20.   Even accepting the state court's findings as correct, as this Court must under 28 U.S.C. § 2254(e) absent clear and convincing evidence to the contrary, the record does not reflect a *clear and unambiguous* instruction not to present any mitigating evidence whatsoever.   At best, Petitioner refused to cooperate with counsel when they requested to contact his family in Honduras.   He did not forbid them from investigating and presenting all possible mitigating evidence whatsoever.   This point distinguishes the cases that the Court cites as controlling.   In *Autry v. McKaskle*, 727 F.2d 358 (5th Cir. 1984), the defendant clearly told his trial counsel that if he was found guilty of capital murder, he wanted to be sentenced to death and that he would take the stand and inform the jury of this desire.  *Id*. at 360-61. Nevertheless, the defendant gave counsel the names of five possible punishment phase witnesses, three of whom were family members, and counsel "explored Autry's childhood and upbringing," which included much of the mitigating evidence presented during the habeas proceedings. *Id*. at 361. Based on this investigation, counsel was prepared to put the defendant's mother on the stand, but "his strategy could not be implemented because of Autry's strong resistence to a life sentence."  *Id*. The Fifth Circuit held that the defendant could not complain about his trial counsel's failure to present mitigating evidence because he refused to allow them to present this evidence prior to and

-4-

during trial:  "By no measure can Autry block his lawyer's efforts and later claim the resulting performance was constitutionally deficient." *Id*.  Furthermore, the court found that counsel was not deficient for not questioning the defendant's competency.  *Id*. at 362.  The defendant wrote a letter, intended to be delivered to his counsel after his execution in which he denied participation in habeas counsel's effort to establish ineffective assistance of counsel and informing trial counsel that he had merely followed the defendant's desire with respect to punishment.  *Id*.  "[I]n an otherwise hard fought case, Autry refused to allow his counsel to proceed on a tactical course that might have conferred substantial benefit, and, in the case of the refused plea bargain, would have avoided the risk of a death sentence." *Id*.

*Autry* is distinguishable in several respects.  First and most importantly, the evidence clearly and unambiguously demonstrated that the defendant *never* acquiesced in the presentation of mitigating evidence at punishment, and this remained true even during the state habeas proceedings. In this case, Petitioner *never* categorically refused to allow any presentation of a mitigating case or requested, as Autry did, to present a case for death.  Even before his "change of heart" about contacting his family, Petitioner never instructed his counsel to "present nothing" as Autry did with his trial counsel, and there is no evidence in the record that he forbade any and all investigation. Second, unlike this case, trial counsel in Autry conducted a mitigation investigation that uncovered much of the family background evidence presented in habeas and was able to confer with his client about the results of the investigation and the advantages of presenting mitigation evidence, which would have included calling Autry's mother to the stand.  Thus, Autry had an opportunity to weigh his options about punishment after an investigation.  Third, after being advised by an attorney about the results of the investigation, Autry remained steadfastly opposed to the presentation of a

mitigation case.  In this case, trial counsel made no effort to conduct any investigation until only weeks before *voir dire* began.  Because they had not sought funding for an investigator, much less a qualified mitigation specialist, until around this time, they were unequipped to conduct such an investigation anyway, with or without Petitioner's approval.  Though trial counsel provided an affidavit that indicated she had discussed Petitioner's background with him and that she had talked with his mother and sisters, she provided no evidence concerning what she learned and whether she was even able to discuss with Petitioner the potential advantages of presenting mitigating evidence. Finally, unlike counsel in *Autry*, trial counsel in this case were not prohibited from presenting mitigating evidence at trial.  In fact, they attempted to present evidence of Petitioner's clean record in Honduras, but they were unprepared to present admissible evidence because they failed to investigate anything about the case in a timely manner.  Petitioner's case is far less categorical than the situation presented in *Autry*.

