IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CARLOS AYESTAS, § § Petitioner, § § v. § § WILLIAM STEPHENS, Director, § Texas Department of Criminal § Justice-Correctional § Institutions Division, § § Respondent. § | CIVIL ACTION NO. H-09-2999 |

## MEMORANDUM OPINION AND ORDER

Petitioner Carlos Ayestas filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his state court conviction and death sentence for capital murder. On January 26, 2011, this court granted the respondent's motion for summary judgment and entered judgment for the respondent. On February 28, 2011, this court denied petitioner's motion to alter or amend the judgment. On February 22, 2012, the Fifth Circuit denied Ayestas' request for a certificate of appealability. Ayestas v. Thaler, No. 11-70004 (5th Cir., Feb. 22, 2012).

On June 6, 2013, the Supreme Court granted certiorari and remanded the case to the Fifth Circuit for reconsideration in light of the Supreme Court's decisions in Martinez v. Ryan, 132 S. Ct. 1309 (2012) (holding that ineffective assistance of state habeas counsel could, in certain circumstances, constitute cause to excuse

a procedural default of an ineffective assistance of trial counsel claim), and Trevino v. Thaler, 133 S. Ct. 1911 (2013) (holding that Martinez is applicable to the Texas capital postconviction process). The Fifth Circuit subsequently remanded the case to this court.

The parties have filed supplemental briefing on the effect of Martinez on this case. Having carefully considered Ayestas's petition, the state court record, the parties' submissions, and the applicable law, the court finds that Ayestas fails to establish cause and prejudice to excuse the procedural default of his claims of ineffective assistance of trial counsel. Therefore, the court will deny Ayestas's petition for a writ of habeas corpus on these claims. The reasons for these rulings are set out in detail below.

I. **Background**[1]

Ayestas was convicted of capital murder for murdering Santiaga Paneque during the course of committing or attempting to commit robbery or burglary. About two weeks before the murder Ayestas and a friend went to look at a car offered for sale by Anna McDougal, who lived across the street from Paneque. McDougal went inside her house for about 15 minutes while the men inspected the car. When she came back outside, McDougal saw the two men leaving Paneque's

---

[1] This statement of facts is repeated from this court's January 26, 2011, Memorandum Opinion and Order granting the respondent's motion for summary judgment.

house. When she asked what they were doing, the men told McDougal that Paneque called them over to look at some furniture she was trying to sell.

Paneque's son, Elin, left the house at about 8:30 a.m. on September 5, 1995. He returned home for lunch at 12:23 p.m.[2] and rang the doorbell, but there was no response. He put his key in the doorknob, but noticed that the door was unlocked. Upon entering, he saw that the room was ransacked and items were missing. The rest of the house was in much the same condition. Elin went to the house of a neighbor, Maria Diaz, and called 911. Upon returning to his house, he found his mother's body on the floor of the master bathroom. She had silver duct tape on her ankles. Elin returned to Diaz's house and asked her to go make sure that his mother was dead. Diaz entered the Paneque house and called Ms. Paneque's name. She found Ms. Paneque lying face down on the floor. Her face was a dark color and she was not breathing.

Detective Mark Reynolds of the Harris County Sheriff's Department testified that the house was ransacked but bore no signs of forced entry. Paneque's body was face down in a pool of blood and vomit. Her wrists were bound with the cord from an alarm clock and then wrapped in silver duct tape. She also had duct tape over her eyes and around her neck. Reynolds also testified that it was apparent that Paneque was beaten. Her face was swollen and covered

---

[2]He stated that he specifically noted the time.

with cuts and bruises. Reynolds showed neighbors photographs of two suspects, and McDougal identified them as the same two men who were in Paneque's house about two weeks before the murder. One of the suspects was Petitioner and the other was Frederico Zaldivar.

An autopsy conducted by Dr. Marilyn Murr, an assistant medical examiner for Harris County, revealed that Paneque suffered multiple blows while she was still alive, resulting in numerous bruises and lacerations. She had fractured bones in her right elbow and neck, and bruises on each side of her pelvic area, just above the hips. An internal examination revealed extensive hemorrhaging in the neck and head. She had another fracture, caused by a "significant amount of force," in the roof of the orbit containing her right eye. Dr. Murr determined that none of these injuries was substantial enough to kill Paneque. The cause of death was asphyxiation due to continual pressure applied to her neck for three to six minutes. Dr. Murr testified that her initial report indicated asphyxiation by ligature strangulation, but she reexamined the evidence shortly before trial at the request of the prosecutor. She then changed her conclusion to "asphyxiation due to strangulation," which allowed for the possibility that a hand or hands might have caused the asphyxia.

Police recovered fingerprints from the crime scene. Two prints recovered from the tape around Paneque's ankles, and two recovered from the roll of tape, matched Ayestas. On cross-examination the defense brought out that the two prints on the tape

around Paneque's ankles were only discovered shortly before trial, approximately 20 months after the murder, based on a reexamination undertaken at the prosecutor's request.

