IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

CARLOS MANUEL AYESTAS,               §
             Petitioner,               §
                            §
v.                                   §     Civil Action No. 4:09-CV-2999
                            §
BOBBY LUMPKIN, Director,             §      (Death Penalty Case)
Texas Department of Criminal         §
Justice, Correctional Institutions   §
Division,                            §
             Respondent.               §

## RESPONDENT LUMPKIN'S OPPOSITION TO PETITIONER'S MOTION FOR RELIEF FROM JUDGMENT

Petitioner Carlos Manuel Ayestas, a Texas inmate, previously and unsuccessfully challenged the constitutionality of his capital murder conviction and death sentence in both the state and federal courts. Now Ayestas has filed a motion under Federal Rule of Civil Procedure 60(b)(6) seeking to reopen the Court's previous judgment because, he argues, the Supreme Court's decision in *Banister v. Davis*, 140 S. Ct. 1698 (2020), undermines this Court's prior orders disposing of his claims concerning a memo produced by the Harris County District Attorney's Office. ECF No. 82 (Rule 60(b) Mot.). But like his initial attempt to add new claims predicated on the memo, his Rule 60(b) motion is a successive petition in disguise, and this Court thus lacks jurisdiction to consider it. Regardless, even assuming Ayestas's motion is a proper Rule 60(b) motion, it is untimely and fails to demonstrate the

extraordinary circumstances necessary for this Court to reopen the proceeding. This Court should therefore deny Ayestas's motion.

## PROCEDURAL HISTORY

### I.    Conviction and Postconviction Proceedings

Ayestas was convicted and sentenced to death for the murder of Santiaga Paneque during the course of a robbery. Clerk's Record (CR) 272–73. The Texas Court of Criminal Appeals (CCA) affirmed Ayestas's conviction and sentence on direct appeal, *Ayestas v. State*, No. 72,928 (Tex. Crim. App. Nov. 4, 1998) (unpublished), and then later denied him state habeas relief, *Ex parte Ayestas*, No. WR-69,674-01, 2008 WL 4151814, at *1 (Tex. Crim. App. Sept. 10, 2008) (unpublished).

### II.   Initial Federal Habeas Proceedings

Ayestas subsequently filed his petition for federal habeas relief, raising eight claims for relief, including several unexhausted ineffective-assistance-of-trial-counsel (IATC) claims. ECF No. 1. This Court denied Ayestas federal habeas relief on January 26, 2011. ECF No. 19. The Fifth Circuit denied Ayestas a certificate of appealability (COA), *see Ayestas v. Thaler*, 462 F. App'x 474 (5th Cir. 2012) (per curiam) (unpublished), but the Supreme Court granted his petition for writ of certiorari, vacated the Fifth Circuit's judgment, and remanded the case in light of *Trevino v. Thaler*, 569 U.S. 413 (2013), *Ayestas v. Thaler*, 133 S. Ct. 2764 (2013). The Fifth Circuit then remanded the case to

2

this Court "to reconsider Ayestas's procedurally defaulted [IATC] claims in light of *Trevino*." *Ayestas v. Stephens*, 553 F. App'x 422, 423 (5th Cir. 2014) (per curiam) (unpublished).

## III.   **Post-*Trevino* Remand Litigation**

After supplemental briefing, the Court again denied Ayestas's habeas petition, concluding that the IATC claims at issue were procedurally defaulted, and it denied him expert funding under 18 U.S.C. § 3599(f). ECF No. 51. The Court issued its final judgment denying Ayestas's remanded IATC claims on November 18, 2014. ECF No. 52.

On December 16, 2014, Ayestas moved to alter or amend the judgment under Federal Rule of Civil Procedure 59(e), arguing that *Martinez*[1] and *Trevino* required further factual development and that the Court had prematurely rejected his IATC claims. ECF No. 53. While this motion was pending, Ayestas's federal habeas counsel reviewed the prosecution's file at the Harris County District Attorney's Office and discovered a capital memo prepared in 1995 by Kelly Siegler. *See* Pet. Mot. for Leave to Amend Original Pet. for Writ of Habeas Corpus (Pet. Mot. Amend) 4, ECF No. 54. The Siegler memo listed two potential aggravating circumstances: a) the victim was a helpless sixty-seven-year-old woman killed in her home, and b) Ayestas was

---

[1]     *Martinez v. Ryan*, 566 U.S. 1 (2012).

not a citizen. Rule 60(b) Mot. Ex. A. A line was drawn through the second aggravating circumstance regarding Ayestas's citizenship. *Id.*

On January 9, 2015—more than fifty-two days after final judgment had been entered—Ayestas moved to amend his original habeas petition under Federal Rule of Civil Procedure 15 to include an Eighth and Fourteenth Amendment claim based on the Siegler memo. Pet. Mot. Amend 1. Yet another five days after that, Ayestas filed what he called a "supplemental" Rule 59(e) motion that argued for inclusion of these new claims, as well as a motion to stay and hold the petition in abeyance while he exhausted his new claims in state court. ECF Nos. 55 (Supp. Rule 59(e) Mot.), 56 (Mot. Stay).

This Court denied Ayestas's motion to amend his federal habeas petition and motion for a stay under *Rhines v. Weber*, 544 U.S. 269 (2005). ECF No. 63. As to the amendment, the Court held such an amendment would constitute a successive petition for which Ayestas had demonstrated no exception, and justice therefore did not require granting Ayestas leave to amend a claim that would be futile. ECF No. 63, at 3–4. As to the *Rhines* stay, the Court noted that such a stay is inappropriate when a claim is "plainly meritless." *Id.* at 5. The Court then referenced Texas's abuse-of-the-writ statute, which limits subsequent habeas applications to cases when, as relevant here:

> [T]he current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article

4

> 11.07 because the factual or legal basis for the claim was
> unavailable on the date the applicant filed the previous
> application[.]

ECF No. 63, at 5 (quoting Tex. Code Crim. Proc. art. 11.071 § 5(a)). The Court noted that Ayestas failed to show that the Siegler memo could not have been previously discovered, and absent that showing, the Texas courts would not consider Ayestas's subsequent application. *Id.* at 5–6.

