IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CARLOS MANUEL AYESTAS, a/k/a Dennis Humberto Zelaya Corea | § § § § | |
| Petitioner, | § § | |
| v. | § § | USDC No. 4:09-cv-2999 |
| BOBBY LUMPKIN, Director, Texas Department of Criminal Justice, Correctional Institutions Division | § § § § | |
| | § | Capital Case |
| Respondent. | § § § | |

**RESPONSE TO MOTION TO STRIKE**

Given that Petitioner Carlos Ayestas has alleged his diligence relentlessly for years, the Director appears to be objecting to *evidence* necessary to respond to a defense the Director asserted in his Answer and Motion for Summary Judgment. Dkt. No. 115 ("Answer" or "Ans."). But courts don't strike evidence adduced in response to newly pleaded defenses, and they don't strike evidence adduced in response to motions for summary judgment. Mr. Ayestas does not object to an order permitting the Director to file a sur-reply, even though the order seems unnecessary—the Director may already file a reply in support of his summary judgment motion. Mr. Ayestas is also willing to amend the habeas petition if the Court would instead prefer to proceed that way,[1] but his willingness to amend is not a concession that it was remotely improper to attach responsive summary judgment evidence to the Reply in Support of Amended Petition and Opposition to Motion for Summary Judgement ("Reply"), Dkt. No. 124.

---
[1] Mr. Ayestas could amend the petition with leave of court under FRCP 15(a)(2).

1

## I. STANDARD OF REVIEW

Whether to grant a motion to strike is committed to the discretion of the trial court. *See Cambridge Toxicology Grp., Inc. v. Exnicios*, 495 F.3d 169, 178 (5th Cir.2007). Motions to strike pleadings are "disfavored and infrequently granted 'both because striking a portion of a pleading is a drastic remedy and because it often is sought by the movant simply as a dilatory or harassing tactic.'" *Sprint Sols., Inc. v. Precise Wireless Int'l Inc.*, 2015 WL 2359519, at *2 (S.D. Tex. May 15, 2015) (Lake, J.) (quoting 5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1380 (3d ed.2004)). "[W]hen there is no showing of prejudicial harm to the moving party, the courts generally are not willing to determine disputed and substantial questions of law upon a motion to strike." *Id.* (quotation omitted).

With respect to summary judgment, while courts "will generally not consider new arguments in *replies* [supporting the motion]," and while it may strike those arguments, there is no prohibition on the nonmoving party raising new arguments in its opposition. *See Spedag Americas, Inc. v. Bioworld Merch., Inc.*, 2019 WL 4689011, at *1 (N.D. Tex. Sept. 25, 2019) (collecting cases of arguments struck for being raised for first time in replies supporting summary judgment) (emphasis added).

## II. THE DIRECTOR DOES NOT MEET THE STANDARD FOR A MOTION TO STRIKE

Mr. Ayestas has no objection to the filing of what the Director describes as a sur-reply; the Director would be entitled to file a reply in favor of the summary judgment motion anyways. But the Director's right to file that reply is precisely why the Court should reject the Director's unusual tactic of moving to strike the evidence that Mr. Ayestas attached to his Reply. No indicia of strike-worthiness are present in the case before the Court.

### A. Mr. Ayestas Did Not Wait Seven Years To Allege His Diligence.

The Director is wrong to claim that Mr. Ayestas's Reply asserts arguments supporting his assertion of diligence "for the first time in seven years." Ans. at 5. Mr. Ayestas has repeatedly sought to litigate claims based on the Siegler Memorandum since he became aware of the document in 2014. Since then, however, Mr. Ayestas has been denied the opportunity to plead his claims until this Court allowed him to file his First Amended Petition on August 30, 2021. Dkt. No. 96. Despite the inability to plead his claims directly, Mr. Ayestas asserted his diligence throughout prior litigation.

