IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CARLOS MANUEL AYESTAS, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:09-CV-2999 |
| | § | |
| BOBBY LUMPKIN, Director, | § | (Death Penalty Case) |
| Texas Department of Criminal | § | |
| Justice, Correctional Institutions | § | |
| Division, | § | |
| Respondent. | § | |

## RESPONDENT'S OPPOSITION TO AYESTAS'S MOTION FOR DISCOVERY

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
For Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

GWENDOLYN S. VINDELL
Assistant Attorney General
State Bar No. 24088591
Southern ID No. 2202376
*Counsel of Record*

Post Office Box 12548, Capitol Station
Austin, Texas 78711
Tel.: (512) 936-1400
Fax: (512) 320-8132
Email: *gwendolyn.vindell2@oag.texas.gov*

*Counsel for Respondent*

# TABLE OF CONTENTS

TABLE OF CONTENTS......................................................................... i

INDEX OF AUTHORITES.................................................................... ii

OPPOSITION..................................................................................... 1

AYESTAS'S DISCOVERY REQUESTS ............................................. 1

STANDARD OF REVIEW ................................................................. 3

ARGUMENT ...................................................................................... 5

I.     Ayestas's Merits-Based Discovery Requests Are Premature ................. 5

II.    Ayestas's Diligence-Based Discovery Requests Are Also Premature ..... 7

III.   The Director Does Not Possess the Requested Documents and Cannot
       Fulfill Discovery Requests.................................................... 13

IV.    Because Ayestas's Fails to Demonstrate a Prima Facie Case for Relief,
       He Cannot Demonstrate Good Cause.................................... 15

V.     By Seeking Documents that Are Exceedingly Broad in Scope, Ayestas
       Is Using Discovery as a Fishing Expedition........................... 25

CONCLUSION............................................................................... 28

CERTIFICATE OF SERVICE......................................................... 29

# INDEX OF AUTHORITES

| Cases | Pages |
|---|---|
| *Akinyemi v. Napolitano*, 347 F. App'x 604 (2d Cir. 2009) | 10 |
| *Batson v. Kentucky*, 476 U.S. 79 (1986) | 17, 23, 24 |
| *Bishop v. Smith*, 760 F.3d 1070 (7th Cir. 2014) | 8, 9 |
| *Bracy v. Gramley*, 520 U.S. 899 (1997) | 3, 16, 18 |
| *Buck v. Davis*, 137 S. Ct. 759 (2017) | 17 |
| *Cole v. Davis*, No. V-H-17-940, 2018 WL 6019165 (S.D. Tex. Nov. 16, 2018) | 16 |
| *Fierro v. Johnson*, 197 F.3d 147 (5th Cir. 1999) | 13, 14 |
| *Ford v. Davis*, 910 F.3d 232 (5th Cir. 2018) | 12 |
| *Goodwin v. Johnson*, 224 F.3d 450 (5th Cir. 2000) | 9 |
| *Guidry v. Davis*, No. H-13-1885, 2020 WL 9260154 (S.D. Tex. Apr. 13, 2020) | 16 |
| *Harris v. Nelson*, 394 U.S. 286 (1969) | 3 |
| *Hobley v. Burge*, 433 F.3d 946 (7th Cir. 2006) | 14 |
| *Jackson v. City of Hearne, Tex.*, 959 F.3d 194 (5th Cir. 2021) | 19 |
| *Murphy v. Johnson*, 205 F.3d 809 (5th Cir. 2000) | 3, 4, 25, 26 |
| *Prible v. Davis*, No. H-09-CV-1896, 2020 WL 2563544 (S.D. Tex. May 20, 2020) | 26 |
| *Prible v. Lumpkin*, 43 F.4th 501 (5th Cir. 2022) | 26, 27 |
| *Rucker v. Norris*, 563 F.3d 766 (8th Cir. 2009) | 16 |
| *Saffle v. Parks*, 494 U.S. 484 (1990) | 18 |
| *Saldano v. Texas*, 530 U.S. 1212 (2012) | 17 |
| *Shinn v. Martinez Ramirez*, 142 S. Ct. 1718 (2022) | *passim* |
| *Shoop v. Twyford*, 142 S. Ct. 2037 (2022) | 4, 5, 7, 13 |
| *Teague v. Lane*, 489 U.S. 288 (1989) | 18, 24 |
| *Thompson v. Stephens*, No. H-13-1900, 2014 WL 2765666 (S.D. Tex. June 18, 2014) | 16 |
| *Thuesen v. Lumpkin*, No. H-0-CV-852 (S.D. Tex. Aug. 25, 2022) | 16 |

_United States v. Armstrong_, 517 U.S. 456 (1996) ..................................*passim*

_Vidimos, Inc., v. Wysong Laser Co., Inc._, 179 F.3d 1063 (7th Cir. 1999).. 10, 11

_Wayte v. United States_, 470 U.S. 598 (1985) ..................................... 18

_Woodfox v. Cain_, 772 F.3d 358 (5th Cir. 2014)................................... 8

## Statutes

28 U.S.C. § 2254.................................................................... 3, 4

28 U.S.C. § 2254(e)(1) .......................................................... 11, 12

28 U.S.C. § 2254(e)(2) ....................................................... 4, 5, 6, 8

Tex. Code Crim. Proc. art. 11.071 § 5(a)(1) ..................................... 12

## Rules

Fed. R. Civ. P. 34 ............................................................... 13, 14

Fed. R. Civ. P. 45 ................................................................. 14

## Other Authorities

Rule (6)(a), 28 U.S.C. foll. § 2254……………………………………………3

8B Charles Alan Wright et al., Federal Practice and Procedure § 2210 (3d ed. 2015)............................................................................. 14

