IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CARLOS MANUEL AYESTAS, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:09-CV-2999 |
| | § | |
| BOBBY LUMPKIN, Director, | § | (Death Penalty Case) |
| Texas Department of Criminal | § | |
| Justice, Correctional Institutions | § | |
| Division, | § | |
| Respondent. | § | |

## RESPONDENT LUMPKIN'S OBJECTIONS TO THE FEBRUARY 8, 2024 ORDER (ECF NO. 172) OF THE UNITED STATES MAGISTRATE JUDGE

Petitioner Carlos Manuel Ayestas, a death-sentenced Texas state inmate, is presently seeking federal habeas relief. In aid of that relief, Ayestas seeks thirty years of inmate demographic data from Respondent, the Director of the Correctional Institutions Division of the Texas Department of Criminal Justice (Director or TDCJ). At a hearing in September 2023, United States Magistrate Judge Christina A. Bryan[1] expressly acknowledged that this "timeframe is a big issue," "problematic," and "very broad." Ex. A, at 26–27, 29. Thus, the Court expressly left open the Director's scope and proportionality objections to the timeframe. *Id.* at 29–30. Yet several months later, when the

___

[1] The parties' dispute over the instant discovery requests was referred to Magistrate Judge Bryan in August 2023. ECF No. 145.

Director raised exactly those objections, Magistrate Judge Bryan refused to hear them because they had purportedly "already [been] addressed." Ex. B, at 4. This is clear error. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).

Compounding that error is Magistrate Judge Bryan's apparent belief that she did not need to consider the application of the Anti-Terrorism and Effective Death Penalty Act (AEDPA) to Ayestas's discovery requests simply because she was referred only a discovery dispute. Ex. B, at 16. Contravening clear Supreme Court precedent requiring consideration of AEDPA before granting factual development, Magistrate Judge Bryan dismissed the Director's arguments under AEPDA as speaking "in terms of admissibility, not in terms of discovery." *Id.* at 15–16. This ruling was both clear error and contrary to law. Fed. R. Civ. P. 72(a).

The Director objects to Magistrate Judge Bryan's order compelling TDCJ to produce the entire thirty years of data Ayestas has requested. Order 2, ECF No. 172 (Order). The Director respectfully requests that the Court: 1) stay the Order requiring production by February 28, 2024, pending disposition of these objections[2]; 2) vacate the Order; and 3) enter a protective order releasing the Director from any further discovery obligations in this case.

---

[2]   Ayestas has fourteen days to respond to the Director's objections. To permit him time to respond, and for this Court to consider and rule on the objections, the Director respectfully requests the Court stay Magistrate Judge Bryan's Order and

# OBJECTIONS

## I. Magistrate Judge Bryan's Refusal to Hear the Director's Specific Objections to the Timeframe of Ayestas's Discovery Request Is Clearly Erroneous.

From the beginning, this Court has acknowledged that Ayestas's requests for thirty years of information was overly broad. In the order granting Ayestas's motion under Rule 6 of the Rules Governing § 2254 Cases, the Court agreed with the Director that Ayestas sought "a broad range of documents[.]" ECF No. 131, at 16. The Court reiterated a month later that the Court had *not* "grant[ed] blanket approval for all discovery listed in petitioner's motion." ECF No. 137, at 3.

And in September 2023, Magistrate Judge Bryan agreed that the timeframe of information Ayestas sought was "problematic" in its breadth. Ex. A, at 26, 29. Magistrate Judge Bryan specifically inquired "whether for the selective prosecution claim, does it matter when you have a change of district attorney[.]" *Id*. at 26. Magistrate Judge Bryan acknowledged she didn't "know the answers to those things" and said the parties "should be talking about that." *Id*. Magistrate Judge Bryan explicitly noted she was "not yet overruling proportionality or scope objections" to the timeframe. *Id*. at 30. Indeed, she

---

permit the Director one week from the date of any order overruling the Director's objections or modifying the Order to produce the discovery to Ayestas.

invited the parties to seek another hearing "if there is a continued objection over the timeframe or other scope issues[.]" *Id.* at 29.

Over the next five months, the Director attempted to engage Ayestas on the specific questions posed by Magistrate Judge Bryan. *See* Director's Opp'n Mot. Compel 5–10, ECF No. 170 (Director's Opp'n). Ayestas refused. *Id.* Despite this—and despite the Director's vociferous objections to this Court's jurisdiction, Ayestas's statutory entitlement to merits-based discovery under 28 U.S.C. § 2254(e)(2), and Ayestas's entitlement to discovery under *United States v. Armstrong*, 517 U.S. 456 (1996)—the Director nevertheless produced six[3] years of confidential convicted offender data, from 1995 through 2000. *See* Director's Opp'n 13. And the Director has agreed to produce another three years of confidential data, from 1992 through 1994. *Id.* at 15–17.