The other cases in the Court's Memorandum Opinion are similarly distinguishable because they largely rely upon the rule set out in *Autry*.  In *Nixon v. Epps*, 405 F.3d 318 (5th Cir. 2005), trial counsel investigated and learned of some of the mitigating evidence presented in habeas–namely, that the defendant had saved a woman from a plane crash–but the defendant informed his counsel that he did not want that evidence presented.  *Id*. at 325-26.  The court held, "A defendant cannot block his counsel from attempting one line of defense at trial, and then on appeal assert that counsel was ineffective for failing to introduce evidence supporting that defense."  *Id*.  With respect to the remaining mitigation evidence, the record demonstrated that the witnesses were uncooperative and that they would have testified either contrary to the proposed mitigation evidence or they would have provided harmful evidence.  *Id*. at 326.  As a result, the federal district court found the evidence not

credible and held that trial counsel could not be faulted for pursuing a trial strategy that did not rely upon this evidence. *Id*. The Fifth Circuit agreed. *Id*. In *Roberts v. Dretke*, 356 F.3d 632 (5th Cir. 2004), the defendant specifically instructed his trial counsel to implement a strategy designed to result in a death sentence, which included instructions not to call mitigation witnesses. *Id*. at 635. Trial counsel complied. *Id*. The court, relying upon *Autry*, held that trial counsel could not be ineffective when the defendant had completely blocked efforts to conduct a mitigation investigation, but the court nevertheless granted a certificate of appealability on the issues of whether counsel was ineffective in not properly developing evidence of mental illness and for not making adequate use of the court-appointed psychiatrist because he failed to provide the doctor with relevant information about mental illness. *Id*. at 638-41. In *Dowthitt v. Johnson*, 230 F.3d 733 (5th Cir. 2000), the court noted that the defendant did not want any of his family to testify during punishment, and as in *Roberts*, the court relied upon *Autry* for the proposition that "[c]ounsel will not be deemed ineffective for following their client's wishes, so long as the client made an informed decision." *Id*. at 748. Also, as in *Autry* and *Nixon*, trial counsel did "attempt[] to delve into Dowthitt's background;" however, the potential witnesses they contacted either did not want to cooperate with them or they had "knowledge of factors detrimental to [the defense]." *Id*. at 749.

The principle gleaned from *Autry* and the foregoing cases relying upon it is similar to the holding in *Schriro v. Landrigan*, 550 U.S. 465 (2007), in which the defendant became combative during the punishment hearing and refused to allow his trial counsel to present mitigation evidence. *Id*. at 469-71. Under these circumstances, the Court held that the defendant could not prove *Strickland* prejudice:

> The District Court was entitled to conclude that regardless of what information counsel might have uncovered in his investigation, Landrigan would have interrupted and refused to allow his counsel to present any such evidence.  Accordingly, the District Court could conclude that because of his established recalcitrance, Landrigan could not demonstrate prejudice under *Strickland* even if granted an evidentiary hearing.

*Id*. at 477.  Though the Court relied only on *Strickland*'s prejudice prong in his holding, the Court noted that the situation before it was unique and that it had not addressed it in cases like *Strickland v. Washington*, 466 U.S. 668 (1984), or *Wiggins v. Smith*, 539 U.S. 510 (2003), because the situation in *Landrigan* involved a defendant who "interfere[d] with counsel's efforts to present mitigating evidence.  *Landrigan*, 550 U.S. at 478.  The Court then distinguished the extreme examples of categorical refusal to present mitigation from situations in which a client is uncooperative, evasive, or otherwise unhelpful with investigation or presentation of mitigation evidence but does not expressly forbid it:

> Indeed, we have never addressed a situation like this.  In *Rompilla v. Beard*, . . . on which the Court of Appeals also relied, the defendant *refused to assist in the development of a mitigation case*, but did not inform the court that he did not want mitigating evidence presented.  In short, at the time of the Arizona postconviction court's decision, it was not objectively unreasonable for that court to conclude that a defendant who refused to allow the presentation of any mitigating evidence could not establish *Strickland* prejudice based on his counsel's failure to investigate further possible mitigating evidence.

*Id*. (emphasis added).  As noted, the Court did not reach deficiency; so the defendant's lack of cooperation prior to trial did not factor into the Court's decision, and the Court did not set out any rule that lack of cooperation or client interference with investigation could obviate counsel's duty to investigate.