Henry Nuila testified that he met Ayestas in mid-September 1995 at Ayestas's sister's house in Kenner, Louisiana. On September 20 an intoxicated Ayestas told Nuila that he was involved in the murder of a woman in Houston. Ayestas asked Nuila for help in killing the other two participants in the murder because "they had spoken too much." Ayestas told Nuila that, if he declined, Ayestas would kill him. Ayestas brandished a gun. Nuila kept Ayestas talking until Ayestas passed out. Nuila then called the police. They arrested Ayestas, still in possession of the gun. Based on this evidence the jury found Ayestas guilty of capital murder for murdering Paneque during the commission or attempted commission of a burglary, robbery, or both.

During the penalty phase the State presented evidence that Ayestas served time in prison in California and Texas for possession and purchase for sale of narcotics, burglary, and misdemeanor theft. He was also the subject of a California warrant for illegal transportation of aliens. Candelario Martinez testified that three days after the murder Ayestas approached him outside a motel where he was waiting for a friend. After a brief conversation, Ayestas pulled a gun on Martinez and ordered him into one of the rooms. Martinez's friend was also in the room. Ayestas

ordered Martinez onto the floor and threatened to kill him. Ayestas and two others took Martinez's personal belongings and forced him into the bathroom, where they again told him that they would kill him. Martinez begged for his life as the three discussed who would kill him. Ayestas finally said that he would let Martinez live, but threatened to kill his family if Martinez told the police. Ayestas and his accomplices left in Martinez's truck.

Based on this evidence, along with the evidence of the brutality of Paneque's murder, the jury found that there is a likelihood that Ayestas would commit future acts of criminal violence posing a continuing threat to society, that Ayestas actually caused Paneque's death or intended to kill her or anticipated that a human life would be taken, and that the mitigating evidence did not warrant a sentence of life imprisonment. Accordingly, the trial court sentenced Ayestas to death.

The TCCA affirmed Ayestas's conviction and sentence, Ayestas v. State, No. 72,928 (Tex. Crim. App. Nov. 4, 1998), and denied his application for habeas corpus relief, Ex parte Ayestas, No. WR-69,674-01 (Tex. Crim. App. Sept. 10, 2008). Ayestas filed a petition for a writ of habeas corpus in this court on September 11, 2009. As discussed above, this court denied the petition and the Fifth Circuit denied a certificate of appealability. This case is

...

now back before this court of remand for reconsideration of several procedurally defaulted claims in light of the Supreme Court's decision in Martinez.

## II. The Applicable Legal Standards

In Martinez the Supreme Court carved out a narrow equitable exception to the rule that a federal habeas court cannot consider a procedurally defaulted claim of ineffective assistance of counsel.

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim . . . where appointed counsel in the initial-review collateral proceeding . . . was ineffective under the standards of Strickland v. Washington, 466 U.S. 668 . . . (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

Martinez, 132 S. Ct. at 1318.

To prevail on a claim for ineffective assistance of counsel, Petitioner

> must show that . . . counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984). In order to prevail on the first prong of the Strickland test, Petitioner must

demonstrate that counsel's representation fell below an objective standard of reasonableness. <u>Id.</u> at 687-88. Reasonableness is measured against prevailing professional norms, and must be viewed under the totality of the circumstances. <u>Id.</u> at 688. Review of counsel's performance is deferential. <u>Id.</u> at 689.

In the context of a capital sentencing proceeding, "the question is whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." <u>Strickland</u>, 465 U.S. at 695. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694.

### III. <u>Analysis</u>

**A. Ineffective Assistance of Counsel**

Ayestas contends that his counsel rendered ineffective assistance during the penalty phase by failing to investigate and present mitigating evidence of Ayestas's history of mental illness and substance abuse. He argues that trial counsel was ineffective for failing to investigate and develop this evidence, and that habeas counsel was ineffective for failing to investigate the evidence and argue that trial counsel rendered ineffective assistance.

As discussed in this court's original Memorandum Opinion and Order denying Ayestas's petition (Docket Entry No. 19), the state