The Court later denied Ayestas's Rule 59(e) motion. ECF No. 64, at 2–3. In that same order, the Court held that Ayestas's "supplemental" Rule 59(e) motion was, in fact, a second or successive petition, given that it fell outside the limited scope of the Fifth Circuit's remand. *Id.* at 3. Consequently, the Court concluded that it was without jurisdiction to hear Ayestas's new claims unless and until Ayestas obtained authorization from the Fifth Circuit under 28 U.S.C. § 2244(b)(3)(A). *Id.* at 3–4.

On appeal, the Fifth Circuit affirmed this Court's denial of expert funding on the IATC claim and declined to grant Ayestas a COA on his request for a *Rhines* stay. *Ayestas v. Stephens*, 817 F.3d 888, 898–901 (5th Cir. 2016), *vacated in part*, 138 S Ct. 1080 (2018). The Fifth Circuit first agreed with this Court's conclusion that adding claims unrelated to the subject of the remand would violate the mandate rule. *Id.* at 899. It also agreed with this Court that a stay would be futile because Texas courts would not have considered Ayestas's second habeas application. *Id.* at 900–901. In doing so, the Fifth

Circuit found that Ayestas had not exercised reasonable diligence in attempting to discover the Siegler memo earlier, and this Court therefore did not abuse its discretion in denying Ayestas's motion for a stay and abeyance. *Id*. at 901.

Ayestas moved for panel and en banc rehearing. The Fifth Circuit denied rehearing en banc, and the panel issued a short opinion on rehearing. *Ayestas v. Stephens*, 826 F.3d 214, 214 (5th Cir. 2016). As relevant here, the Fifth Circuit rejected Ayestas's characterization that their holding under *Rhines* applied to *federal* habeas counsel's diligence, noting that they had been referring not "to the diligence of federal habeas counsel in locating the [Siegler] memo," but rather, consistent with *Rhines* and the Texas abuse-of-the-writ statute, to the diligence of trial counsel. *Id*. at 215.

Ayestas then petitioned the Supreme Court for a writ of certiorari, seeking the Court's review on both the funding and *Rhines*-stay issues. The Supreme Court granted certiorari on the funding issue but denied review of the Siegler memo claim. *Ayestas v. Davis*, 137 S. Ct. 1433 (2017). The Supreme Court eventually reversed the Fifth Circuit's funding opinion and remanded the case for proceedings consistent with its opinion. *Ayestas v. Davis*, 138 S. Ct. 1080, 1085 (2018).

On remand, the parties submitted supplemental briefing, and the Fifth Circuit again affirmed this Court's denial of expert funding under § 3599(f).

*Ayestas v. Davis*, 933 F.3d 384, 387 (5th Cir. 2019). The Supreme Court declined certiorari review. *Ayestas v. Davis*, 140 S. Ct. 1107 (2020).

## IV.   New Developments

On August 25, 2020—about six months after the Supreme Court denied certiorari review—Ayestas filed a subsequent state habeas application in the CCA, raising for the first time in the state courts his Eighth and Fourteenth Amendment claims related to the Siegler Memo. *Ex parte Ayestas*, No. WR-69,674-02, 2020 WL 7234770, at *1 (Tex. Crim. App. Dec. 9, 2020) (unpublished). The CCA dismissed Ayestas's application as subsequent without considering the merits of the claims. *Id*. Two weeks later, Ayestas filed a suggestion that the CCA reconsider, on its own motion, the dismissal of his application. The CCA denied Ayestas's suggestion for reconsideration on January 27, 2021. Pet. Rule 60(b) Mot. Ex. C. Nine days after that, Ayestas filed the instant motion under Rule 60(b). ECF No. 82. This response follows.

## ARGUMENT

## I.   Ayestas's Rule 60(b) motion is actually an impermissible successive habeas petition.

Ayestas's Rule 60(b) motion is, in fact, an impermissible second-or-successive habeas petition. Construing Rule 60(b) in accordance with the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the Supreme Court has explained that the rule cannot be used to circumvent the statute's

proscriptions against second-or-successive petitions. *Gonzalez v. Crosby*, 545 U.S. 524, 531–32 (2005). Because of the rule's "comparative leniency," however, petitioners often "file what are in fact second-or-successive habeas petitions under the guise of Rule 60(b) motions." *In re Edwards*, 865 F.3d 197, 203 (5th Cir. 2017) (per curiam). Given that tendency, a federal court must determine whether the motion either: "(1) presents a new habeas claim . . . or (2) 'attacks the federal court's previous resolution of a claim on the merits.'" *Id.* (citing *Gonzalez*, 545 U.S. at 530, 532); *see also Balentine v. Thaler*, 626 F.3d 842, 846 (5th Cir. 2010) ("A Rule 60(b) motion should be denied if it challenges on the merits an earlier denial of habeas relief."). If it does either, it must be treated as a second-or-successive petition. *In re Edwards*, 865 F.3d at 203.

Here, Ayestas's motion is intended to achieve one result: to add new claims to his long-denied habeas petition. *See* Rule 60(b) Mot. 1 (arguing the Court to "should reopen the litigation in order to consider the invidious discrimination that the State has concealed for decades"). Indeed, there is no question that Ayestas did not present Eighth and Fourteenth Amendment claims predicated on the Siegler memo in his initial federal habeas petition. *See id*. at 6 (arguing he was "unable" to include any claims related to the Siegler Memo in his initial petition because he was unaware that the memo existed). The claim he seeks to present is therefore indisputably new, and his Rule 60(b) motion is, in fact, a paradigmatic successive petition. *See Gonzalez*,

545 U.S. at 531 ("Using Rule 60(b) to present new claims for relief from a state court's judgment of conviction—even claims couched in the language of a true Rule 60(b) motion—circumvents AEDPA's requirement that a new claim be dismissed unless it relies on either a new rule of constitutional law or newly discovered facts."); *In re Edwards*, 865 F.3d at 204–05 ("The Rule 60(b) motion seeks to re-open the proceedings for the purpose of adding new claims. This is the definition of a successive claim."). The Court thus lacks jurisdiction to consider it.