#### 1. Mr. Ayestas was denied leave to plead for years.

The Siegler Memorandum was discovered on December 22, 2014. Since then, Mr. Ayestas has been denied leave to plead claims related to the Memorandum. Immediately following the Memorandum's discovery, the district court denied Mr. Ayestas's January 9, 2015 motion to amend his petition to add claims arising out of the Siegler Memorandum. Dkt. Nos. 63 & 64. The Fifth Circuit affirmed the district court on March 22, 2016. *See Ayestas v. Stephens*, 817 F.3d 888 (5th Cir. 2016). Mr. Ayestas then sought the Supreme Court's review on the amendment issue. The Supreme Court granted certiorari only on a separate issue, and later remanded the case to the Fifth Circuit. *Ayestas v. Davis*, 138 S. Ct. 1080 (2018). Mr. Ayestas renewed his request to be permitted to amend when the case returned to the Fifth Circuit, but the panel ultimately denied relief on the issue that had been before the Supreme Court without mentioning the Siegler Memorandum claims. *Ayestas v. Davis*, 933 F.3d 384 (5th Cir. 2019). The Supreme Court denied a request for certiorari review on February 24, 2020. *Ayestas v. Davis*, 140 S. Ct. 1107 (2020). On December 9, 2020, the Texas Court of Criminal Appeals ("CCA") rejected Mr. Ayestas's request to litigate the claims at issue here, without reaching the merits. *See* Dkt. No. 82-2, at 2. The CCA

denied Mr. Ayestas's request for reconsideration without written order on January 27, 2021. Dkt. No. 82-3. Seven business days later, on February 5, 2021, Mr. Ayestas filed his Motion for Relief from Judgment Pursuant to Rule 60(b)(6), Dkt. No. 82, which this Court granted on August 12, 2021, Dkt. No. 93. Finally, after years of pursuing the opportunity to present his Siegler Memorandum claims, Mr. Ayestas was afforded the opportunity to formally plead them. But this was hardly the first time Mr. Ayestas alleged his diligence.

### 2. Mr. Ayestas nonetheless asserted his diligence throughout prior litigation, which did not involve pleading.

Despite his inability to plead claims relating to the Siegler Memorandum until given leave to do so by a court, Mr. Ayestas consistently asserted his diligence throughout prior litigation. Beginning in January 2015—the month following the discovery of the Siegler Memorandum— Mr. Ayestas explained his diligence both before and after the Sigler Memorandum was discovered. Dkt. No. 62 at 5-14. Prior to its inadvertent inclusion in the State's file, the Siegler Memorandum could not have been discovered by reasonable diligence because, consistent with the policy of the Harris County District Attorney's office, it was withheld as attorney work product. *Id.* at 10. Once the Memorandum was discovered, "Mr. [Ayestas] was in fact diligent in bringing his claims to this Court as soon as he became aware of their existence." *Id.* at 11.

These same arguments were presented to the Fifth Circuit in two rounds of appeals. *See* Reply Brief to Respondent's Opposition to Application for Certificate of Appealability at 13-21, *Ayestas v. Stephens*, No. 15-70015 (5th Cir. Nov. 22, 2015); Petitioner-Appellant's Reply Brief at 22-25, *Ayestas v. Davis*, No. 15-70015 (5th Cir. Feb. 1, 2019). In response to Mr. Ayestas's petition for certiorari, which again asserted his diligence, the Director admitted that the Siegler Memorandum was not, and would not have been, available to trial counsel, as "[t]he fact that [the Siegler Memorandum] is privileged explains why it was not voluntarily turned over to [Mr.

4

Ayestas's] counsel during the criminal trial." Brief in Opposition at 18 n.10, *Ayestas v. Davis*, No. 16-6795 (U.S. Feb. 8, 2017); *see* Petition for Writ of Certiorari at 22-25, *Ayestas v. Davis*, No. 16-6795 (U.S. Nov. 7, 2016) (arguing diligence of trial counsel). At every turn since discovering the Siegler Memorandum, Mr. Ayestas has alleged his diligence both before and after the Memorandum's discovery.