# OPPOSITION

Petitioner Carlos Manuel Ayestas was permitted to file an amended petition raising two new claims seven years after final judgment. First Am. Pet. for Writ of Habeas Corpus ("Am. Pet."), ECF No. 101. The Director filed his answer and motion for summary judgment to Ayestas's amended petition. Resp't's Answer & Mot. Summary J. ("Answer"), ECF No. 115; Resp't's Supp. Answer ("Supp. Answer"), ECF No. 121. Ayestas filed a reply to the Director's answer. Ayestas's Reply in Support of Am. Pet. & Opp'n Mot. Summ. J. ("Reply") 1–2, ECF No. 124. Pursuant to the Court's scheduling order, the parties were permitted to file motions for discovery by August 31, 2022. ECF No. 123. The Director did not file a discovery motion, but Ayestas did. *See* Ayestas Mot. Disc. ("Mot. Disc."), ECF No. 126. In what amounts to a fishing expedition, Ayestas requests twenty-three categories of discovery from the Harris County District Attorney's Office (Harris County). *Id.* at 3–5.[1] The Director's opposition follows.

## AYESTAS'S DISCOVERY REQUESTS

Ayestas makes twenty-three different discovery requests falling into three categories. The first category (item numbers 1 through 18) consists of requests for Harris County documents, files, and correspondence related to the

---

[1]    Ayestas did not paginate his motion, so the Director cites to the page numbers listed in the ECF header.

merits of Ayestas's constitutional claims. *See* Mot. Disc. 3–9. In particular, Ayestas has alleged that the Equal Protection Clause of the Fourteenth Amendment was violated by the State's decision to seek death against Ayestas based on his alienage, race, and/or national origin. *See* Am. Pet. 10–16, ECF No. 101. Ayestas also claims that the Eighth Amendment's prohibition on cruel and unusual punishment was violated by the State's decision to seek death against Ayestas based on the same classifications. *Id.* at 16–18.

The second category (item numbers 19 through 22) consists of requests for Harris County documents, files, and correspondence related to its policies and treatment of capital murder charging memoranda. *Id.* at 5, 9–10. These requests purport to address the Director's procedural objections to Ayestas's constitutional claims, namely, that Ayestas was not diligent in pursuing his claims, and his claims are thus untimely and procedurally barred. *Id.* at 9–10.

The third category (item number 23) isn't a discovery request at all—it's a reservation of rights. *See id.* at 5 ("reserv[ing] the right to seek deposition testimony from any and all current and former [Harris County] officials identified in the aforementioned requests or in response thereto"). Indeed, Ayestas makes no argument in support of his non-request for possible, future,

unspecified depositions, so the Director does not understand Ayestas to press a request for depositions at this juncture.[2]

## STANDARD OF REVIEW

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). A federal habeas court may only authorize a party to conduct discovery upon a showing of "good cause." Rule (6)(a), 28 U.S.C. foll. § 2254. Good cause may be shown when a petitioner "establishes a prima facie claim for relief." *Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000) (quoting *Harris v. Nelson*, 394 U.S. 286, 290 (1969)). This exists "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief . . . ." *Bracy*, 520 U.S. at 908–09 (quoting *Harris*, 394 U.S. at 300). Thus, "a petitioner's factual allegations must be specific, as opposed to merely speculative or conclusory, to justify discovery[.]" *Murphy*, 205 F.3d at 814. And a habeas court must consider "the necessity for discovery" and "make certain that the inquiry is relevant and appropriately narrow." Advisory Committee

---

[2] Because the Director does not construe this as a discovery request, the Director will not address Ayestas's non-request in the instant response. However, should Ayestas clarify his non-request in the future, the Director reserves the right to respond.

Notes to R. Gov'g § 2254 Cases R 6. "Simply put, Rule 6 does not authorize fishing expeditions." *Murphy*, 205 F.3d at 814.

Moreover, a habeas petitioner's discovery request must be analyzed within the confines of the Anti-terrorism Effective Death Penalty Act (AEDPA), which imposes strict limitations on the presentation of new facts during federal habeas review. *See Shoop v. Twyford*, 142 S. Ct. 2037, 2043 (2022) ("AEDPA also restricts the ability of a federal habeas court to develop and consider new evidence."); *Shinn v. Martinez Ramirez*, 142 S. Ct. 1718, 1728 (2022) (the standard to "expand the state-court record is a stringent one" and AEDPA generally bars all evidentiary hearings in "all but the[] extraordinary cases"). For example, a petitioner who failed to diligently develop the factual basis of a claim in state court must show that he meets the strictures of 28 U.S.C. § 2254(e)(2). *See Twyford*, 142 S. Ct. at 2044.

Thus, "a federal court, in deciding whether to grant an evidentiary hearing or 'otherwise consider new evidence' under § 2254(e)(2), must *first* take into account these restrictions." *Id*. (emphasis added) (quoting *Martinez Ramirez*, 142 S. Ct. at 1739). In other words, because "[a] federal habeas court may *never* 'needlessly prolong' a habeas case," *Martinez Ramirez*, 142 S. Ct. at 1739, a court "must, consistent with AEDPA, determine at the outset whether the new evidence sought could be lawfully considered," *Twyford*, 142 S. Ct. at 2044. A district court abuses its discretion if it orders factual development or

an evidentiary hearing for a claim that is barred by § 2254(e)(2). *Martinez Ramirez*, 142 S. Ct. at 1738–39.