Ayestas sought to compel production of the remaining twenty-one years of data. Ayestas's Mot. Compel 1–2, ECF No. 165 (Mot. Compel). The Director objected to the timeframe on precisely the basis Magistrate Judge Bryan left open—scope and proportionality. *See* Director's Opp'n 13 (arguing Ayestas's interrogatory request "exceeds the scope of discovery"). But contrary to her

---

[3]  The Director has previously stated he provided five years of inmate data, but this was a miscalculation on the Director's part, as the data provided comprised the entirety of the year 2000. In total, the Director provided Ayestas with six years of data and has ultimately agreed to provide nine years of data. Ayestas thus seeks production of an additional twenty-one years of data.

4

express statements at the September 2023 hearing, Magistrate Judge Bryan refused to hear, contemplate, or discuss the Director's specific objections to the timeframe because she had purportedly overruled them previously. *See* Ex. B, at 3–4. This was clear error, and the Court should vacate Magistrate Judge Bryan's order compelling production of all thirty years of data, consider the Director's scope objections, and sustain them. Alternatively, the Court should modify the Order to limit production to the time Johnny Holmes was the District Attorney (DA) of Harris County.

### A. The Order should be vacated because an additional twenty-one years of data exceeds the scope of discovery.

The central dispute identified by Magistrate Judge Bryan at the September 2023 hearing was who were the decisionmakers in Ayestas's case. *See* Ex. A, at 26. The answer should be obvious: Ayestas has the Harris County charging memorandum in which *four* people—Kelly Siegler, Casey O'Brien, Keno Henderson, and Johnny Holmes—signed and recommended that death be sought against him (Siegler memo). Indeed, Ayestas's is not the usual selective-prosecution case:[4] while the parties disagree on whether the memo is

---

[4] Ayestas has taken advantage of the unique posture of his case when it's suited him: he relied on the alleged direct evidence to escape *Armstrong*'s threshold requirement for discovery. *See* Reply in Supp. Mot. Disc. 16, ECF No. 130. Notably, however, in the last year since he was granted permission to seek discovery in contravention to *Armstrong*, Ayestas has gotten no closer to proving anything about the circumstances surrounding the creation of the Siegler memo. He did not even seek depositions of the relevant decisionmakers by this Court's discovery deadline.

direct evidence of *discrimination*, it's indisputable that the memo is direct evidence of who decided to pursue a death sentence in his case.

The Director's agreement to provide nine total years of data represents the entire time that the four decisionmakers *in Ayestas's case* were simultaneously in positions to make recommendations within Harris County about which defendants they would capitally prosecute. *See McCleskey v. Kemp*, 481 U.S. 279, 292 (1987) (to prevail on an Equal Protection claim, a petitioner "must prove that the decisionmakers *in his case* acted with discriminatory purpose"). Siegler became a felony court chief in 1992, *see* Director's Opp'n 16, thus marking the earliest point in which the four decisionmakers in Ayestas's case were *able* to make similar decisions in other cases. And Johnny Holmes retired in 2000, thus marking the latest point in which his "office" made capital charging decisions. Nine total years of data in which all four decisionmakers overlapped is the broadest conceivable timeframe[5] Ayestas needs to accomplish the goals he has identified: to scour

---

[5]   Ayestas's interrogatory request should be further limited to other cases in which his four decision-makers were involved in decision making. Indeed, Harris County is comprised of over twenty-five criminal district courts. Locations for Criminal Cts., Dist. Cts. of Harris Cnty., https://www.justex.net/location (last visited Feb. 19, 2024). And Kelly Siegler was not a court chief of all twenty-five courts. This means, within the nine years of data Ayestas will possess, there will be decisions in which Siegler was not at all involved. Those datapoints are thus entirely meaningless to prove *anything* about Siegler's pattern of decision-making. Yet Ayestas has never even attempted to identify other cases in which the four decisionmakers in his case

for similarly situated defendants who were *also* allegedly prosecuted for a discriminatory reason or to compile statistics about the pattern of decision-making by the decision-makers in his case. Mot. Compel 11–15.