The Court did address these matters in *Rompilla v. Beard*, 545 U.S. 374 (2005), and *Porter v. McCollum*, ___ U.S. ___, 130 S. Ct. 447 (2009).  In *Rompilla*, the defendant's "contributions to

-8-

any mitigation case were minimal." 545 U.S. at 381. The Court continued the descriptions of the

defendant's lack of cooperation and even obfuscation with respect to the mitigation investigation:

> Counsel found him uninterested in helping, as on their visit to his prison to go over
> a proposed mitigation strategy, when Rompilla told them he was "bored being here
> listening" and returned to his cell. To questions about childhood and schooling, his
> answers indicated they had been normal, save for quitting school in the ninth grade.
> There were times when Rompilla was even actively obstructive by sending counsel
> off on false leads.

*Id*. (internal record references omitted). Trial counsel also spoke with the defendant's family, but

they also proved unhelpful, though they were more cooperative. *Id*. at 381-82. Finally, counsel

retained three mental health experts, who examined the defendant's mental state at the time of the

offense and his competency to stand trial, but as with the defendant and his family, these sources

likewise proved unhelpful. *Id*. at 382. Thus, counsel conducted an investigation into mitigation;

however, the Court found counsel ineffective for failing to review a file relating to a prior offense

that was in the State's possession. *Id*. at 383-90. Though the Court found that there was potentially

"room for debate" concerning whether counsel had a continuing duty to investigate potential

mitigating leads generally, the Court, by holding that counsel did have a duty to investigate the

State's file under the circumstances of the case, did not create a categorical rule lack of cooperation

or even outright interference would relieve counsel of the duty to investigate. *Id*. at 383-84. Instead,

because counsels' duty to investigate persisted notwithstanding their client's lack of cooperation and

his disinterest in helping himself, the logical inference is that there is no such categorical rule. In

*Porter*, the Court held that counsel was ineffective for not conducting a reasonable investigation,

even though trial counsel described the defendant as "fatalistic and uncooperative" and had

instructed counsel not to speak to his wife or son. 130 S. Ct. at 453. As in this case, the defendant

did not instruct his counsel not to conduct any mitigation investigation at all. *Id*. "Counsel thus failed to uncover and present any evidence of Porter's mental health and mental impairment, his family background, or his military service. The decision not to investigate did not reflect reasonable professional judgment." *Id*. The Court concluded: "Porter may have been fatalistic or uncooperative, but that does not obviate the need for defense counsel to conduct *some* sort of mitigation investigation."[2] *Id*. (citing *Rompilla*) (emphasis in original).

In this case, counsel performed no sort of mitigation investigation for more than a year between the time they filed pretrial motions and the time an investigator first began working on this case. They did not seek funding from the trial court for an investigation during this period of time; thus, they were completely unprepared to do anything. Petitioner may have limited their investigation; but this did not discharge the clear duty counsel had to investigate. Petitioner briefed this point in considerable detail in his response to Respondent's answer. *Petitioner's Response to Respondent's Answer*, pp. 32-41. Petitioner also cited numerous opinions from various federal circuits that support the contention that the duty to investigate does not disappear based on a client's lack of cooperation or interest or the client's interference with punishment issues. *Id*. at 35-36. Petitioner incorporates this discussion by reference as part of this motion, and respectfully requests that the Court reconsider based on the sources provided and their relevance to this issue.

Also, Petitioner respectfully requests that the Court reconsider its holding that he cannot establish deficient performance. Trial counsel's affidavits and the state court's findings based

---

[2]     This holding, as well as the holding in *Rompilla*, throws the general statement by the Fifth Circuit that "'a defendant who does not provide any indication to his attorneys of the availability of mitigating evidence may not later assert an ineffective assistance of counsel claim,'" *Nixon v. Epps*, 405 F.3d at 325 (quoting *Wiley v. Puckett*, 969 F.2d 86, 99-100 (5th Cir. 1992), into considerable doubt concerning its potential reach and its ability to discharge entirely counsel's duty to investigate mitigation evidence in a capital trial.

primarily on those affidavits are simply not sufficient to support the conclusion that trial counsel diligently prepared for the punishment phase of this case.  The state court's holding to the contrary was both an unreasonable application of federal law, based upon holdings of the Supreme Court of the United States, and an unreasonable determination of the facts under 28 U.S.C. § 2254(d).