habeas court found that Ayestas did not agree to let counsel contact his family until after jury selection was complete. The court also found that counsel made every effort to contact the family after Ayestas permitted her to do so. The court further found that the defense investigator sent a letter to the family in Honduras on May 29, 1997, six weeks before the penalty phase began. Counsel sent a second letter on June 10, 1997, stating that Ayestas finally agreed to let counsel contact his family. Counsel sent a third letter on July 2, 1997, and faxed a letter to the United States Embassy in Honduras to expedite the family's travel to the United States. Counsel informed the embassy of the need for the family's presence at trial, arranged a July 3, 1997, meeting for the family at the embassy, and included a copy of the June 10, 1997, letter. The court also found that counsel communicated with the Ayestas family by phone beginning on June 3, 1997. She spoke with Ayestas's mother, explained the situation, and requested the family's presence at trial. Ayestas's mother said she would call back. Counsel heard from the family on June 25, when Ayestas's sister, Somara Zalaya, informed counsel that the family would have difficulty leaving Honduras for the trial. Among the reasons stated were their father's illness and economic reasons. Counsel called the family again on June 26 and 27, and July 2. Ayestas's mother appeared unconcerned and gave evasive responses. Counsel's assistants also noted the mother's apparent lack of concern. The state habeas court further found that counsel informed the Honduran

consulate of Ayestas's arrest, indictment, and upcoming trial on June 9, 1997.

Counsel has a duty to investigate possible mitigating evidence. <u>Wiggins v. Smith</u>, 539 U.S. 510 (2003). The record establishes, however, that counsel did attempt to investigate and develop evidence concerning Ayestas's background.

Ayestas instructed counsel not to call his family. Neither the Supreme Court nor the Fifth Circuit has ever held that a lawyer provides ineffective assistance by complying with the client's clear and unambiguous instructions to not present evidence. In fact, the Fifth Circuit has held on several occasions that a defendant cannot instruct his counsel not to present evidence at trial and then later claim that his lawyer performed deficiently by following those instructions. In <u>Autry v. McKaskle</u>, 727 F.2d 358 (5th Cir. 1984), the defendant prevented his attorney from presenting any mitigating evidence during the punishment phase of his capital trial. The Fifth Circuit rejected Autry's claim that counsel was ineffective for heeding his instructions: "If Autry knowingly made the choices, [his lawyer] was ethically bound to follow Autry's wishes." <u>Id.</u> at 362;[3] <u>see also</u> <u>Nixon v. Epps</u>, 405 F.3d 318, 325-26 (5th Cir. 2005) (finding that counsel was not ineffective for failing to present additional mitigating evidence

---

[3]The <u>Autry</u> court also rejected the defendant's claim that counsel was required to request a competency hearing before agreeing to comply with the client's decisions. <u>Id.</u>

-10-

over client's objection: "A defendant cannot block his counsel from attempting one line of defense at trial, and then on appeal assert that counsel was ineffective for failing to introduce evidence supporting that defense."); Roberts v. Dretke, 356 F.3d 632, 638 (5th Cir. 2004) (noting that defendant may not obstruct attorney's efforts, then claim ineffective assistance of counsel); Dowthitt v. Johnson, 230 F.3d 733, 748 (5th Cir. 2000) (finding that counsel was not ineffective for failing to call family members during punishment phase where defendant stated that he did not want family members to testify).[4]

Ayestas now contends that a properly conducted investigation would have uncovered evidence of mental illness and substance abuse. Respondent points out, however, that Ayestas has not presented any medical records supporting his claim that he suffered from mental illness before his trial. While he submits some medical records from TDCJ, these records were created after Ayestas's conviction. Therefore, Ayestas fails to demonstrate that counsel had any reason to believe that Ayestas suffered from mental illness, or was deficient for failing to conduct an investigation into Ayestas's alleged mental illness.

---

[4] Cf. Schriro v. Landrigan, 550 U.S. 465, 475-77 (2007) (stating that, if defendant instructed counsel not to present mitigating evidence, "counsel's failure to investigate further could not have been prejudicial under Strickland"); Amos v. Scott, 61 F.3d 333, 348-49 (5th Cir. 1995) (denying ineffective assistance claim for want of prejudice where defendant "strongly opposed" presenting any witnesses during punishment phase of trial).

The record also shows that state habeas counsel retained two investigators. Petitioner's Brief on Remand (Docket Entry No. 40) at Exhibits A and B. In addition to speaking with Ayestas's family, counsel obtained Ayestas's birth certificate and school records, and was aware of his criminal history and history of substance abuse. Id. at 26, Exhibit V. Habeas counsel also had Ayestas evaluated by a psychologist. Habeas counsel raised 16 claims for relief, including 10 claims of ineffective assistance of trial counsel. SH at 2-195. While it may be possible that habeas counsel could have raised an ineffective-assistance-of-trial-counsel claim regarding trial counsel's failure to investigate Ayestas's history of substance abuse, it cannot be said that the failure to do so constituted deficient performance. As the Supreme Court has noted in addressing an ineffective-assistance-of-appellate-counsel claim, counsel are not required to raise every possible non-frivolous claim. "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Jones v. Barnes, 463 U.S. 745, 751-52 (1983). Moreover, in light of the extremely brutal nature of Ayestas's crime and Ayestas's history of criminal violence, it is highly unlikely that evidence of substance abuse would have changed the outcome of the sentencing phase of trial or of the state habeas corpus proceeding. Therefore, Ayestas fails to demonstrate ineffective assistance of state habeas counsel and

cannot show cause for his procedural default of his claims of ineffective assistance of trial counsel.