Attempting to evade this result, Ayestas obfuscates the procedural complexities of his case so that this Court will not see his Rule 60(b) motion as the successive petition that it truly is. Indeed, though Ayestas does not squarely address whether his instant Rule 60(b) motion is a successive petition, the thrust of his Rule 60(b) motion relies on what he purports to be the change in law enacted by *Banister v. Davis*, 140 S. Ct. 1698 (2020). *See* Rule 60(b) Mot. 1, 13–15 (arguing that *Banister* constitutes one of the extraordinary circumstances present in his case). *Banister*, he claims, "overruled the jurisdictional rule this Court invoked to dispose of the claim at issue, holding that arguments presented in [a Rule] 59(e) posture are not to be analyzed as successive petitions under 28 U.S.C. § 2244(b)(2)." Rule 60(b) Mot. 1, 13–15. But *Banister* has no application to Ayestas's case for two primary reasons.

9

First, *Banister* does not apply because Ayestas's 2014 and 2015 motions seeking to add new claims to the proceedings were not, in fact, Rule 59(e) motions. Ayestas did not move to amend his federal petition to add new claims related to the Siegler memo until fifty-three days after this Court entered final judgment denying his claims *for the second time* on a limited remand from the Fifth Circuit. *Compare* ECF No. 52 (final judgment on remanded IATC claims entered on November 18, 2014), *with* Pet. Mot. Amend 1 (filed January 9, 2015). Under Fifth Circuit precedent, Ayestas's post-judgment attempt to amend was actually a Rule 60(b) motion. *See Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) ("Under the rule in this Circuit, plaintiffs' post-dismissal motion must be treated as a motion under Rule [60(b)], not Rule 15(a)."). And because Ayestas filed a functional Rule 60(b) motion that sought to add a new claim, his motion to amend was blatantly a successive petition for which he needed the Fifth Circuit's authorization to proceed. *See Gonzalez*, 545 U.S. at 532 ("In most cases, determining whether a Rule 60(b) motion advances one or more 'claims' will be relatively simple. A motion that seeks to add a new ground for relief . . . will of course qualify."); *In re Edwards*, 865 F.3d at 204–05 (seeking to re-open the proceedings to add new claims "is the definition of a successive claim"); *see also Balbuena v. Sullivan*, 980 F.3d 619, 636 (9th Cir. 2020) ("Because petitioner did not move to amend until 'after the district court had denied his claims,' he was required to satisfy the requirements for

10

successive petitions under § 2244(b)." (quoting *Beaty v. Schriro*, 554 F.3d 780, 782–83 (9th Cir. 2009))); *United States v. Nelson*, 465 F.3d 1145, 1149 (10th Cir. 2006) ("[B]ecause judgment has been entered on Mr. Nelson's first § 2255 motion, it cannot be disputed that this is a second or successive § 2255 motion.").

Likely recognizing that, Ayestas instead claims to have "perfect[ed]" his Rule 59(e) motion, *see* Rule 60(b) Mot. 8, by filing what he purported to be a "supplemental" Rule 59(e) motion, *see* Supp. Rule 59(e) Mot. 1. This supplemental motion was filed fifty-eight days after the Court's final judgment. *See id.* (filed January 14, 2015). But there is no such thing as a "supplemental" Rule 59(e) motion, and there is no such thing as "perfecting" an untimely Rule 59(e) motion to bring it within the ambit of a timely filed one. To the contrary, the Federal Rules of Civil Procedure make clear that a motion under Rule 59 "must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(b). To allow what was a functional amendment of Ayestas's initial Rule 59(e) motion "would in effect [have been] permitting an extension of time under Rule 6(b) of the Federal Rules of Civil Procedure." *Martinez v. Trainor*, 556 F.2d 818, 820 (7th Cir. 1977); *see also Feldberg v. Quechee Lakes Corp.*, 463 F.3d 195, 197 (2d Cir. 2006) ("Permitting the [plaintiffs] to supplant their timely yet insufficient 'placeholder' Rule 59(e) motion from February 15 with their subsequent augmented filing on April 7

would afford them an easy way to circumvent Rule 6(b)'s prohibition on granting an enlargement of time for filing motions under Rule 59(e).").

This the Court could not do because, under Rule 6(b), "[a] court must not extend the time to act under Rule [59(e)]." Fed. R. Civ. P. 6(b)(2); *see Banister*, 140 S. Ct. at 1703 ("The time for [filing a Rule 59 motion] is short—28 days from entry of judgment, with no possibility of an extension."); *see also Heck v. Triche*, 775 F.3d 265, 271 n.5 (5th Cir. 2014) ("The district court purportedly granted Triche an extension of time beyond the twenty-eight-day deadline to file his Rule 59 motion, but that deadline is jurisdictional and cannot be extended by the court."). And, even if the deadline were not jurisdictional, his supplemental motion does not relate back to the filing of his original motion because the issues raised in his supplemental Rule 59(e) motion are entirely distinct from those raised in his timely filed Rule 59(e) motion. *Cf. Mayle v. Felix*, 545 U.S. 644, 650 (2005) (holding that an amended habeas petition does not "relate back" to an initial petition, such that it escapes the statute of limitations, "when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth"). Thus, Ayestas's "supplemental" Rule 59(e) motion was, in reality, an untimely Rule 59(e) motion.

As an untimely Rule 59(e) motion, the "supplemental" motion, like his motion to amend, was actually a Rule 60(b) motion seeking relief from a final

judgment. *See Sanders v. Wright*, 734 F. App'x 303, 304 (5th Cir. 2018) ("Wright's untimely Rule 59(e) motion became, in substance, a motion for relief under Rule 60(b)."); *Demahy v. Schwarz Pharm., Inc.*, 702 F.3d 177, 182 n.2 (5th Cir. 2012) ("If the motion [asking the court to reconsider a prior ruling] was filed within twenty-eight days after the entry of the judgment, the motion is treated as though it was filed under Rule 59, and if it was filed outside of that time, it is analyzed under Rule 60."); *see also Lora v. O'Heaney*, 602 F.3d 106, 111 (2d Cir. 2010) ("An untimely motion for reconsideration is treated as a Rule 60(b) motion."); *Mahone v. Ray*, 326 F.3d 1176, 1177 n.1 (11th Cir. 2003) ("Although Mahone did not specify whether his motion for reconsideration was filed pursuant to Fed. R. Civ. P. 59(e) or 60(b), we designate it as the latter because it was not filed within 10 days[2] of the judgment that it seeks to reopen.").