### 3. Given an opportunity to plead, Mr. Ayestas alleged his diligence.

Pursuant to this Court's order, Dkt. No. 96, Mr. Ayestas filed his first amended petition for writ of habeas corpus on September 28, 2021. Dkt. No. 101 ("Amended Petition" or "Am. Pet."). This was Mr. Ayestas's first opportunity to plead constitutional violations of the Fourteenth and Eighth Amendments related to the Siegler Memorandum. *See id.* at 10-18. Anticipating the Director's procedural defenses, the Amended Petition also detailed Mr. Ayestas's diligence, arguing in the alternative that the one-year limitations period under 28 U.S.C. § 2244(d)(1)(D) does not foreclose Mr. Ayestas's claims, *see id.* at 19-21, and that Mr. Ayestas is entitled to equitable tolling, *see id.* at 21-25. In short, the Amended Petition explained what Mr. Ayestas has argued consistently for years in prior litigation—that the Siegler Memorandum was unavailable to him before its 2014 discovery because "[t]he HCDA and the Director considered the Siegler Memorandum to be privileged work product because it memorializes the thought process underlying the state's decision to capitally prosecute and seek death against Mr. Ayestas." *Id.* at 20. The Director himself acknowledges in his Motion to Strike that this is "not a new argument." Dkt. No. 125 ("Mot.") at 2. Neither is the accompanying assertion that Mr. Ayestas has diligently pursued his rights since discovering the Siegler Memorandum. *See* Am. Pet. at 21 ("After discovering the Siegler Memorandum, Mr. Ayestas immediately began trying to amend his earlier filings. . . ."). Mr. Ayestas's reply makes these same arguments. *See* Reply at 23-38.

Thus, the Director has no basis on which to claim that Mr. Ayestas alleges new diligence arguments, or to allege that Mr. Ayestas "dawdled for nearly a decade" and (more gallingly) that he "sandbagged the courts for seven years." Mot. at 6-7. Despite being denied the opportunity to plead for years, Mr. Ayestas has asserted his diligence since the moment he first sought any relief on the basis of the Siegler Memorandum.

And to the extent the Director implies that equity considerations weigh in favor of striking the evidence pled in the Reply, *see, e.g.*, Mot. at 7 ("Whether his delay was intentional or neglectful, the result is the same: Ayestas sandbagged the courts for seven years"), the Director misplaces the blame for delayed resolution of Mr. Ayestas' diligence claims. Equity weighs against the Director. After arguing throughout the early stages of this litigation that the Siegler Memorandum "could have been discovered much earlier had Ayestas exercised due diligence," Dkt. No. 59, at 5, the Director finally acknowledged in front of the Supreme Court that the Siegler Memorandum was not "voluntarily turned over" to Mr. Ayestas because "it was privileged," Brief in Opposition at 18 n.10, *Ayestas v. Davis*, No. 16-6795 (U.S. Feb. 8, 2017). Mr. Ayestas's evidence attempts to finally resolve the long-lingering diligence questions raised by the Director's earlier refusal to acknowledge that the Siegler Memorandum was withheld.

### B. Diligence Is A Response To The Director's Procedural Defenses.

Mr. Ayestas did nothing improper when he included responsive summary judgment evidence corroborating the diligence allegations appearing in the Amended Petition to his reply brief—some of which is already in the record in this case. *See, e.g.* Dkt. No. 40-1 at 185 (attorney billing records). Indeed, none of the authority in the Director's lengthy string citation—not a single

case—actually holds or even intimates that parties responding to summary judgment motions are barred from attaching new evidence.[2]

To the extent that there are distinct rules of procedure in federal habeas cases, they are contained in the Rules Governing Section 2254 Cases in the District Courts ("Habeas Rules"). But unless there is a specific conflict between those Habeas Rules and the Federal Rules of Civil Procedure ("FRCP"), the FRCP also apply. *See* Habeas Rule 12 ("The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."). A cursory examination of the Habeas Rules and FRCP reveals that the procedures concerning pleadings are similar: Claimants seeking relief from a court plead their claims in a complaint, the counter-party files an answer that can include defenses, and the claimant responds to those defenses in a reply. *See* Fed. R. Civ. P. Rules 8 & 12 (setting forth general rules for complaints, answers, and replies); Habeas Rules 2 & 4 (setting forth rules for complaints, answers, and replies in habeas cases). Nor do the Habeas Rules specify some