## ARGUMENT

### I. Ayestas's Merits-Based Discovery Requests Are Premature.

Ayestas's instant discovery requests are largely premature. Indeed, Ayestas admits that eighteen of his twenty-three requests for discovery "pertain to the underlying constitutional claims." Mot. Disc. 5. But as indicated above, the Supreme Court has recently emphasized AEDPA's restrictions on the presentation of new facts on federal habeas review. *See Twyford*, 142 S. Ct. at 2043. And this Court cannot grant evidentiary development, or consider such evidence, until it has "first take[n] into account these restrictions." *Id*. at 2044; *see Martinez Ramirez*, 142 S. Ct. at 1738–39.

Here, the Director has previously argued—and this Court, the Fifth Circuit, and the Texas Court of Criminal Appeals (CCA) have found—that Ayestas failed to diligently pursue his claims. *See, e.g.*, Answer 10–41. What this means for Ayestas is that his claims are untimely and procedurally barred. *Id*. But it also means that the opening clause of § 2254(e)(2) is triggered, and this Court cannot consider any new evidence Ayestas has sought to introduce in federal court, including the Siegler memo itself, unless Ayestas meets that section's requirements, which he cannot. *See* Supp. Answer 2–5.

Thus, despite Ayestas's insinuations otherwise, the question of his diligence is not an open question. Three courts have found he was not diligent, and this Court is bound by, or must defer to, two of those courts' decisions. *See* Answer 20–22. Nevertheless, even if the Court were to find a way around the higher court's opinion or find that Ayestas's late-in-the-game new evidence—proffered for the first time in seven years with his reply brief to the Director's answer, *see* Director's Mot. Strike 1, ECF No. 125; Director's Reply to Ayestas's Opposition to Director's Mot. Strike (Director's Reply Mot. Strike) 2–15, ECF No. 128—overcomes the deference owed those decisions (which it cannot), then this Court still cannot grant any of Ayestas merits-based discovery requests until it has *first* satisfied itself that Ayestas's claims meet the requirements of § 2254(e)(2). That's because "when a federal habeas court convenes an evidentiary hearing for any purpose, *or otherwise admits or reviews new evidence for any purpose*, it may *not* consider that evidence on the merits of a negligent prisoner's defaulted claim unless the exceptions in § 2254(e)(2) are satisfied." *Martinez Ramirez*, 142 S. Ct. at 1738 (emphasis added).

This Court has not yet determined whether § 2254(e)(2) is triggered or whether its exceptions are satisfied. That is, this Court must first find—contrary to its prior opinion and the opinions of two other courts—that either: 1) Ayestas was diligent so § 2254(e)(2) is not triggered; or 2) Ayestas was not diligent, but he meets the exceptions of § 2254(e)(2). Until the Court has found

one of the above, it would be an abuse of discretion to order discovery on the merits of Ayestas's claims. Thus, the discovery requests outlined in items 1 through 18 which "pertain to the underlying constitutional claims," Mot. Disc. 5, should be denied as premature.[3]

## II. Ayestas's Diligence-Based Discovery Requests Are Also Premature.

Ayestas's discovery requests numbers 19 through 22 "pertain to the Director's procedural objections." Mot. Disc. 9. But, like his merits-based discovery requests, his discovery requests are premature because this Court has not yet made any of the necessary determinations that would permit evidentiary development.

In particular, the Court has not yet found that it can legally consider any new evidence on the merits of Ayestas's claims, *see supra* Argument I, and even

---

[3]     The Director acknowledges that this Court permitted, if not invited, Ayestas to seek discovery before the Court had made any determinations about the procedural posture of Ayestas's claims. *See* Sched. Order 1, ECF No. 96 (requiring parties to confer on scheduling order that "includ[ed] discovery limited to the issues raised by the Siegler memo). Though *Martinez Ramirez* and *Twyford* were not necessary to show that the Court's scheduling order was in error, *see* Director's Prop. Sched. Order 4, ECF No. 94 (arguing that a scheduling order that assumed discovery was "put[ting] the cart well before the horse" where Ayestas's claims are procedurally barred by the CCA's dismissal and discovery is not of-right in habeas cases), those opinions only serve to highlight the inappropriateness of addressing these questions when Ayestas's claims are so procedurally mired. The fact that the Court has *not yet* made any of the appropriate determinations makes addressing Ayestas's discovery requests difficult, and it is made doubly more difficult by Ayestas's decision to proffer new evidence for the first time in seven years on the question of his diligence. *See generally* Director's Mot. Strike, ECF No. 125. The Director continues to object to the instant proceedings.

if Ayestas's requested discovery were relevant *only* to the procedural bars, it would *still be error* to order such development without ensuring the evidence could be legally considered on the merits of Ayestas's claims. *Martinez Ramirez*, 142 S. Ct. at 1739 (holding that if developed evidence cannot be considered in evaluating the merits of an underlying claim due to § 2254(e)(2), it is error to develop such evidence to assess whether the petitioner can show cause and prejudice to overcome a procedural default). Importantly, the Court must determine that it can even hear evidence on the procedural impediments in Ayestas's case, which was preceded by seven years of litigation on the question of his diligence. So the Court *must* determine how it can overcome the diligence findings made by the Fifth Circuit and the CCA *before* it can consider allowing Ayestas to develop evidence on diligence.

As the Director has previously argued, this Court is bound by the Fifth Circuit's determination that Ayestas "did not exercise due diligence in attempting to discover the memorandum earlier." *Ayestas v. Stephens*, 817 F.3d 888, 901 (5th Cir. 2016); *see also* Answer 20–21 (citing *Woodfox v. Cain*, 772 F.3d 358, 370 (5th Cir. 2014)). Not only is the Fifth Circuit's determination on diligence law of *Ayestas*'s case, but because it is a published opinion, it is circuit law as well. *See Bishop v. Smith*, 760 F.3d 1070, 1088 n.9 (7th Cir. 2014) ("Had *Bishop I* been published, its force as law of the case would have been significantly strengthened by its status as law of the circuit as well."). Until

his reply brief to the Director's answer, Ayestas offered no new evidence or argument in seven years of litigation that would have justified this Court ignoring the Fifth Circuit's determination. *See Goodwin v. Johnson*, 224 F.3d 450, 457–58 (5th Cir. 2000) (a request to revisit a prior decision should be declined, unless: 1) the evidence on a subsequent trial was substantially different, 2) there is intervening, contrary controlling authority; or 3) the decision was clearly erroneous and would work manifest injustice).