But completely ignoring the "direct evidence" in his case, Ayestas seeks to conduct what can only be described as a fishing expedition. He insists he is entitled to an additional twenty-one years of confidential convicted offender data from 1979 (when Holmes started his tenure as DA) to 2008 (when Siegler left the Harris County DA's office). Of those twenty-one additional years, Siegler was not even a licensed attorney for the first eight, from 1979 to 1987. *See* Director's Opp'n 16 n.11. And while Siegler began her legal career in Harris County in 1987, she certainly was not handling, much less making, punishment recommendations in capital felony cases as a brand new or misdemeanor prosecutor. Thus, data from 1979 to 1992 has no conceivable bearing on her pattern of decision-making. Similarly, the last eight years of the timeframe Ayestas seeks, from 2000 to 2008, consists of data related to inmates charged by an entirely different DA. Such individuals are elected officials, and "decisions whether to prosecute and to charge necessarily are individualized and involve infinite factual variations[.]" *McCleskey*, 481 U.S.

---

were involved in making recommendations about charging decisions. And the Director is nevertheless not limiting his production on that basis.

at 295 n.15. Statistical data related to charging decisions under an entirely different administration clearly exceeds the scope of permissible discovery.

The Director raised these objections to the scope (i.e., relevance and proportionality [6]) of Ayestas's interrogatory request in his opposition to Ayestas's motion to compel. Director's Opp'n 13. And the Director asked Ayestas repeatedly to answer Magistrate Judge Bryan's question regarding whether it "matter[s] when you have a change of district attorney." Ex. A, at 26. Not only did Ayestas never answer that question, but Magistrate Judge Bryan mischaracterized the Director's opposition to Ayestas's motion to compel as raising arguments she had already addressed and refused to hear any of the Director's argument once the Director waived a burden objection. Ex. B, at 2–3. Indeed, Magistrate Judge Bryan went so far as to say she "really ha[d] no basis" to limit the timeframe when the Director had "given [her] no burden argument." *Id.* at 11. When the Director reminded the Court of her question at

---

[6] The Federal Rules of Civil Procedure define the "scope" of discovery as "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense *and* proportional to the needs of the case, considering" several specific proportionality factors. Fed. R. Civ. P. 26(b)(1) (emphasis added). Though Magistrate Judge Bryan overruled "*general* objections to the relevancy of Ayestas's discovery requests" in September 2023, *see* ECF No. 147, at 1 (emphasis added), she also left open specific scope and proportionality objections to the timeframe. Indeed, Magistrate Judge Bryan's questions regarding the importance of data under different DAs have nothing to do with TDCJ's burden of production, so those questions *must* have some meaning within the scope inquiry. Whether it's overbreadth or relevance, the Court should not have ignored the Director's arguments.

the September 2023 hearing, the Court dismissed the Director's argument as "a regurgitation of [his] brief," *id.* at 14, and engaged no further.

In other words, Magistrate Judge Bryan acted, contrary to her questions and statements at the September 2023 hearing, as if the scope of Ayestas's timeframe rose and fell entirely on how burdensome it would be for TDCJ to produce. This was clear error, and the Court should vacate the Order compelling production of an additional twenty-one years of data because the process for reaching such a decision was clearly erroneous, consider the Director's scope objections for the first time, and sustain them, as such data exceeds the scope of discovery for the reasons outlined in the Director's opposition. *See* Director's Opp'n 17–25.

### B. Alternatively, the Order should be modified to require production of only the years Holmes was DA—from 1979 to 2000.

Had Magistrate Judge Bryan engaged with the question she expressly left open at the September 2023 hearing, Ayestas would have argued as he did at the February 2024 hearing that the scope of discovery should not be limited to the four decisionmakers in his case because "the meaningful unit of analysis is the office, not pertinent decision makers within the office." Ex. B, at 17. Ayestas asserted that *McCleskey* and *Armstrong* supported his argument. *Id.* Having already decided that none of the Director's arguments mattered in the

9

face of no burden objection, Magistrate Judge Bryan did not invite discussion about Ayestas's outside-his-brief argument. *See id*. at 17–19.

Nevertheless, Ayestas's reading of Supreme Court precedent is wrong. *McCleskey* addressed an Equal Protection challenge to Georgia's death penalty statute and held that state-wide statistical analysis said nothing about whether "the decisionmakers in *his* case acted with discriminatory purpose." *McCleskey*, 481 U.S. at 291–93. If anything, *McCleskey* highlights why overbroad statistical analysis, spanning different elected officials making highly discretionary and individualized decisions, should *not* be permitted, not why Ayestas gets to ignore who the decision-makers were in his case. *See id*. at 294–95 & n.15 (comparing use of statistical analysis in venire-selection claims or Title VII cases to "the nature of the capital sentencing decision").