Furthermore, reasonable jurists could disagree about this matter, and Petitioner is entitled to a certificate of appealability.  A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). *Accord Banks v. Dretke*, 540 U.S. 668, 705 (2004); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).  When making the determination whether a COA should issue, the reviewing court must conduct an overview of the claims the petitioner raised in the habeas petition and make a general assessment of their merits.  *Miller-El*, 537 U.S. at 336; *Cotton v. Cockrell*, 343 F.3d 746, 750 (5th Cir. 2003).  This threshold inquiry, however, "does not require full consideration of the factual or legal bases adduced in support of the claims." *Miller-El*, 537 U.S. at 336.  In fact, section 2253 forbids this sort of consideration because such an adjudication on the merits would precede the jurisdictional trigger afforded by the issuance of a COA. *Id*. at 336-37; *see also Smith v. Dretke*, 422 F.3d 269, 273 (5th Cir. 2005).  An application for COA does not require a showing that the appeal will ultimately succeed. *Miller-El*, 537 U.S. at 337.  Accordingly, this Court held:  "[A] court of appeals should not decline the application for a COA merely because it believes the applicant will not demonstrate an entitlement to relief. . . .  It is consistent with section

-11-

2253 that a COA will issue in some instances where there is no certainty of ultimate relief." *Id*. The Court continued: "We do not require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Id*. at 338; *see also Cotton*, 343 F.3d at 750.

At the COA stage, the reviewing court does not "apply the deferential AEDPA standard of review to examine the merits of the habeas petition." *Smith v. Dretke*, 422 F.3d at 273. Instead, the court should only consider "whether a 'substantial showing of the denial of a constitutional right' had been proved." *Miller-El v. Cockrell*, 537 U.S. at 342. For instance, in this case, the requisite showing may be supported by *any* evidence in the record tending to show materiality under *Brady*. *See id*. at 340. Ultimately, "[t]he question is the debatability of the underlying constitutional claim, not the resolution of the debate." *Id*. When the case involves the death penalty, any doubts about whether a COA should issue must be resolved in the petitioner's favor. *Smith*, 422 F.3d at 273 (quoting *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000)); *Graves v. Cockrell*, 351 F.3d 143, 150 (5th Cir. 2003); *Jermyn v. Horn*, 266 F.3d 257, 279 n.7 (3[d] Cir. 2001).

Petitioner respectfully requests that the Court reconsider its decision to deny COA with respect to his ineffective assistance of counsel at punishment claim discussed in this motion. Also, though the Court has denied a COA as to all of Petitioner's claims, Petitioner also requests that the Court reconsider and grant a COA as to them as well.

WHEREFORE, PREMISES CONSIDERED, Petitioner respectfully requests that the Court grant this Motion for to Alter or Amend Judgment and grant him any other relief to which he may be entitled.

-12-

Respectfully submitted,

PAUL E. MANSUR
Attorney at Law
Texas Bar No. 00796078
P.O. Box 1300
Denver City, Texas 79323
(806) 592-2797 (telephone)
(806) 592-9136 (facsimile)
pmansur@midtech.net

By:  /s/ Paul E. Mansur
       Paul E. Mansur
       Member of the Bar of this Court

       Attorneys for Petitioner,
       Carlos Ayestas

### Certificate of Service

I certify that on February 23, 2011, I served, by email, a true and correct copy of the motion to release habeas record upon opposing counsel at the following address:

Greg Abbott
attn:  Jeremy Greenwell
Texas Attorney General
Postconviction Litigation Division
P.O. Box 12548
Austin, Texas 78711-2548

       /s/ Paul E. Mansur
       Paul E. Mansur

-13-