### B. Investigative Funding

Ayestas contends that Martinez entitles him to time and funding to investigate and further develop his ineffective assistance claims, and he filed a motion for funding to hire an investigator to develop additional evidence in support of his ineffective assistance claim. Martinez did not create any new claims for relief or new rights. The decision, by its own terms, serves only to create a limited equitable exception to the longstanding procedural default rule articulated in Coleman v. Thompson, 501 U.S. 722 (1991). Thus, to qualify for investigative funding a petitioner must satisfy the conditions of the funding statute, 18 U.S.C. § 3599(f).

That statute provides that "[u]pon a finding that investigative, expert, or other services are reasonably necessary for the representation of the defendant, whether in connection with issues relating to guilt or the sentence, the court may authorize the defendant's attorneys to obtain such services on behalf of the defendant[.]" 18 U.S.C.A. § 3599(f). Neither the Supreme Court nor the Fifth Circuit has defined the phrase "reasonably necessary" beyond the statute's plain language. The Fifth Circuit, however, requires a petitioner to show "that he ha[s] a substantial need" for investigative or expert assistance. Clark v. Johnson, 202 F.3d

760, 768 (5th Cir.), cert. denied, 531 U.S. 831 (2000); see also Fuller v. Johnson, 114 F.3d 491, 502 (5th Cir.), cert. denied, 522 U.S. 963 (1997) ("In light of the statutory language, we first note that Fuller did not show a substantial need for expert assistance."). The Fifth Circuit upholds the denial of funding "when a petitioner has (a) failed to supplement his funding request with a viable constitutional claim that is not procedurally barred, or (b) when the sought-after assistance would only support a meritless claim, or (c) when the sought after assistance would only supplement prior evidence." Smith v. Dretke, 422 F.3d 269, 288 (5th Cir. 2005); see also Woodward v. Epps, 580 F.3d 318, 334 (5th Cir. 2009), cert. denied, 130 S. Ct. 2093 (2010).

As discussed above, Ayestas fails to demonstrate that trial counsel was deficient, that there is a reasonable probability that his claimed evidence of substance abuse would have changed the outcome of either his trial or his state habeas corpus proceeding, or that his state habeas counsel was ineffective. Therefore, he fails to demonstrate that the funding he requests is reasonably necessary. Accordingly, Ayestas's motion (Docket Entry No. 49) will be denied.

## IV. Certificate of Appealability

Although Ayestas has not requested a certificate of appealability ("COA"), the court may nevertheless determine whether he is entitled to this relief in light of the court's rulings. See

Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) ("It is perfectly lawful for district court's [sic] to deny [a] COA *sua sponte*. The statute does not require that a petitioner move for a COA; it merely states that an appeal may not be taken without a certificate of appealability having been issued."). A petitioner may obtain a COA either from the district court or an appellate court, but an appellate court will not consider a petitioner's request for a COA until the district court has denied such a request. See Whitehead v. Johnson, 157 F.3d 384, 388 (5th Cir. 1988); see also Hill v. Johnson, 114 F.3d 78, 82 (5th Cir. 1997) ("the district court should continue to review COA requests before the court of appeals does").

A COA may issue only if the petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see also United States v. Kimler, 150 F.3d 429, 431 (5th Cir. 1998). A petitioner "makes a substantial showing when he demonstrates that his application involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are suitable enough to deserve encouragement to proceed further." Hernandez v. Johnson, 213 F.3d 243, 248 (5th Cir.), cert. denied, 531 U.S. 966 (2000). The Supreme Court has stated that

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of

> reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

Slack v. McDaniel, 529 U.S. 473, 484 (2000).

The court has carefully considered Ayestas's argument and concludes that his ineffective assistance of trial claims are foreclosed by clear, binding precedent. The court concludes that under such precedents Ayestas has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The court therefore concludes that Ayestas is not entitled to a certificate of appealability on his claims.

## V. Conclusion and Order

For the foregoing reasons, it is **ORDERED** as follows:

1. Ayestas's ineffective assistance of counsel claims are denied as procedurally defaulted;

2. No Certificate of Appealability shall issue in this case;

3. Petitioner's Motion for Funding for Ancillary Services in Accordance with 18 U.S.C. § 3599(f) (Docket Entry No. 49) is **DENIED**; and

4. Petitioner's Motion for Leave to File *Ex Parte* and Under Seal a Motion for Funding for Ancillary Services in Accordance with 18 U.S.C. § 3599(f) (Docket Entry No. 48) is **MOOT**.

**SIGNED** at Houston, Texas, on this 18th day of November, 2014.

SIM LAKE
UNITED STATES DISTRICT JUDGE