In other words, both Ayestas's motion to amend and "supplemental" Rule 59(e) motion were the same—both were, in fact, Rule 60(b) motions. As such, *Gonzalez*, not *Banister*, controls. *Compare Gonzalez*, 545 U.S. at 532 (a Rule

---

[2]     "Prior to December 1, 1995, Rule 59(e) of the Federal Rules of Civil Procedure required *service* of a motion to alter or amend judgment within ten days of the entry of judgment." *Long v. Simmons*, 77 F.3d 878, 879 (5th Cir. 1986). The rule was amended in 1995 to require that the motion "be *filed* no later than 10 days after entry of judgment." *Id.* In 2009, the ten-day-filing period was extended to twenty-eight days. *Williams v. Thaler*, 602 F.3d 291, 304 n.7 (5th Cir. 2010).

60(b) motion that seeks to add entirely new constitutional grounds to a habeas petition must be treated as second or successive petitions), *with Banister*, 140 S. Ct. at 1702 (holding that a timely filed Rule 59(e) motion does not qualify as a successive petition). And because Ayestas's functional Rule 60(b) motions clearly sought to raise new claims, this Court's determination that it was successive was correct. *See* ECF No. 64, at 3.

Indeed, *Banister* is inapplicable to Ayestas's case for a second reason: despite Ayestas's assertions otherwise, *see* Rule 60(b) Mot. 1, this Court *never* held that Ayestas's "supplemental" Rule 59(e) motion was successive simply by virtue of it being a true Rule 59(e) motion. *See* ECF No. 64, at 3. Rather, the Court held that Ayestas's supplemental request—unrelated as it was to the IATC claims at issue in the remand—fell outside the scope of the mandate of the Fifth Circuit, which instructed the Court to consider only the unexhausted IATC claims. *See* ECF No. 64, at 3. As the Court accurately summarized:

> In his supplemental motion, Ayestas seeks to amend his petition to add an equal protection claim based on newly discovered evidence. The newly discovered evidence is not relevant to the [IATC] claims considered by this Court on remand from the Fifth Circuit. While Ayestas frames his attempt to raise this new claim as merely amending his petition, the new claim is not within the scope of the remand. The remainder of Ayestas'[s] petition has long since been dismissed, with that dismissal affirmed on appeal.

*Id*. In other words, because the Court issued final judgment on every claim *but* the remanded IATC claims in 2011, Ayestas's four-year-later attempt to reopen

the proceedings to add a new claim was undoubtedly a successive petition. *See id.* ("Rather than seeking to amend his existing petition, Ayestas'[s] supplemental motion actually seeks leave to file a successive petition."). In short, his request to reopen the case long after final judgment was a Rule 60(b) motion seeking to raise new claims and was, therefore, a successive petition in disguise. *Banister* has no application to these circumstances.

Stripped of the wholly inapposite procedural gloss, Ayestas's instant Rule 60(b) motion merely challenges the Court's previous (and correct) determination that his prior functional Rule 60(b) motions were, in fact, successive petitions. But a petitioner should not be permitted to use a Rule 60(b) motion to challenge a court's determination that his prior attempts to add new claims were successive because such would circumvent § 2244(b)'s stringent limits on successive habeas petitions and undermine AEDPA's twin goals of comity and finality. *See Banister*, 140 S. Ct. at 1706 ("The point of § 2244(b)'s restrictions, we have stated, is to 'conserve judicial resources, reduc[e] piecemeal litigation,' and 'lend[] finality to state court judgments within a reasonable time.'" (quoting *Panetti v. Quarterman*, 551 U.S. 930, 945–46 (2007))). AEDPA already proscribes a path for Ayestas to seek to add new claims to his federal habeas proceedings after final judgment has occurred: he may request authorization from the Fifth Circuit to do so. *See* § 2244(b)(3)(A).

Rather than do so, Ayestas instead "abuse[s] the habeas process by stringing out his claims over the years." *Banister*, 140 S. Ct. at 1708.

Indeed, it is for this reason that, even Ayestas's "supplemental" Rule 59(e) motion could be considered a "true" Rule 59(e) motion, the Director believes that *Banister* would not control. While *Banister*'s holding is stated in seemingly broad terms, *see* 140 S. Ct. at 1702, neither its facts nor its rationale applies to the facts of the present case, i.e., a Rule 59(e) motion seeking to raise an entirely new claim. That is, the *Banister* rationale is inextricably premised on the fact that Banister's motion was: a) timely filed; and b) "[c]onsistent with the Rule's corrective purpose" to "urge[] the court to fix what he saw as 'manifest errors of law and fact.'" *See id*. at 1704. What *Banister* did not address—because it did not need to on the facts before it—was whether a *new-claim* post-judgment motion, including one filed within twenty-eight days of judgment, is jurisdictionally barred under § 2244(b). *See, e.g.*, *id*. at 1703 n.2 (noting that while courts may consider within the Rule 59(e) context new arguments based on, inter alia, "newly discovered or previously unavailable evidence," "it is rare for such arguments or evidence to emerge within Rule 59(e)'s strict 28-day timeframe").

To be sure, the tension between a *new-claim* Rule 59(e) motion and the strictures of § 2244(b) is significantly greater here than in *Banister*, given that § 2244(b) was explicitly enacted to limit such new claims, as *Gonzalez*

recognized. *See, e.g.*, *Gonzalez*, 545 U.S. at 531 (finding that a motion under Rule 60(b)(2) that seeks leave to present newly discovered evidence is clearly a successive petition under § 2244(b)). And many of the distinctions between motions under Rule 59(e) and 60(b) that the Court relied upon in reaching its conclusion in *Banister* do not apply with equal force to the type of motion Ayestas filed here—he did not give the Court a "brief chance" to fix "alleged errors in a just-issued decision," *Banister*, 140 S. Ct. 1708, 1710, nor did his motion "hew[] closely to the initial application" in either "timing [or] substance," *id.* at 1708. Rather, like any successive petition, Ayestas's motion was distinct in "time and scope," *id.* at 1710, and certainly, it cannot be said that a district court's resolution of such a claim would be "brief" or that the costs of resolving such a motion would be "slight," *id.* at 1708 ("A judge familiar with a habeas applicant's claims can usually make quick work of a meritless motion."). Plainly, then, Ayestas's motion, even if it could be considered a "true" Rule 59(e) motion in timing alone, does not fall within *Banister*'s ambit and was still successive. *See, e.g.*, *Rishor v. Ferguson*, 822 F.3d 482, 492–93 (9th Cir. 2016) (holding that while a Rule 59(e) motion that simply urges reconsideration of the claims already denied (as Banister's did) was not successive, a motion that asserts "entirely *new* claims" is).