---

[2] As the summary judgment movant, the Director can reply in support of the summary motion. In any cited case where district courts refused to consider summary judgment allegations or evidence, however, the courts did so because the summary judgment *movant* included the new material in the reply *supporting the summary judgment motion*. *See Austin v. City of Pasadena*, 2021 WL 9037112, at *3 (S.D. Tex. Oct. 26, 2021) (unpublished and cited in Mot. at 3) (allegations); *Spedag Americas, Inc. v. Bioworld Merch., Inc.*, 2019 WL 4689011, at *1 (N.D. Tex. Sept. 25, 2019) (unpublished and cited in Mot. at 4) (allegations); *Truex v. Hearst Commc'n, Inc.*, 96 F. Supp. 2d 652, 665 n.8 (S.D. Tex. 2000) (cited in Mot. at 4) (evidence). The cited case where district courts refused to consider allegations or evidence on requests for relief other than summary judgment also involve movants raising new material in supportive replies, thereby depriving non-movants of opportunities to respond. *See United States v. Ferguson*, 2022 WL 861507, at *2 (S.D. Tex. Mar. 23, 2022) (unpublished and cited in Mot. at 3-4) (motion to view State's charging deliberations). Other cited cases simply indicate that if a movant were to raise a new argument in reply, a court should handle things by allowing the non-movant to respond. *See Simmons v. T-Mobile USA, Inc.*, 2006 WL 3447684, *1 (S.D. Tex. Nov. 22, 2006) (unpublished and cited in Mot. at 4); *United States v. Ulasi*, 2018 WL 6505397, at *4 (S.D. Tex. Dec. 11, 2018) (unpublished and cited in Mot. at 4). Of the three citations to Fifth Circuit authority, two involve cases where an appellant tried to raise new arguments or expand the record *in the appellate reply*. *See United States v. Hoffman*, 901 F.3d 523, 552 n.16 (5th Cir. 2018) (cited in Mot. at 4); *United States v. Washington*, 442 F. App'x 130, 132 (5th Cir. 2011) (unpublished and cited in Mot. at 5). The other Fifth Circuit decision is a case the state failed to plead a harmless error defense in its Answer and tried to raise it in a sur-reply to which the petitioner lacked a responsive opportunity. *See* Jones v. Cain, 600 F.3d 527, 541 (5th Cir. 2010) (cited in Mot. at 4). There is therefore not a single word in any of these cases suggesting that a *non-movant* should be barred from attaching responsive evidence to a movant's request for summary judgment—let alone in a case where there are also allegations anticipating the affirmative defense at issue in the nonmovant's principal pleading.

specially tailored summary judgment procedure in § 2254 cases, so FRCP 56 still requires that non-movants be permitted to respond to summary judgment by introducing certain "[m]aterials not yet in the record—including materials in affidavit or declaration[.]" Fed. R. Civ. P. 56 Committee Notes on Rules - 2010 Amendment.

### 1. Mr. Ayestas pled diligence before he needed to—in anticipation of the defenses.

Habeas claimants are not required to use the petition to anticipate the Director's procedural defenses and the contents of its summary judgment motions. *See* Section B, *infra*. But even if they were, that happened here. The Amended Petition repeatedly alleges diligence. One example: "Therefore, any delay was not due to Mr. Ayestas's inaction, and he has diligently pursued remedies since he discovered the violation's factual predicate." Am. Pet. at 18. Another: "The Siegler Memorandum was the 'factual predicate' of the claims presented and, as previously explained, it could not have been "discovered through the exercise of due diligence." *Id*. Mr. Ayestas also anticipated that the Director would plead the limitations statute and, even though he was under no requirement to do so, included an entire section devoted to "Reasonable diligence," in which he gave a lengthy explanation in support of the allegation that he "has far exceeded [the equitable tolling] diligence requirement." Am. Pet. at 22-23. And with respect to procedural default, Mr. Ayestas alleged that "[t]he Siegler Memorandum was not available to reasonably diligent counsel because the HCDA withheld it as work product." Am. Pet. at 26.

Mr. Ayestas did not have to plead any of this; he could have saved it for the Reply. Not only did he go above and beyond his pleading burden—anticipating and responding to the Director's Habeas Rule 5 defenses and expected summary judgment arguments—he also reserved his right to use the Reply to respond once those defenses and arguments were actually made. Specifically, a footnote to the limitations section in the Amended Petition states: "If the Director

asserts a statute-of-limitations defense, Mr. Ayestas will respond fully in his Reply. Nevertheless, the Court should understand, even at this juncture, that statute of limitations will not preclude merits consideration." Am. Pet. at 18 n.4. There was an identical statement with respect to the Director's procedural default argument. Am. Pet. at 25 n.6.