And though Ayestas offered never-before-seen evidence with his reply brief purporting to support his diligence, *see* Director's Mot. Strike 2–7, ECF No. 125, the evidence was available at the time the Fifth Circuit made the relevant diligence finding. Indeed, the "new" evidence consists of 1998 billing records, a 1998 letter from state habeas counsel, and a declaration from state habeas counsel recounting decades-old memory, *see* Reply Ex. A–D, ECF Nos. 124-1 through 124-4, all of which were available to Ayestas long before he ever filed his post-judgments motions to litigate the Siegler memo claims, much less before the Fifth Circuit decided adversely to him on the diligence question.

Neither Ayestas nor this Court can rely on previously available evidence to justify overcoming a published, appellate court opinion. *See Bishop*, 760 F.3d at 1087 ("[T]his previously-available-evidence bar [to overcoming law of the case] is applied when *the party seeking to circumvent the law of the case* had a chance to introduce the evidence in the prior proceedings and failed to exploit

that chance."); *Akinyemi v. Napolitano*, 347 F. App'x 604, 607 (2d Cir. 2009) (unpublished) ("[T]he district court properly adhered to the law of the case because Akinyemi offered no proof that [the new] evidence was not available earlier and gave the court no other reason to deviate from its prior ruling.").

As Judge Richard Posner recognized:

> [Plaintiff] also argues that our reasoning about the issue of consequential damages was flawed, that we overlooked critical evidence, and that our conclusion was mistaken. But that is the sort of argument that the doctrine of law of the case bars—namely, an argument for reconsideration that is based not on intervening authority, new (and *heretofore undiscoverable*) evidence, or other changed circumstances that justify waiver of the doctrine, but on considerations of fact or law that were available when the previous appeal was argued. The remedy of a losing party who believes that through oversight or impulsiveness the court has erred is to seek rehearing—which [Plaintiff] did not do—*rather than to lie in wait and then, years later* (two and a half years, to be precise)*, having lost on remand, to present its argument for reconsideration in a second appeal.*

*Vidimos, Inc., v. Wysong Laser Co., Inc.*, 179 F.3d 1063, 1065–66 (7th Cir. 1999) (Posner, C.J.) (emphasis added) (internal citations omitted). The new evidence Ayestas proffered with his reply brief was not "heretofore undiscoverable" to him; to the contrary, he appears to believe some of that evidence was *in the record* before this Court. *See* Director's Reply Mot. Strike 6.

And Ayestas cannot be permitted to engage in post-judgment discovery solely for the purpose of *overcoming* the Fifth Circuit's determination. Such would lead to absurd results. If every petitioner were permitted to "lie in wait,"

*Vidimos*, 179 F.3d at 1065, until post-decision discovery to undo an adverse appellate court decision, litigation would be endless, and such endless litigation would fly in the face of the Supreme Court's recent admonishment that federal courts "may *never* 'needlessly prolong'" habeas cases. *Martinez Ramirez*, 142 S. Ct. at 1739.

Further, not only must this Court first determine how it could possibly consider any procedural-bar related evidence in the face of the Fifth Circuit's contrary determinations, the Court must also determine if Ayestas has overcome the § 2254(e)(1) deference afforded to the CCA's implicit determination that Ayestas was not diligent. Importantly, the Court must do so with reference *only* to the state court record before the CCA when it made that determination. *Martinez Ramirez* instructs that "only rarely may a federal habeas court . . . consider evidence that a prisoner did not previously present to the state courts in compliance with state procedural rules." *Martinez Ramirez*, 142 S. Ct. at 1730. Indeed, "to allow a state prisoner simply to ignore state procedure on the way to federal court would defeat the evident goal of the exhaustion rule." *Id*. at 1732. And further, it would be "unseemly" for a federal court to upset a state court conviction without giving the state courts the opportunity to correct a constitutional violation "consistent with their own procedures." *Id*.

Here, Ayestas's instant constitutional claims were not presented to the CCA "in compliance with state procedural rules." *Id*. at 1730. More to the point, the CCA implicitly rejected his diligence argument when it found that he had not met the requirements of Texas Code of Criminal Procedure Article 11.071 § 5(a)(1). *See Ex parte Ayestas*, No. WR-69,674-02, 2020 WL 7234770, at *1 (Tex. Crim. App. Dec. 9, 2020) (unpublished). This implicit determination by the CCA that Ayestas was not diligent is afforded a presumption of correctness under § 2254(e)(1). *See* Answer 21–22 (citing *Ford v. Davis*, 910 F.3d 232, 235–36 (5th Cir. 2018)). And Ayestas did not offer with his subsequent application the new evidence he offered with his reply brief so it cannot be considered in deciding whether Ayestas has met his burden to overcome that presumption of correctness. In fact, Ayestas cannot even use any of the evidence that he actually submitted with his application because the state court record was not reopened for factual development and potential merits relief, and the evidence was thus not properly presented to the state court. *See Martinez Ramirez*, 142 S. Ct. at 1727 ("A federal habeas court generally may consider a state prisoner's claim only if he has first presented that claim to the state court in accordance with state procedures."). In short, the Court must make the § 2254(e)(1) determination based solely on the state court record that was properly before the CCA, and until it does so, discovery is pointless.