Similarly, in *Armstrong*, the federal district court's discovery order was limited to the production of *three* years of data, not the thirty Ayestas seeks. 517 U.S. at 459. There is no indication in *Armstrong* that the granted discovery spanned different appointed officials' terms or broadly encompassed data for the entire "office" of the United States Attorney for the Central District of California for anything near a thirty-year time period. *See generally id*. at 458–61. Indeed, *Armstrong*'s high threshold for entitlement to discovery was *designed* to prevent precisely the kind of circular argument Ayestas raises here: Ayestas was supposed to have *already* identified a similarly situated

10

person who was not prosecuted, not use discovery to fish for such a person. *Id.* at 468.

Ayestas's argument that it is the "office" that matters is absurd on its face because it has no limiting principle—there is no reason under his logic to even start with Holmes's tenure as DA, as the Harris County District Attorney's Office was clearly a prosecuting "office" long before and after Holmes. But if any "office" matters, it must be limited to Holmes's administration. Holmes is the *only* person whose "case-charging practices," Mot. Compel 10, can even be theoretically discerned from a broad twenty-one years of data, especially if Ayestas can arbitrarily ignore the other specific decision-makers in his case. It is Holmes's "office" that prosecuted people and, as even Ayestas has argued, his ultimate decision-making authority at issue. *See* Ex. B, at 18 (Ayestas arguing that "Holmes has ultimate control over whether the office seeks death in a capital case").

Consequently, if this Court disagrees with the Director's proposed narrowing of nine years of relevant data, *see supra* Section I.A, then, at a minimum, the Court should modify the Order to require production of confidential inmate data from January 1, 1979 through December 31, 2000.[7]

_____

[7] Should the Court compel production of additional years of data, the Director asks the Court to enter a new protective order prohibiting the disclosure of such data outside of this litigation. Though Magistrate Judge Bryan issued such an order on

11

## II. Magistrate Judge Bryan's Refusal to Consider AEDPA Was Both Clearly Erroneous and Contrary to Law.

When asked at the February 2024 hearing whether the Court's position was that "AEDPA . . . ha[s] no applicability at this stage anymore," Magistrate Judge Bryan refused to "take any position" on AEDPA's application to the instant discovery dispute. Ex. B, at 16. Magistrate Judge Bryan stated that she was "here to rule on a discovery dispute that was referred to" her, *id.*, necessarily implying that such a dispute is *not* occurring within the confines of AEDPA and instead only within the realm of traditional civil discovery. Indeed, the Court put a fine point on the issue when she dismissed the Director's arguments under AEDPA as speaking "in terms of admissibility, not in terms of discovery." *Id.* at 15–16. Magistrate Judge Bryan's refusal to consider AEDPA in a case governed by it is patently erroneous and contrary to clear Supreme Court precedent, compounding the error involved in using this Court's authority to compel production of the disputed discovery.

The Supreme Court could not have been clearer in its two recent cases governing factual development in habeas cases: "[A] federal court, in deciding whether to grant an evidentiary hearing or 'otherwise consider new evidence' under § 2254(e)(2), must *first* take into account" AEDPA's restrictions on

---

November 13, 2023, *see* ECF No. 155, Ayestas violated it with his first substantive filing in this Court, *see* Director's Opp'n 12.

12

developing merits-based evidence. *Shoop v. Twyford*, 596 U.S. 811, 820 (2022) (emphasis added); *Shinn v. Martinez Ramirez*, 596 U.S. 366, 371 (2022) (the standard to "expand the state-court record is a stringent one" and AEDPA generally bars all evidentiary hearings in "all but the[] extraordinary cases"). "Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Williams v. Taylor*, 529 U.S. 420, 437 (2000). Indeed, this Court's order granting Ayestas permission to seek discovery contemplated that both Rule 6 and AEDPA had continuing application to the discovery dispute referred to Magistrate Judge Bryan, acknowledging on its face that Ayestas's discovery requests were broad. *See* ECF No. 131, at 16. And the Court re-confirmed AEDPA's applicability when it later clarified it was *not* granting Ayestas blanket approval for all the discovery he listed. *See* ECF No. 137, at 3.