In sum, Ayestas's reliance on *Banister* is a strawman argument that does not save his Rule 60(b) motion from the prohibition against successive

petitions. And Ayestas's attempt to manufacture a procedural defect by relying on inapplicable law lays bare his true intent: to raise new claims in his federal proceeding, i.e., a quintessential second or successive habeas petition. His purported Rule 60(b) motion must be dismissed as second or successive.

## II.   Ayestas Is Not Entitled to Relief Under Rule 60(b)(6).[3]

Rule 60(b)(6) "is a catchall provision that allows a court to grant relief 'from a final judgment, order, or proceeding' for 'any other reason that justifies relief.'" *In re Edwards*, 865 F.3d at 203. To succeed on such a motion, the movant must demonstrate: "(1) that the motion be made within a reasonable time; and (2) extraordinary circumstances exist that justify the reopening of a final judgment." *Id*. (citing *Gonzalez*, 545 U.S. at 530, 535). The Supreme Court has explained that such extraordinary circumstances "'will rarely occur in the habeas context.'" *Buck v. Davis*, 137 S. Ct. 759, 772 (2017) (quoting *Gonzalez*, 545 U.S. at 535). Here, Ayestas demonstrates neither that this motion was timely nor that it presents extraordinary circumstances.

### A.   Ayestas's Rule 60(b) motion is untimely.

Even if Ayestas has properly presented a Rule 60(b) motion to this Court, it is untimely. A Rule 60(b) motion must be filed within a reasonable time "unless good cause can be shown for the delay." *Clark v. Davis*, 850 F.3d 770,

_____

[3]      All arguments in this section assume—but the Director does not concede—that Ayestas's post-judgment motion is a true Rule 60(b) motion.

780 (5th Cir. 2017). "Reasonableness turns on the 'particular facts and circumstances of the case.'" *Id*. The timeliness inquiry is typically "measured as of the point in time when the moving party has grounds to make [a Rule 60(b)] motion." *Id.*

Ayestas argues that he has been "unimpeachably diligent in seeking relief on" his claims related to the Siegler memo. Rule 60(b) Mot. 21–22. Indeed, Ayestas's argument for diligence appears to be predicated on the idea that *Banister* effectively started the clock for when he could seek to reopen the Court's judgment and that he "tolled" that clock when he filed a subsequent state habeas application raising the Siegler memo claims. *Id*. at 22 ("At that time, *Banister* had not been decided, and so the decisional ground to pair with the Director's concession was absent."). But he is incorrect for five reasons.

First, as explained above, Argument I, *supra*, *Banister* has no application to the circumstances of Ayestas's case—Ayestas did not file a timely Rule 59(e), and this Court did not conclude that claims raised in a Rule 59(e) motion constitute successive petitions. *See id*. Ayestas's argument that *Banister* therefore voided "the jurisdictional rule this Court invoked to dispose of the claim at issue," Rule 60(b) Mot. 1, is specious and does not serve to restart the clock on his diligence. That is, Ayestas cannot rely on *Banister* as the "decisional ground" with which he could "pair" his factual arguments related to the Director's supposed concession because *Banister* was not in any way

19

relevant to his case. Ayestas's attempt to manufacture a new start date by relying on inapposite law should not be permitted and certainly should not narrow the window through which his diligence should be assessed.

Second, even if *Banister* could be considered the operative start date, his decision to instead pursue state-court exhaustion was not diligent because it was not warranted. Indeed, assuming that *Banister* applied in the manner Ayestas claims it does, its rule applies to *federal* court process, not to the merits of his underlying constitutional claims. In other words, *Banister* (hypothetically) affects *this* Court's characterization of Ayestas's prior post-judgment motions as successive, and Ayestas should therefore have returned to *this* Court to seek to correct any supposed mistake. *See Clark*, 850 F.3d at 780 (timeliness is measured by "the point in time when the moving party has grounds to make [a Rule 60(b)] motion"). It makes no sense that *Banister*—a case dealing purely with federal procedure—somehow required or warranted *state*-court "exhaustion," and his decision to return to state court does not excuse his failure to raise any issues premised on *Banister* in this Court until more than eight months later.[4] *See Tamayo v. Stephens*, 740 F.3d 986, 991 (5th

---

[4]    Ayestas attempts to account for his failure to return to federal court while his state court proceedings were pending by citing to Texas's two-forum rule. *See* Rule 60(b) Mot. 21 n.11. But that argument puts the cart before the horse because it should have been done the other way around: if the Court had truly made an error in its successiveness determination, Ayestas's exhaustion of his claim would have no

Cir. 2014) (per curiam) (holding that district court did not abuse its discretion in denying Rule 60(b) motion filed eight months after the relevant change in law).

Third, the Director's alleged "concession" in its brief in opposition before the Supreme Court in 2017 does not restart his diligence-clock either. *See* Rule 60(b) Mot. 21–22 (arguing that *Banister* was needed as the decisional ground "to pair with the Director's concession"). Indeed, as the Director argued in its brief on remand to the Fifth Circuit, *see* Br. for Respondent–Appellee 44–46, *Ayestas v. Davis*, 933 F.3d 384, 387 (5th Cir. 2019), the Director made no concession, much less one that "destroy[ed] the factual basis for this Court's prior ruling," *see* Rule 60(b) Mot. 1. The Director's argument that Ayestas failed to show he could not have discovered the Siegler memo sooner was not predicated on whether the memo was privileged work product, but on the fact that, *regardless* of whether it was work product, it somehow found its way into the file such that it was discoverable by Ayestas in December 2014, and Ayestas wholly failed to establish that it was *undiscoverable* at any point before then. *See* ECF No. 60, at 7–8 ("Ayestas contends that the document was first discovered in December 2014 after reviewing portions of the State's file,

---

bearing on that, and if the Court decided to reopen his proceedings, Ayestas could *then* have sought a stay of the federal proceedings to exhaust his claims. That he chose procedurally improper methods for raising his claim, however, does not make him diligent.