As demonstrated above, it strains credulity for the Director to argue that he lacked notice. When he filed his Answer and Motion for Summary Judgment, the Director knew that Mr. Ayestas was going to respond to his defenses by alleging his diligence. The Amended Petition so clearly stated the diligence allegations that the Director responded to them repeatedly in his Answer and Motion for Summary Judgment. *See, e.g.*, Ans. at 16-22 (arguing that Fifth Circuit and TCCA holdings foreclosed diligence). On equitable tolling, the Director recognized that "Ayestas argues he is entitled to equitable tolling because he has diligently pursued his rights." *Id*. at 25. The Director thereafter devoted five pages to an argument entitled "Ayestas was not diligent." *Id*. The Director again identified diligence as a source of dispute when it asserted procedural default. *See id*. at 37 (arguing that Fifth Circuit and TCCA holdings foreclosed diligence necessary to show cause).

      **2.**      **Even if the allegations were new, Mr. Ayestas would be entitled to plead responses to affirmative defenses in his reply.**

Although Mr. Ayestas robustly pleaded diligence in his Amended Petition, he was entitled to reserve those allegations until the Director actually asserted the arguments to which they respond. The Habeas Rules are even clearer than the FRCP on this score. Under Habeas Rule 2, a habeas petition must:

> (1) specify all the *grounds for relief* available to the petitioner; (2) state the facts supporting *each ground*; (3) state the relief requested; (4) be printed, typewritten, or legibly handwritten; and (5) be signed under penalty of perjury by the petitioner or by a person authorized to sign it for the petitioner under 28 U.S.C. § 2242.

(Emphasis added.) The Petition must include "grounds for relief"—i.e., the allegations of constitutional error—not allegations that respond to the defenses that the Director has yet to assert. Habeas Rule 2 does not require a petitioner to plead responses anticipating the Director's procedural defenses because Habeas Rule 5(b) requires that the Director plead those defenses in the Answer: "The answer must address the allegations in the petition. In addition, it must state whether any claim in the petition is barred by a failure to exhaust state remedies, *a procedural bar*, non-retroactivity, or *a statute of limitations*." Habeas Rule 5(b) (emphasis added).

The reason that Habeas Rule 2 does not require petitioners to anticipate defenses, and the reason why Habeas Rule 5(b) requires respondents to assert them, is that Habeas Rule 5(e) provides that a "petitioner may submit a reply to the respondent's answer or other pleading." Habeas Rule 5(e.). Habeas Rules 2 and 5 thereby implement straightforward pleading burdens that mimic those in garden-variety civil litigation under the FRCP. And in the Fifth Circuit (and everywhere else), "[a] plaintiff is not required to anticipate or overcome affirmative defenses, such as expiration of the statute of limitations, in the complaint." *Nobre on behalf of K.M.C. v. La. Dep't of Pub. Safety*, 935 F.3d 437, 442 (5th Cir. 2019); *see also Perry v. Merit Sys. Prot. Bd.*, 137 S. Ct. 1975, 1987 n.9 (2017) (characterizing affirmative defenses as things that a plaintiff need not "anticipate and negate" in the principal pleading), *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (explaining that, because a defendant's argument was an affirmative defense, there was "no basis for imposing on the plaintiff an obligation to anticipate" it).

### C. The Idea That A Court Would Strike *Evidence* At The Pleading Stage Reflects A Misunderstanding of How Habeas Litigation Takes Place.

Setting aside *allegations*, the Director argues that the Amended Petition needed to contain all *evidence* responding to a defense the Director had yet to assert, and that such evidence needed

10

to be in the record *before* the Director moved for summary judgment. The Director's argument is inconsistent with well-established rules of pleading and summary judgment practice.