Accordingly, Ayestas has procedural rulings to overcome *before* this Court can properly grant him discovery, and this Court must make those procedural determinations first. This Court has no discretion to order evidentiary development for the procedural purpose of determining whether Ayestas was diligent because it has not yet determined whether it can legally consider the new evidence in assessing either the Director's procedural objections *or* the merits of Ayestas's claims. *See Twyford*, 142 S. Ct. at 2046.

## III. The Director Does Not Possess the Requested Documents and Cannot Fulfill Discovery Requests.

Though Ayestas has continuously obfuscated this point, the Director of the Texas Department of Criminal Justice and Harris County are legally distinct entities. Answer 17 n.8 (citing *Fierro v. Johnson*, 197 F.3d 147, 155 (5th Cir. 1999) ("The attorneys for the Texas Department of [Criminal Justice] in a federal habeas case do not act as prosecutors of the crime investigated by the law enforcement officers.")). Yet all of Ayestas's discovery requests, save one (number 23), seek documents not in the Director's possession. Rather, they are in the sole custody, control, and possession of Harris County.

But Ayestas has not sought subpoenas against Harris County; Ayestas does not even cite to any Federal Rule of Civil Procedure in support of the discovery he seeks. Requesting production of documents without a subpoena implicates Rule 34 of the Federal Rules of Civil Procedure, but that rule is

inapplicable here because, "by its terms, Rule 34 applies only to parties." *Hobley v. Burge*, 433 F.3d 946, 950 (7th Cir. 2006). And as the Director has previously pointed out, the Harris County District Attorney is not a party to this suit—she is not Ayestas's custodian, but rather an elected official whose office is independent from Respondent and his attorneys. *See Fierro*, 197 F.3d at 155.

In other words, the Director does not have the ability to obtain the requested documents from this independent elected official on demand. "[A] party cannot be required to permit inspection of documents or things that it does not have and does not control." 8B Charles Alan Wright et al., *Federal Practice and Procedure* § 2210 (3d ed. 2015). Hence, Ayestas's requested discovery in item numbers 1 through 22 must be denied because they are directed at the wrong entity.

Should the Court find discovery warranted, the Court should interpret Ayestas's discovery requests for documents from Harris County as requests for third-party subpoenas under Rule 45 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 45. That way, should Harris County believe that anything requested is privileged, protected, or is unduly burdensome to produce, they will be permitted to make such arguments—which the Director cannot do because he does not have possession, care, custody, or control of such files, nor

does he hold the privileges that may apply—in the form of a protective order or motion to quash.

## IV. Because Ayestas's Fails to Demonstrate a Prima Facie Case for Relief, He Cannot Demonstrate Good Cause.

In Ayestas's amended petition, he raises two grounds for relief. First, he claims that the Harris County violated his Equal Protection rights when it discriminated against him on the basis of his race, national origin, or citizenship in deciding to capitally charge him. Am. Pet. 10–16. Second, he alleges that Harris County violated his Eighth Amendment rights for the same reason. *Id*. at 16–18. The Director has thoroughly addressed Ayestas's claims in his answer to Ayestas's petition. *See* Answer 10–68. Notably, Ayestas's claims suffer from a number of procedural issues that preclude federal habeas relief. For example, his petition is successive because this Court has not properly reopened final judgment. *See id*. at 10–14. Moreover, his claims are untimely because he was not diligent in seeking the factual predicate of his claims, he is not entitled to equitable tolling, and his claims do not allege actual innocence. *Id*. at 14–34. Further, Ayestas's claims were raised in state court but procedurally barred by an adequate and independent state procedural ground, and he cannot prove cause and prejudice. *Id*. at 34–41.

A petitioner cannot show good cause for discovery if a federal court cannot reach the merits of his claims because they are procedurally barred, as

Ayestas's claims are here. *See Rucker v. Norris*, 563 F.3d 766, 771 (8th Cir. 2009); *Thuesen v. Lumpkin*, No. H-0-CV-852 (S.D. Tex. Aug. 25, 2022) ("Courts have routinely held that good cause takes into account the procedural posture of an inmates' claims." (citing *Bracy*, 520 U.S. at 908–09));[4] *Guidry v. Davis*, No. H-13-1885, 2020 WL 9260154, at *43 (S.D. Tex. Apr. 13, 2020) (citing *Rucker*: "Insofar as Guidry seeks discovery on his procedurally barred claims, a petitioner cannot show good cause for discovery on a claim in federal court if procedural impediments preclude considering the merits of that claim."); *Cole v. Davis*, No. V-H-17-940, 2018 WL 6019165, at *4 (S.D. Tex. Nov. 16, 2018) (same); *Thompson v. Stephens*, No. H-13-1900, 2014 WL 2765666, at *2 (S.D. Tex. June 18, 2014) ("As a threshold matter, however, a court must also take into account the procedural posture of an inmate's claims" when considering whether to grant discovery.). Indeed, "a petitioner cannot 'demonstrate that he is entitled to relief' when procedural impediments prevent full federal review." *Guidry*, 2020 WL 9260154, at *43 (citing *Bracy*, 520 U.S. at 908–09). This is especially true where, as here, even if Ayestas could establish cause—which he cannot—he cannot demonstrate actual prejudice. *See* Answer 38–41. Ayestas fails to show good cause for discovery.

---

[4]     The Director attaches a copy of the *Thuesen* order as Exhibit A.