There is no question that the data Ayestas is asking this Court to compel is merits-based evidence—this evidence is entirely unrelated to the question of diligence under § 2254(e)(2) or any other procedural barrier to relief. In his opposition to Ayestas's motion to compel, the Director identified three procedural hurdles Ayestas must overcome before the Court could, or should, order merits-based evidence production. First, Ayestas's argument that he is not required to make the *Armstrong* showing is barred by nonretroactivity principles because the Supreme Court has never held that direct evidence of

13

discrimination obviates the similarly-situated requirement. Director's Opp'n 23. Second, this Court has *never* made the determination that § 2254(e)(2) is not triggered, which is necessary to permit, much less compel, development of merits-based evidence. *See id.* at 23–24. Third, Ayestas explicitly disclaimed reliance on discrimination-by-statistical-inference in the state courts when he pressed his Eighth and Fourteenth Amendment claims there. *Id.* at 24.[8] This means Ayestas's express justification for thirty years of data, i.e., to conduct statistical analysis, could only go to a discrimination-by-inference claim that is unexhausted and cannot be considered by this Court. *Id.*

Contravening the Supreme Court's precedent that these procedural issues must *first* be considered before a federal court has the authority to permit factual development of merits-based evidence, Magistrate Judge Bryan

---

[8]  At the February 2024 hearing, both Ayestas and Magistrate Judge Bryan focused on Ayestas's use of the word "only" when Ayestas wrote to the state courts that his selective-prosecution claim was "straightforward," "not one where the claimant is asking a court only to draw inferences from raw statistics disparities or complex data analyses." *See* Ex. B, at 18–19; *see also* Director's Opp'n 24 (quoting Director's Opp'n Ex. E, at 21–22). This makes no sense—whether Ayestas *intended* to present corroborating statistics to support his claim does not mean he *actually presented* those statistics to the state courts when he raised the claim to them, as he is required to do under AEDPA. To the contrary, he explicitly disclaimed to the state courts that his claims relied on statistical inference *at all*; instead, he believed the face of the memo sufficiently proved discrimination. *See* Director's Opp'n Ex. E, at 25 ("Nor does [Ayestas's Eighth Amendment claim] ask the Court 'to accept the likelihood allegedly shown by [a statistical study] as the constitutional measure of an unacceptable risk of racial prejudice influencing capital sentencing decisions.' *Rather*, it relies upon invidiousness *explicit on the face of the memo*." (emphasis added)). Subjective intent is not enough to exhaust a claim.

14

refused to hear these arguments at the February 2024 hearing. Magistrate Judge Bryan incorrectly characterized the Director's nonretroactivity argument as having been previously raised in the Director's answer, *see* Ex. B, at 14–15, when it was not, *see* Director's Answer 49–54 (arguing Ayestas's claim was barred by nonretroactivity principles "because it is based on his status as an unlawful alien").[9] And she took no position on what the Court might do with the remaining arguments, believing those things went to admissibility, not discovery. *Id*. at 15–16. While that may be how a normal civil discovery case works, AEDPA does not so permit. Magistrate Judge Bryan's refusal to consider AEDPA's application to the instant discovery dispute was clear error and contrary to law.

## CONCLUSION

The Director respectfully requests that this Court vacate Magistrate Judge Bryan's order compelling production of thirty years of data and enter a protective order releasing the Director from further discovery obligations in this case. Alternatively, the Director requests that the Court modify the Order to require production of data from only 1979 to 2000.

---

[9] Ayestas did not even argue that his so-called direct evidence obviated *Armstrong*'s threshold similarly-situated requirement until his reply in support of his motion for discovery. *See* Reply in Supp. Mot. Disc. 16, ECF No. 130. Notably, this brief was filed seven months after the Director filed his answer and motion for summary judgment, so the Director had no opportunity to respond, much less make a nonretroactivity argument based on this.

15

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
for Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

*Lead Counsel

s/ Gwendolyn S. Vindell
GWENDOLYN S. VINDELL*
Assistant Attorney General
State Bar No. 24088591
Southern ID No. 2202376

P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1600
(512) 320-8132 (Fax)
E-mail: gwendolyn.vindell2@oag.texas.gov

ATTORNEYS FOR RESPONDENT

**CERTIFICATE OF SERVICE**

I do hereby certify that on February 21, 2024, a copy of the foregoing was filed in the CM/ECF system, which will serve all registered users in this case:

Sheri L. Johnson
Cornell University
School of Law
240 Myron Taylor Hall
Ithaca, NY 14853-4901

Lee Benjamin Kovarsky
Phillips Black, Inc.
727 East Dean Keeton Street
Jon 6.222
Austin, TX 78705

s/ Gwendolyn S. Vindell
GWENDOLYN S. VINDELL
Assistant Attorney General