21

but there is absolutely no indication that the report was not in those very same files prior to his filing his original federal habeas application in September 2009."); Resp. to Pet. for Reh'g En Banc 9, *Ayestas v. Stephens*, 817 F.3d 888, 898–901 (5th Cir. 2016) ("Ayestas's attempt to excuse []his lack of diligence by blaming the State and relying on the self-serving assumption that it would have been futile to ask the State to produce *work product* [is] unavailing." (emphasis added)). This was consistent with the Director's argument in his brief in opposition, wherein he argued that the State had no obligation—via *Brady* or otherwise—to go out of its way to provide the Siegler memo to Ayestas. Br. in Opp. 17–18 & n.10, *Ayestas v. Davis*, 138 S. Ct. 1080 (2018).

The Director's argument was also consistent with the holdings of the courts in disposing of his claims. This Court noted that Ayestas never accounted for *how* or *when* this document arrived in the file, and his failure to do so undermined any assertion of diligence. *See* ECF No. 63, at 4 (holding Ayestas did "not allege that the document could not have been discovered previously through the exercise of due diligence" in that he specifically did "not allege that the prosecutor's file was previously unavailable to him, or that the document was omitted from the file when it was produced"). And the Fifth Circuit noted that Ayestas had "never suggest[ed] he sought to examine the prosecution's file prior to the December 22 search that uncovered the memorandum." *Ayestas*, 817 F.3d at 900. The Fifth Circuit specifically

addressed Ayestas's argument that the fact that the memo was work product absolved him of any duty to ask for or search through the prosecutor's file, holding that such justification was "circular" because "the point of reasonable diligence is to ensure that such evidence is found when it is unclear where such evidence may lie." *Id.* at 901. Simply put, the Director never claimed, and no court ever held, that the Siegler memo was not privileged work product. As such, Ayestas's attempt to rely on a purported concession does not restart his diligence clock.

Fourth, even if the Director's supposed concession *could* be read to start the clock for timeliness, Ayestas could and should have sought to reopen his proceedings on that basis *then*. Indeed, the Fifth Circuit has held that, while a district court may not grant a Rule 60(b) motion while an appeal is pending, it may "consider on the merits and *deny* a [Rule] 60(b) motion filed after a notice of appeal, because the district court's action is in furtherance of the appeal." *Winchester v. U.S. Attorney for Southern Dist. of Texas*, 68 F.3d 947, 949 (5th Cir. 1995); *see also Emmett v. McGuire*, No. 3:07-CV-389-P, 2010 WL 11541783, at *3 (N.D. Tex. 2010) ("Because the denial of the Rule 60(b) motion is in furtherance of the appeal, the district court has the power to consider and deny a Rule 60(b) motion filed after a notice of appeal."). But if the Court had been inclined to grant a Rule 60(b) motion, Ayestas could have made "a motion in the Court of Appeals for a remand of the case in order that the district court

may grant such motion." *Winchester*, 68 F.3d at 949; *see also Stewart v. Sheen*, No. 3:06-CV-2054-K, 2008 WL 5191504, at *1 (N.D. Tex. Dec. 10, 2008) ("[T]he Court denied Strong's original [60(b)] motion because the Court has been divested of jurisdiction to grant a rule 60 motion when Strong filed a notice of appeal with the Fifth Circuit before this Court could rule on his motion. . . . Strong has since remedied this problem by securing leave of the Fifth Circuit for this Court to rule on his Rule 60 motion."). Thus, had Ayestas believed that the Director's purported concession truly "destroye[d]" the factual basis of this Court's prior determination, he could have sought to remedy such in federal court in 2017, rather than waiting until four years later. His decision to instead press the issue is a procedurally incorrect manner—i.e., through raising the issue in the Fifth Circuit on remand despite the bounds of the Supreme Court's mandate, *see, e.g.*, Rule 60(b) Mot. 21 (arguing that, on remand to the Fifth Circuit, he "continued to press the Siegler Memorandum claim before the Fifth Circuit, calling attention to the Director's concession" but that the Fifth Circuit "simply forgot" to resolve the issue)—does not render him diligent.

Absent either *Banister* or the Director's "concession" restarting the clock, Ayestas's instant Rule 60(b) motion is untimely for a fifth reason: the operative start date for filing a Rule 60(b) predicated on the Siegler memo began, at the latest, when Ayestas discovered the evidence in December 2014. That is, while his "supplemental" Rule 59(e) motion—a functional Rule 60(b) motion, *see*

Argument I, *supra*—could arguably have been considered a timely Rule 60(b) motion, his present Rule 60(b) motion, filed more than six years later, is not. Ayestas had one shot to litigate his claims in a Rule 60(b) motion. He did so by filing an improper Rule 59(e) motion raising a new claim that exceeded the scope of this Court's mandate on remand from the Fifth Circuit. Then, instead of seeking authorization from the Fifth Circuit to raise an indisputably new claim, he chose to litigate the mandate rule issue and the Court's disposition of his various motions. And then, even after the Director's alleged "concession," he unsuccessfully attempted to litigate the claim in the Fifth Circuit on remand, outside the scope of the *Supreme Court's* mandate as well.[5] Moreover, when federal habeas finally concluded, he waited yet another six months before pursuing unnecessary and irrelevant state court remedies.[6] *See Tamayo*, 740

---

[5]      Given that the Supreme Court denied certiorari review on the Siegler memo claim, and that its remand was limited to the funding issue, it is not at all "surprising[]," *see* Rule 60(b) Mot. 9, that the Fifth Circuit did not address Ayestas's procedurally improper claim but, instead, continued addressing the issue on remand to it.

[6]      Ayestas claims that he could not proceed in state court until he reinvestigated the entire case to prevent forfeiture of any unknown, hidden claims. Rule 60(b) Mot. 21. That argument is a non-starter and would turn diligence on its head. For one, it takes the focus away from the claim here, something that could have been raised in state court *years* ago. Ayestas may not use a protestation of thoroughness for other, unknown and unraised claims to escape diligently presenting one he has known about for years. For another, it would create a standardless diligence test allowing petitioners to claim the need for total reinvestigation, taking an unknown amount of time and effort, before filing anything in state court lest they lose out on raising a claim they did not know about. Evaluating the reasonableness of something unknown and unknowable cannot be the standard.