In regards to proper pleading practice, there is no authority suggesting that a habeas claimant forfeits *evidence* by failing to include it the petition—especially evidence responding to a yet-to-be-pleaded defense.[3] There is no such rule in the FRCP, and the controlling law clearly contemplates that a petitioner will develop and introduce evidence *after* he files his petition. Because many habeas petitioners will be unable to submit the state record with the petition, for example, Habeas Rule 5 does not make that material due until state respondents file their answers—when the State must provide it. *See Pliler v. Ford*, 542 U.S. 225, 232 (2004) ("[P]etitioners are not required by 28 U.S.C. § 2254 or the Rules Governing § 2254 Cases to attach to their petitions, or to file separately, state-court records."). Furthermore, Habeas Rule 6 governs discovery "under the Federal Rules of Civil Procedure," which almost exclusively address post-filing fact development. Habeas Rule 6; *see also* Fed. R. Civ. P. 26, 28-37; *but see* Fed. R. Civ. P. 27 (regulating "Depositions to Perpetuate Testimony"). Habeas Rule 7 further contemplates the introduction of new evidence; it is entitled "Expanding the Record" and it authorizes a judge "[to] direct the parties to expand the record by submitting additional materials relating to the petition." Habeas Rule 7(b) explains that these materials include "letters predating the filing of the petition, documents, [and a]ffidavits . . . ."[4] Finally, the notion that a claimant forfeits factual support absent from the petition is impossible to square with the statutory provisions and Habeas Rules for hearings. Habeas Rule 8 requires that a judge determine "whether an evidentiary hearing [under

---

[3] Habeas Rule 4 permits a court to dismiss a habeas petition for extreme factual insufficiency without ordering a respondent to answer.

[4] If Habeas Rule 7 material is attached after the filing of the petition, then "the party against whom the additional materials are offered" must have "an opportunity to admit or deny their correctness." Habeas Rule 7(c). Again, this Rule expressly contemplates new evidence coming in after the petition is filed.

28 U.S.C. § 2254(e)(2)] is warranted" by reference to "any materials submitted under Rule 7," and such a determination necessarily occurs long after a petition is filed.

Now consider summary judgment. If a party moves for summary judgment under FRCP 56, then the nonmovant must show "that a fact . . . is genuinely disputed [with, among other things,] documents, . . . affidavits or declarations, . . . or other materials[.]" Fed. R. Civ. P. 56(c)(1). Perhaps the most outlandish suggestion in the Director's Motion is that, in contravention of the Rule's plain text, a habeas petitioner cannot introduce evidence in response to a motion for summary judgment. *See Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000) ("As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases."). Compare the Director's position to the typical view of the relationship between pleadings and summary judgment, as set forth in the leading civil procedure treatise:

> [T]he formal issues framed by the pleadings are not controlling on a motion for summary judgment; *the court must consider the issues presented by the other materials offered by the parties on the motion* to determine whether the Rule 56 request should be granted. Thus the court will examine the pleadings to ascertain what issues of fact they present and then consider the affidavits, depositions, admissions, interrogatory answers and similar material to determine whether any of those issues are real and genuine and whether any of the postpleading material suggests the existence of any other triable genuine disputes of material fact. The parties need not formally offer their outside matter as evidence or have it marked as an exhibit at the hearing on the motion.

10A Charles A. Wright & Arthur R. Miller, Federal Practice & Civil Procedure §§ 2721 (4th ed.) (emphasis added) (footnote omitted). The Director must move for an FRCP 56 summary judgment instead of an FRCP 12(b)(6) judgment on the pleadings *precisely because* the Court may consider factual matters outside the pleadings in the Rule 56 posture. *See Morin v. Caire*, 77 F.3d 116, 123 (5th Cir. 1996) ("If on asserting a Rule 12(b)(6) motion, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and

12

disposed of as provided in Rule 56."); *Allen v. Newsome*, 795 F.2d 934, 938 n.11 (11th Cir. 1986) ("Under Rule 12(b)(6), Fed.R.Civ.P., a motion to dismiss that relies on matters outside the pleadings shall be treated as a motion for summary judgment under [FRCP 56].").

## CONCLUSION

For all of these reasons, the Court should deny the Director's Motion to Strike.

Dated:  September 13, 2022

Sheri Lynn Johnson
\* *motion to appear pro hac vice forthcoming*
Cornell Law School
240 Myron Taylor Hall
Ithaca, NY 14853
(607) 255-6478
slj8@cornell.edu

Respectfully submitted,

/s/ Lee B. Kovarsky
Lee B. Kovarsky
Phillips Black, Inc.
727 East Dean Keeton Street
Jon 5.231
Austin, TX 78705
(434) 466-8257
l.kovarsky@phillipsblack.org

## **CERTIFICATE OF SERVICE**

       I hereby certify that on the 13th day of September 2022, I electronically filed the above and foregoing document using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

       */s/ Lee Kovarsky*