But procedural impediments aside, Ayestas also fails to demonstrate good cause for discovery because he fails to make a prima facie showing of the merits of his claims as well. Indeed, his claims are at least partially barred by nonretroactivity principles. *See* Answer 49–54, 68. To prove the point: in his reply, Ayestas cites to unrelated case law to argue that, contrary to clearly established selective-prosecution Supreme Court law, he does not have to prove discriminatory effect with reference to a similarly situated person who was not capitally prosecuted. *See* Reply 8–9 (citing jury selection jurisprudence of *Batson v. Kentucky*, 476 U.S. 79 (1986), and its progeny, as well as the ineffective-assistance-of-trial-counsel case of *Buck v. Davis*, 137 S. Ct. 759 (2017), for the proposition that "proving discriminatory effect does not always require a showing that an otherwise identical comparator outside the suspect class received more favorable treatment").[5] He uses the same case law to suggest that there is some "pretext" selective-prosecution claim that permits wild speculation of discrimination. *See id.* at 13 (citing *Batson* and its progeny

---

[5]     Ayestas also claims that in *Saldano v. Texas*, 530 U.S. 1212 (2012), the Supreme Court "reject[ed] an identical-comparator rule." Reply 9. He argues, without citation, that "[n]either the State of Texas nor the Supreme Court ever suggested that the constitutional claims should fail because an identically situated white defendant had not been sentenced to death." *Id.* But in *Saldano*, the only thing the Supreme Court did in its four-sentence order was grant the petition for writ of certiorari and remand the case to the CCA "in light of the *confession of error* by the Solicitor General of Texas." 530 U.S. at 1212 (emphasis added). Given that there was a confession of error, it makes sense that neither the Supreme Court nor the State suggested Saldano needed to do something more. Ayestas's citation to *Saldano* means nothing.

to argue that the question is "whether 'not a citizen' was used as pretext for race or national origin" based on irrelevant statistics and inadmissible propensity evidence). If Ayestas has to meld together disparate areas of case law to explain why his burden is lesser, he is clearly suggesting a new rule that is barred by *Teague v. Lane*, 489 U.S. 288 (1989) (plurality opinion). *See Saffle v. Parks*, 494 U.S. 484, 490 (1990) (holding the petitioner sought a new rule because precedent did "not speak directly, if at all, to the issue" in the case). There can be no good cause for discovery when such factual development would not have any effect on whether his claims are barred by *Teague*.

In any event, even if his claims weren't *Teague*-barred, Ayestas wholly failed to establish a prima facie case of entitlement to relief. *Bracy*, 520 U.S. at 908–09. His Eighth Amendment claim is without merit because he makes no allegation that the trier-of-fact considered any impermissible factors when it convicted him of capital murder and sentenced him to death, and he hence cannot establish that his sentence was arbitrary or disproportionate. Answer 65–67. More importantly, his Equal Protection claim—actually a selective prosecution claim—is wholly without merit. *Id*. at 46–64.

As argued in the Director's answer, to make a prima facie showing that Harris County engaged in unconstitutional selective prosecution, Ayestas must have shown *both* that Harris County's policy "had a discriminatory effect and that it was motivated by a discriminatory purpose." *Wayte v. United States*,

470 U.S. 598, 608 (1985). To show discriminatory effect, Ayestas must have shown "that similarly situated individuals of a different race[ or national origin or citizenship status] were not prosecuted." *United States v. Armstrong*, 517 U.S. 456, 465 (1996). And to show discriminatory purpose, he "must show that the government's discriminatory selection of [him] for prosecution was invidious or done in bad faith—i.e., that the government selected its course of prosecution *because of*, rather than *in spite of*, its adverse effect upon an identifiable group." *Jackson v. City of Hearne, Tex.*, 959 F.3d 194, 201 (5th Cir. 2021). On top of the burdens already placed on habeas petitioners seeking relief in federal court, petitioners claiming selective-prosecution violations must meet a "rigorous standard" both with respect to the elements of the claim and "for discovery in aid of such a claim." *Armstrong*, 517 U.S. at 468. Ayestas failed to meet that burden here.

Indeed, in both his reply and his motion for discovery, Ayestas effectively concedes that he has not provided any evidence of discriminatory effect.[6] For

---

[6] Ayestas argues that "if the Director does not concede" Ayestas's point that the Siegler Memo on its face and standing alone establishes a constitutional violation, "then Mr. Ayestas is entitled to discovery that will allow him to substantiate his discrimination claims[.]" Mot. Disc. 5–6. Ayestas's argument is absurd; this is obviously not the standard for evaluating discovery requests. Indeed, by Ayestas's logic, petitioners would be entitled to discovery in almost every case, as the Director routinely disagrees with a petitioner's skewed view of the facts and law. Perhaps Ayestas is once again merely conflating standard civil litigation principles with habeas, but in habeas, he must do more than show that the Director disagrees with him to establish good cause.

example, he opened his reply argument by arguing that he *does not have to* point to any similarly situated person who was not prosecuted, suggesting the Director's argument was only "the Director's rendering of equal protection law." Reply 8–10 ("Mr. Ayestas's claim does not fail because he *cannot* plead an identically situated white citizen defendant against whom death was not sought." (emphasis added)). Then, in a footnote, he baldly states, without evidentiary support or citation, that he "can and does hereby so allege" that there were death eligible white citizen defendants who Harris County did not capitally prosecute. *Id.* at 10 n.11. In his motion for discovery, he is more forthcoming and direct—he concedes that, without discovery, he "*cannot respond* to the thrust of the Director's argument [that he failed to show similarly situated individuals who were not prosecuted] without access to many of the requested items." Mot. Disc. 7 (emphasis added); *see also id.* at 6 ("Information about comparators is *necessary* to corroborate the discrimination alleged in [Ayestas's] pleading." (emphasis added)).