25

F.3d at 991 (eight months after relevant court opinion issued, with only two days before a pending execution, was not diligent); *see also In re Osborne*, 379 F.3d 277, 284 (5th Cir. 2004) ("It would normally be within the court's clear discretion to find a three-month delay unreasonable."). That he again and again chose improper procedural mechanisms for raising his claims in a piecemeal fashion does not make him diligent such that he can now raise yet another Rule 60(b) motion almost one year after even federal habeas proceedings finally terminated. *See Clark*, 850 F.3d at 782 (holding Rule 60(b) motion filed either sixteen months after *Trevino* or twelve months after new counsel was appointed was untimely). Ayestas's present attempt to reopen these proceedings on a basis that could have been raised long ago is therefore untimely.

### B.   Ayestas fails to demonstrate extraordinary circumstances.

Even if Ayestas's motion is not untimely, he wholly fails to establish extraordinary circumstances. The Supreme Court has held that, "[i]n determining whether extraordinary circumstances are present, a court may consider a wide range of factors[,]" including "'the risk of injustice to the parties' and 'the risk of undermining the public's confidence in the judicial process.'" *Buck*, 137 S. Ct. at 778 (quoting *Liljeberg v. Health Serv. Acquisition Corp.*, 486 U.S. 847 (1988)). This also includes the "significant element" that there be "'a good claim or defense'" to justify reopening final judgment. *Id.* at

780 (quoting 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2857 (3d ed. 2012)). Extraordinary circumstances, however, "will rarely occur in the habeas context." *Gonzalez*, 545 U.S. at 535.

Here, Ayestas alleges three circumstances that he claims are extraordinary: 1) the Director's supposed concession that the memo was not in fact available to trial counsel, *see* Rule 60(b) Mot. 11–13; 2) *Banister*'s alleged overruling of the Court's jurisdictional rule, *id*. at 13–15; and 3) Ayestas's claim is one of "invidious discrimination" like that at issue in *Buck*, *id*. at 15–20. But as thoroughly discussed above, his first two circumstances cannot even be remotely extraordinary where neither has in fact occurred. Indeed, the Director made no such concession in the Supreme Court or anywhere else. *See* Argument II.A, *supra*. And *Banister* has no application to the facts of Ayestas's case: Ayestas's motions were not Rule 59(e) motions but functional Rule 60(b) motions and thus subject to § 2244(b)'s strictures. *See* Argument I, *supra*.

More to the point, even if *Banister* did apply to Ayestas's case, it still fails to establish any extraordinary circumstance. Indeed, in *Gonzalez*, a district court did not reach the merits of an inmate's claims because, under then-existing law, the habeas petition was untimely. 545 U.S. at 527. Months later, the Supreme Court issued an opinion that arguably rendered the time-bar ruling incorrect. *Id*. at 537. Assuming incorrectness, the Supreme Court found

that Rule 60(b)(6) relief was unwarranted because "[i]t is hardly extraordinary that subsequently, after petitioner's case was no longer pending, this Court arrived at a different interpretation." *Id.* Similarly, any change in law that *Banister* enacted is "hardly extraordinary." *See Crutsinger v. Davis*, 929 F.3d 259, 266 (5th Cir. 2019) ("It would appear that the Supreme Court's holding in *Gonzalez* that 'not every interpretation of the federal statutes setting forth the requirements for habeas provides cause for reopening cases long since final' is at least instructive, if not dispositive, of Crutsinger's Rule 60(b) motion." (quoting *Gonzalez*, 545 U.S. at 535)).

Ayestas acknowledges that, in the Fifth Circuit, "an intervening change in law is not *alone* sufficient to reopen a judgment" but argues that such "change in law weighs substantially in favor of post-judgment relief where, as here, it is coupled with other exceptional circumstances." Rule 60(b) Mot. 15 (citing *Diaz v. Stephens*, 731 F.3d 370, 375 (5th Cir. 2013)). He then points to *Buck*, which he claims awarded Rule 60(b) relief "on the ground that decisional law had changed" as well as "because the change unlocked a previously unavailable path to merits review of a discrimination claim." *Id.* (citing *Buck*, 137 S. Ct. at 767). But this is a mischaracterization of *Buck*. *Buck* held that extraordinary circumstances existed where: 1) IATC may have led to the petitioner being sentenced to death, in part, because of his race; and 2) the Texas Attorney General's Office took "remarkable steps" in confessing error in

the cases of six similarly-situated defendants, but not in Buck's case. 137 S. Ct. 777–79. It was only *after* finding that extraordinary circumstances existed that the Court then held that *Martinez/Trevino* would govern Buck's case were it reopened, and the Court made no broader determination as to the application of those cases. *Id*. at 779–80.

The Court did so because, when Buck initially sought federal habeas relief in 2004, the district court was prohibited from hearing his claim under *Coleman v. Thompson*, 501 U.S. 722 (1991), which held that an attorney's failure to raise an IATC claim during state habeas proceedings did not constitute cause. *Buck*, 137 S. Ct. at 770, 779. *Martinez* and *Trevino* subsequently modified the *Coleman* rule, allowing defaulted IATC claims to be heard if state habeas counsel was constitutionally ineffective in failing to raise it and the claim has some merit. *Id*. at 779–80. Thus, Buck could not obtain relief on a Rule 60(b) motion "unless he [wa]s entitled to the benefit of this rule—that is, unless *Martinez* and *Trevino*, not *Coleman*, would govern his case were it reopened." *Id*. at 780. "If they would not, his claim would remain unreviewable, and Rule 60(b)(6) relief would be inappropriate" because there would not be "a good claim or defense.'" This reasoning dooms Ayestas's attempt at Rule 60(b) relief.