He also admits that he has not proven discriminatory purpose. Indeed, relying primarily on traditional civil litigation principles, Ayestas argues again and again that the Director's answer raises genuine issues of material fact that mean "[d]iscovery, not summary judgment, is the appropriate" next step.[7] *See*

---

[7]    The Director addresses the point more thoroughly in his reply to Ayestas's opposition to the Director's motion to strike. Director's Reply Mot. Strike 10–15.

Reply 8. But if the Director's answer raises genuine issues of material fact—in that it points out evidentiary and pleading deficiencies with Ayestas's claims—that necessarily means Ayestas has not met his burden. For example, he lists seven questions related to Harris County's capital charging decisions that he does not have answers to. *See* Reply 6–7. Indeed, he states: "[t]here is simply *no information in the record* regarding [Harris County]'s deliberative process in Mr. Ayestas's case." *Id.* at 6 (emphasis added). This is an admission that Ayestas has not proven *anything* about Harris County's decision to charge Ayestas with capital murder. Similarly, even if there is some "pretext" selective-prosecution claim, Ayestas admits that he "has not yet established conclusively that alienage was a pretext for race or national origin[.]" *Id.* at 13.

---

Briefly, Ayestas makes much ado about the Director titling his pleading an answer *and* motion for summary judgment. He superimposes summary judgment principles on this habeas litigation to suggest that the evidentiary and pleading burden has shifted to the Director by a single reference to summary judgment. *See, e.g.*, Reply 2–3 (arguing that genuine issues of material fact raised by a motion for summary judgment must be resolved against the moving party and that the Director's request for summary judgment "before discovery" "asks this Court to draw inference after inference in the Director's favor," which "is not permitted"). But the Director only titled his pleading as such because this District requires him to, and Ayestas's argument is directly inconsistent with the habeas rules, which state that the burden is on *him*, not the Director. *See* Director's Reply Mot. Strike 10–15. Therefore, Ayestas's reliance on summary judgment principles to suggest he is entitled to discovery is entirely misplaced. Still, to the extent that the Court would find that the Director's compliance with this District's rules would open him up to discovery that would otherwise not have been permitted on habeas review, then the Director again asks the Court to strike the motion portion of his responsive pleading and consider it as an answer only. This would keep the habeas burden where it belongs—on Ayestas.

This means Ayestas cannot prove that anyone relied on the stricken-through provision in deciding to charge Ayestas with capital murder.

Ayestas's numerous admissions mean that he is not entitled to discovery. The Supreme Court has clearly outlined what a petitioner seeking relief, and discovery, on a selective-prosecution claim must show. In *Armstrong*, the Court squarely addressed the question of "the showing necessary for a defendant to be entitled to discovery on a claim that the prosecuting attorney singled him out for prosecution on the basis of his race." 517 U.S. at 458. The defendants moved for pre-trial discovery or for dismissal of the indictment because they believed "they were selected for prosecution because they are black." *Id.* at 459. The district court granted the defendants' motion and required the Government to produce documents similar to what Ayestas has sought here. *Compare, e.g., id.* (Government ordered to produce "list of all cases from the last three years in which the Government charged both cocaine and firearms offenses" and identify the race of the defendants in those cases), *with* Mot. Disc. 4 (discovery item number 4, requesting "list of any and all Harris County defendants between 1979 and 2008 who were eligible to be charged for capital murder, including "race, ethnicity, national origin, alienage (citizenship), and immigration status"). The Ninth Circuit initially reversed the district court's discovery ruling, but an en banc panel affirmed. *Armstrong*, 517 U.S. at 461.

Reversing the Ninth Circuit's en banc opinion, the Supreme Court held that the defendants had "failed to satisfy the threshold showing: They failed to show that the Government declined to prosecute similarly situated suspects of other races." *Id*. at 458. The Court stated:

> A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution. Our cases delineating the necessary elements to prove a claim of selective prosecution have taken great pains to explain that the standard is a demanding one. These cases afford a "background presumption" that the showing necessary to obtain discovery should itself be *a significant barrier* to the litigation of insubstantial claims.

*Id*. at 463–64 (emphasis added) (internal citations omitted). A defendant pressing a selective-prosecution claim must thus prove, as indicated above, both discriminatory effect and discriminatory purpose. *Id*. at 465. Though Ayestas thinks otherwise, *see* Reply 10 (arguing there "can be no *requirement*" that claimants show similarly situated individuals of a different race/national origin/citizenship status were not prosecuted because, "[a]s a practical matter, such a requirement would amount to a categorical bar to relief"), "[t]he similarly situated requirement does not make a selective-prosecution claim impossible to prove." *Armstrong*, 517 U.S. at 466. Indeed, the Supreme Court expressly "disagree[d]" with Ayestas's instant argument that cases like *Batson*

and its progeny "cut against any absolute requirement that there be a showing a failure to prosecute similarly situated individuals."[8] *Id*. at 467.

Instead, addressing "the showing necessary to obtain [even] discovery in support of such a claim," *id*. at 468, the Court held:

> The [Ninth Circuit] also expressed concern about the "evidentiary obstacles defendants face." But all of its sister Circuits that have confronted the issue have required that defendants produce some evidence of differential treatment of similarly situated members of other races or protected classes. In the present case, *if the claim of selective prosecution were well founded, it should not have been an insuperable task to prove that persons of other races were being treated differently than respondents*. For instance, respondents could have investigated whether similarly situated persons of other races were prosecuted by the State of California and were known to federal law enforcement officers, but were not prosecuted in federal court. We think the required threshold—*a credible showing of different treatment of similarly situated persons*—adequately balances the Government's interest in vigorous prosecution and the defendant's interest in avoiding selective prosecution.