Indeed, unlike *Buck*, Ayestas's Siegler memo claims are not "'good claim[s] or defense[s]'"—this Court and the Fifth Circuit have already correctly

determined that the mandate rule precludes consideration of the claims.[7] *See* ECF No. 64, at 3; *Ayestas*, 817 F.3d at 899.  Further, the claims are also barred by both the statute of limitations, *see* ECF No. 59, at 7–9, and the CCA's dismissal of his subsequent application, *see Ex parte Ayestas*, 2020 WL 7234770, at *1. And also unlike *Buck*, Ayestas cannot benefit from the narrow exception created by *Martinez* and *Trevino* because those cases do not apply to non-IATC claims. *See Davila v. Davis*, 137 S. Ct. 2058, 2063 (2017) (declining to extend *Martinez* to ineffective assistance of appellate counsel claims); *see also Murphy v. Davis*, 732 F. App'x 249, 257 (5th Cir. 2018) (unpublished) ("We are also bound by our past pronouncements that *Martinez* and *Trevino* apply 'only' to [IATC] claims. And the Supreme Court in *Davila* was unwilling to extend *Martinez* and *Trevino* beyond [IATC] claims, calling the exception 'narrow,' 'highly circumscribed,' and available only in 'limited circumstances." (internal citations omitted)). Thus, his claims would remain unreviewable even

---

[7]     Ayestas tries to minimize the Court's mandate-rule decision by bizarrely suggesting that the Court made only a "brief[] reference[]" to the mandate rule in its order and that the Fifth Circuit "did not affirm that holding[.]" Rule 60(b) Mot. 8 n.5. The Court's decision denying his supposed Rule 59(e) motions relied *primarily* on the mandate rule when it denied his "supplemental" Rule 59(e) motion. *See* Argument I, *supra*; *see also* ECF No. 64, at 3. And the Fifth Circuit *specifically* affirmed this ruling. *Ayestas*, 817 F.3d at 899 (holding that this Court "did not err in its interpretation of [the Fifth Circuit's] remand order or its application of the mandate rule"). Further, given that he fails to establish extraordinary circumstances, he fails to demonstrate any reason the Court should not apply the mandate rule either.

if his case were reopened, and "Rule 60(b)(6) relief would be inappropriate." *Buck*, 137 S. Ct. at 780.

Moreover, Ayestas's attempts to analogize the merits of his claims to that at issue in *Buck* fails. *See* Rule 60(b) Mot. 15–20. Indeed, Ayestas entirely lacks factual support for his claim that the prosecutorial decision to seek capital punishment in his case was premised, at least in part, on his national origin. *See id*. at 16. The only proof he has submitted to show that the State "relied on [Ayestas's ]citizenship" in its "capital sentencing calculus" is the Capital Murder Summary prepared by Siegler that lists Ayestas's citizenship as an aggravating factor. *See* Rule 60(b) Mot. Ex. A. But the offending statement in the memo upon which Ayestas's argument rests was clearly marked through and crossed out. *See id*. And Ayestas's attempts to create doubt regarding the timing and significant of the mark, as well as his attempts to cast aspersions on Siegler's character,[8] *see* Rule 60(b) Mot. 2–4 & n.2, only serve to highlight his failure to meet his burden of proof. Ayestas's "proof" is nothing more than conjecture. But conjecture works both ways: it is just as, if not more, likely that

---

[8]     This attack on Siegler's credibility is clearly inadmissible character evidence. Fed. R. Evid. 404(a) ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."). In any event, even if Siegler was the one responsible for initially listing Ayestas's citizenship as an aggravating factor on the memo, she was not the one with final authority over the charging decision. Indeed, the memo indicates that she was merely the first of four levels of review in a process that ultimately ended with the elected district attorney.

the crossed out line indicates that, at some point in the review process that made its way through the various levels of hierarchy in the Harris County District Attorney's Office, these officials *eliminated* consideration of such, and it was therefore not the basis of the decision to indict Ayestas for capital murder. In any event, conjecture is not enough to support a valid claim of constitutional error, much less one of the kind present in *Buck*.

Finally, while the Fifth Circuit has "never explicitly held that the '*Seven Elves* factors bear on the extraordinary circumstances analysis under Rule 60(b)(6)," the Circuit has nevertheless "used them as a guide in evaluating the strength of a motion brought pursuant to Rule 60(b)(6)." *Haynes v. Davis*, 733 F. App'x 766, 769 (5th Cir. 2018) (unpublished). No other equitable factors weigh in Ayestas's favor. Indeed, as the Fifth Circuit has observed, "[I]n the context of habeas law, comity and federalism elevate the concerns of finality, rendering the [Rule] 60(b)(6) bar even more daunting." *Id.* (citing *Diaz*, 731 F.3d at 376). And, in *Haynes*, the Court emphasized that "finality is a particularly strong consideration" given the habeas context of Haynes' case:

> Haynes was convicted by a jury in state court nearly twenty years ago. He has been litigating his claims in federal court for over a decade, and this case has gone through multiple cycles of review.

*Id.* Here, Ayestas was convicted almost twenty-five years ago, has been litigating his claims in federal court for over a decade, and has gone through multiple cycles of review. *See* Procedural History, *supra*.

In short, Ayestas has not demonstrated extraordinary circumstances warranting relief from judgment, and this Court should deny his Motion.

## CONCLUSION

For these reasons, the Director respectfully requests that this Court deny Ayestas's motion for Rule 60(b)(6) relief. Ayestas's motion fails to demonstrate that extraordinary circumstances exist that would justify Rule 60(b)(6) relief and instead mostly attempts to add new habeas claims to his long-denied habeas petition. Accordingly, this Court should dismiss it as a disguised successive petition or transfer it to the Fifth Circuit for authorization. Alternatively, Rule 60(b) relief should be denied.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
for Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

s/ Gwendolyn S. Vindell
GWENDOLYN S. VINDELL*
Assistant Attorney General
*Lead Counsel                    State Bar No. 24088591
Southern ID No. 2202376

P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1600
(512) 320-8132 (Fax)
E-mail: gwendolyn.vindell2@oag.texas.gov

ATTORNEYS FOR RESPONDENT

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing pleading was served by placing same in the United States Mail, postage prepaid, on the 13th day of April, 2021, addressed to:

Sheri L. Johnson
Cornell University
School of Law
240 Myron Taylor Hall
Ithaca, NY 14853-4901

Lee Benjamin Kovarsky
Phillips Black, Inc.
727 East Dean Keeton Street
Jon 6.222
Austin, TX 78705

s/ Gwendolyn S. Vindell
GWENDOLYN S. VINDELL
Assistant Attorney General