*Id*. at 470 (emphasis added) (internal citations omitted). Ayestas has failed to meet "the required threshold—a credible showing of different treatment of similarly situated persons." *Id*. This "should not have been an insuperable task" for Ayestas if his claims of discrimination were "well founded." *Id*. But as the Director's answer shows, they are not—Ayestas cannot prove that he was singled out for capital prosecution on the basis of his citizenship status, race,

---

[8]     This further highlights why Ayestas's attempt to use *Batson* and its progeny to justify a lesser burden is *Teague*-barred.

or national origin where his co-defendants of the exact same national origin, ethnicity, and immigration status were *not* capitally prosecuted for the *exact same crime*. *See* Answer 56, 59–61.

Ayestas fails to show entitlement to discovery on his selective-prosecution claim because he failed to "produce some evidence that similarly situated defendants of other [races/national origins/citizenship status] could have been prosecuted, but were not," as "consistent with [the Supreme Court's] equal protection case law." *Armstrong*, 517 U.S. at 469. Because he has not proffered such evidence—indeed, he concedes he *can't* meet the similarly situated requirement *without* discovery, *see* Mot. Disc. 7—he cannot establish good cause for discovery, much less a prima facie case of entitlement to habeas relief. Ayestas's discovery requests must be denied.

## V. By Seeking Documents that Are Exceedingly Broad in Scope, Ayestas Is Using Discovery as a Fishing Expedition.

Ayestas has asked for twenty-two categories of documents from Harris County from a time period spanning nearly thirty years. *See* Mot. Disc. 3–5. To show good cause for authorizing discovery, "a petitioner's factual allegations must be specific, as opposed to merely speculative or conclusory, to justify discovery[.]" *Murphy*, 205 F.3d at 814. "Simply put, Rule 6 does not authorize fishing expeditions." *Id*. But Ayestas's request for documents is precisely that.

As examples,[9] he seeks documents from almost thirty years of Harris County history because he doesn't actually know "whether any pattern [of alleged discrimination] would be attributable to Ms. [Kelly] Siegler, Mr. [Johnny] Holmes, or both." Mot. Disc. 6 n.1. He asks this Court to order Harris County to evaluate thirty years of prosecutions to determine "*every* defendant that was *or could have been* charged with capital murder" and to compile all the demographic information of each individual. *See id.* at 4 (item number 2) (emphasis added). Worse, he asks, without substantive or temporal limitation, for the *entire* "homicide case files" of any and all foreign national and Hispanic defendants who were or could've been charged with capital murder. *Id.* (item numbers 3 and 4). He also asks for "any and *all* correspondence" in his own case, without limitation to the subject matter or date of that correspondence. *Id.* (item number 5). And in a plain attempt to impugn every single signatory to the Siegler Memo, he asked for disciplinary files and other personnel files for every person who signed the memo or was otherwise involved with its creation, in the transparent hope that he will uncover further supposed deviousness.[10] *Id.* (item numbers 12 through 14). And acknowledging that

---

[9]     These examples are certainly not exhaustive of the overbroad, unsupported, and speculative requests included in Ayestas's discovery requests.

[10]     In his amended petition, Ayestas relied on, among other things, the district court's opinion in *Prible v. Davis*, No. H-09-CV-1896, 2020 WL 2563544 (S.D. Tex. May 20, 2020), to support his impermissible argument that Siegler has a "jarring record of dishonest prosecutorial misconduct as a line prosecutor and as the [Harris

Harris County has never asserted that it withheld the memo from Ayestas in this case, he asks this Court to authorize post-decision searches for evidence that would overcome adverse diligence findings. *Id.* at 5 (item numbers 18 through 22).

The breadth and scope of Ayestas's requests show that it would be hard to better describe a fishing expedition if one tried. This is particularly true, where, as described above, Ayestas admits that without discovery, he has not met his burdens. *See supra* Argument IV. Ayestas requests are vague, overly broad, and overly burdensome. This Court should not permit Ayestas to use discovery as a fishing expedition.

---

County] Court Chief." Am. Pet. 4–5. He pointed to *Prible* because there the district court granted relief on "six separate claims" related to Siegler. *Id.* at 5. In his answer, the Director noted that, aside from being impermissible propensity evidence, Ayestas's citation to *Prible* had limited value where it was on appeal in the Fifth Circuit. Answer 61 n.25. In fact, the Fifth Circuit has since vacated the district court's judgment granting relief and rendered judgment denying habeas relief. *See Prible v. Lumpkin*, 43 F.4th 501, 522 (5th Cir. 2022). Notably, the Fifth Circuit disagreed with many of the district court's conclusions regarding Siegler's conduct vis-à-vis the cause inquiry of procedural default. *See, e.g.*, *id.* at 515 (disagreeing with district court's holding that the factual basis of Prible's claims were unavailable "because Siegler suppressed 'notes memorializing meetings with [informants]' and the 'letters from several inmates . . . trying to inform on Prible").

## CONCLUSION

The Director respectfully requests that the Court deny Ayestas's motion for discovery.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
for Criminal Justice

EDWARD L. MARSHALL
Assistant Attorney General
Chief, Criminal Appeals Division

s/ Gwendolyn S. Vindell
GWENDOLYN S. VINDELL*
*Lead Attorney    Assistant Attorney General
State Bar No. 24088591
Southern ID No. 2202376

P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 936-1400
Facsimile No. (512) 936-1280

ATTORNEYS FOR RESPONDENT

# CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing pleading was served by placing same in the United States Mail, postage prepaid, on this the September 30, 2022, addressed to:

Sheri L. Johnson
Cornell University
School of Law
240 Myron Taylor Hall
Ithaca, NY 14853-4901

Lee Benjamin Kovarsky
Phillips Black, Inc.
727 East Dean Keeton Street
Jon 6.222
Austin, TX 78705

s/ Gwendolyn S. Vindell
GWENDOLYN S. VINDELL
Assistant Attorney General
