IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CARLOS MANUEL AYESTAS, | § | |
|     Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:09-CV-2999 |
| | § | |
| BOBBY LUMPKIN, Director, | § | (Death Penalty Case) |
| Texas Department of Criminal | § | |
| Justice, Correctional Institutions | § | |
| Division, | § | |
|     Respondent. | § | |

**RESPONDENT'S OPPOSITION TO AYESTAS'S MOTION TO COMPEL
PRODUCTION OF VICTIM DEMOGRAPHIC INFORMATION OR,
ALTERNATIVELY, MOTION FOR DISCOVERY**

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
For Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

GWENDOLYN S. VINDELL
Assistant Attorney General
State Bar No. 24088591
Southern ID No. 2202376
   *Counsel of Record*

Post Office Box 12548, Capitol Station
Austin, Texas 78711
Tel.: (512) 936-1400
Fax: (512) 320-8132
Email: *gwendolyn.vindell2@oag.texas.gov*

*Counsel for Respondent*

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. i

INDEX OF AUTHORITES ........................................................................................ ii

OPPOSITION ............................................................................................................. 1

BACKGROUND RELATED TO AYESTAS'S VICTIM INFORMATION ROG .............. 2

I.    Initial Discovery Litigation Related to the Victim Information ............................ 2

II.   Recent Developments ............................................................................................ 5

STANDARD OF REVIEW ......................................................................................... 8

ARGUMENT ............................................................................................................. 9

I.    Ayestas's New Discovery Requests Exceed the Scope of This Court's Rule 6 Order and are Untimely, and He has Not Shown Good Cause for the Discovery He Seeks ................................................................................................................. 9

II.   Ayestas's New Discovery Requests Exceed the Scope of Discovery ..................... 13

III.  If the Court Denies Ayestas's Motion, It Should Enter a Protective Order ....... 14

CONCLUSION ........................................................................................................ 15

CERTIFICATE OF SERVICE ................................................................................... 16

## INDEX OF AUTHORITES

**Cases**          **Page**

*Crawford-El v. Britton*, 523 U.S. 574 (1998) .................................................................. 8

*Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258 (5th Cir. 2011) ...................... 8, 9

*Harris v. Nelson*, 394 U.S. 286 (1969) .......................................................................... 11

*Kennicott v. Sandia Corp.*, 327 F.R.D. 454 (D. New Mex. 2018) .................................. 13

*McCleskey v. Kemp*, 481 U.S. 279 (1987) ..................................................................... 10

*Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151 (10th Cir. 2010) ................ 9

*Murphy v. Johnson*, 205 F.3d 809 (5th Cir. 2000) ......................................................... 12

*Rivera v. DJO, LLC*, No. 11-1119, 2012 WL 3860744 (D.N.M. Aug. 27, 2012) ............. 14

*Romero v. Beard*, No. CIV.A. 08-0528, 2011 WL 3862317 (E.D. Pa. Aug. 31, 2011) ..... 11

*Shinn v. Martinez Ramirez*, 596 U.S. 366 (2022) .......................................................... 11

*Shoop v. Twyford*, 596 U.S. 811 (2022) ......................................................................... 11

*Tottenham v. Trans World Gaming Corp.*, No. 00-7697, 2002 WL 1967023 (S.D.N.Y. 2002) ............................................................................................................................ 14

*Treadway v. Otero*, No. 2:19-CV-244, 2020 WL 602225 (S.D. Tex. Feb. 7, 2020) .......... 14

*United States v. Armstrong*, 517 U.S. 456 (1996) .......................................................... 12

**Rules**

Fed. R. Civ. P. 26(b) .................................................................................................. 9, 11

Fed. R. Civ. P. 26(b)(1) ........................................................................................ 9, 11, 13

Fed. R. Civ. P. 26(b)(2)(C)(ii) ........................................................................................... 9

Fed. R. Civ. P. 26(c) ....................................................................................................... 14

Fed. R. Civ. P. 37(a)(5)(B) ........................................................................................ 1, 14

## OPPOSITION

Petitioner Carlos Manual Ayestas, a Texas state inmate sentenced to death, is seeking federal habeas relief. Ayestas was granted permission to seek discovery nearly two years ago, and he served his discovery requests on the relevant parties fifteen months ago. In that time, Ayestas has gotten no closer to answering the key factual questions surrounding the supposedly direct evidence of discrimination—the Siegler memorandum—upon which his Equal Protection and Eighth Amendment claims are based. Instead, he has abused the discovery process to develop statistical data regarding, first, the defendant demographic information he was granted leave to seek and, now, victim demographic information. *See* Pet'r's Mot. Compel Prod. Victim Demographic Info., ECF No. 194 (Mot.). Even though Ayestas has known the Director's position regarding the victim data for over a year—and even though Ayestas released the Director from objections and response deadlines associated with his dilatory, untimely victim-related requests for interrogatories (ROG)—Ayestas now moves to compel production of the victim data. Mot. 1.

But in this habeas case Ayestas must seek leave to obtain discovery, *see* Rule 6 of the Rules Governing § 2254 Cases, and he did not receive permission from this Court to serve ROGs on Respondent, the Director of the Texas Department of Criminal Justice, Criminal Institutions Division (Director or TDCJ), related to victim information. Further, Ayestas violated this Court's scheduling order when he served the new victim-related ROGs on November 7, 2023; they are thus untimely. Absent good faith on his part, Ayestas's motion to compel data should be denied, and the Court should enter a protective order limiting future discovery requests. *See* Fed. R. Civ. P. 37(a)(5)(B).

**BACKGROUND RELATED TO AYESTAS'S VICTIM INFORMATION ROG[1]**

**I.   Initial Discovery Litigation Related to the Victim Information**

On March 16, 2023, this Court granted Ayestas permission to seek discovery under Rule 6 of the Rules Governing § 2254 Cases. *See* ECF No. 131, at 16 (Rule 6 Order). Among his requests, Ayestas sought a list "of any and all Harris County defendants" charged with capital murder between 1979 and 2008, including their "race, ethnicity, national origin, alienage (citizenship), and immigration status." ECF No. 126, at 3–5. Ayestas did not ask for permission to serve ROGs on the Director, nor did he comply with Rule 6's requirement that he "must also include any proposed interrogatories" with his discovery request. *See* Rule 6(b), 28 U.S.C. foll. § 2254. Victim-related information was also not mentioned or argued anywhere in Ayestas's Rule 6 motion. *See generally* ECF No. 126.

When Ayestas failed to act on the Court's grant of discovery, the Court entered a scheduling order requiring Ayestas to serve his discovery requests on TDCJ and any non-party by May 8, 2023. ECF No. 137, at 3. After TDCJ unsuccessfully sought mandamus relief in the Fifth Circuit, the Court imposed further deadlines requiring Ayestas to serve "any discovery requests authorized by this Court's prior orders *no later than* August 7, 2023." *See* ECF No. 142, at 1 (emphasis added). On August 7, 2023, Ayestas served the Director with eighteen requests for production of documents (RFP) and seven ROGs. *See* ECF No. 143. None of his seven ROGs referenced victim-related

---

[1] As Ayestas notes, *see* Mot. 2 n.1, the parties have thoroughly briefed the lengthy procedural history in this case, *see, e.g.,* Director's Opp'n Mot Compel 3–12, ECF No. 170, so the Director will focus his procedural recitation on the specific victim data at issue here.

information, instead requesting solely identification of *defendant*-related demographic information. *See id.* at 19–24 (requesting identification of all Harris County defendants charged with murder or capital murder from 1979 to 2008, along with their "race, ethnicity, national origin, and citizenship status").

A hearing was held on September 18, 2023, regarding the parties' disputes as to that August 7 discovery request. *See* ECF No. 147, at 1. Per the Court's order, *see id.* at 2, the parties met and conferred via Zoom on October 17, 2023. But during that conference—when the parties were supposed to be narrowing the disputes addressed at the September 18 hearing—Ayestas attempted to expand the scope of his requests and asked whether TDCJ tracked information on victim age and victim gender. *See* ECF No. 169, at 15 ("You also asked about additional categories of inmate information not listed in ROG No. 3: you asked if TDCJ tracked information on victim age and victim gender."). When asked whether there were any other new categories of information he would like to inquire about, Ayestas replied that undersigned counsel could just tell him everything TDCJ has in its database, and Ayestas could tell TDCJ if he wanted it. When undersigned counsel rejected that fishing expedition, Ayestas settled on victim information.

Ayestas ignored the Director's further requests to meet-and-confer, so the Director wrote to Ayestas on October 27, 2023, that, as relevant here, he would not provide the new requested victim information because Ayestas's request was both untimely and outside the scope of what he obtained leave to seek. ECF No. 169, at 17. In response, Ayestas argued he had "sought victim demographic information from the beginning" because he requested case files and charging memorandum, and he sought

production of those documents on August 7, 2023. ECF No. 169, at 47. He stated he sought those case files and memoranda "in part to obtain victim information." *Id.* Ayestas thus argued that his requests were neither untimely nor out of scope, but since he believed his "August 7, 2023 requests were *continuing in nature*," *id.* at 48 (emphasis added), he served the Director with new victim-related ROGs on November 14, 2023, *see* ECF No. 158-4 (November 14 ROGs). These new ROGs were even more expansive than merely requesting new victim information—in addition to the information TDCJ had already provided, they requested identification of defendant "case disposition, offense report number, case number, and filing date of the prosecution of the charged murder." *Id.* at 6. And they requested "the murder victim's (or victims') name, age, sex, and any other information concerning the victim that was included in the Pen Packet for the defendant(s)." *Id.*

On November 20, 2023, the Director moved to, *inter alia*, enforce the court's discovery orders specifically as it related to Ayestas's November 14 ROGs. *See* ECF No. 158, at 10–12. The Director argued that Ayestas's November 14 ROGs were untimely and outside the scope of this Court's Rule 6 order. *See id.* The Court denied the Director's motion, suggesting the Director could "request a hearing if counsel deems one necessary." ECF No. 159, at 2. The Court also noted the Director's concerns that Ayestas could "extend the discovery period indefinitely" but stated that it expected "all parties to proceed in this matter expeditiously and in good faith." *Id.*

On November 28, 2023, the Director reiterated his Rule 6 and timeliness objections to the November 7 ROGs for the third time. *See* ECF No. 169, at 60. But the

4

Director also noted he would "assert [Federal Rules of Civil Procedure] objections/responses" to the ROGs by the deadline provided by those Rules. *Id*.

Consistent with the Court's order, *see* ECF No. 159, at 2, the Director then informed Ayestas that he intended to seek a hearing before the Court regarding the November 7 ROGs, specifically to address the timeliness and Rule 6 arguments. *See* Ex. A, at 2. With a December 14, 2023 deadline to object or respond to the new ROGs, *id*. at 1, the Director requested an urgent meet-and-confer with Ayestas, *id*. at 2.

The parties met regarding the Director's request on December 4, 2023. *See* ECF No. 160, at 2. During that conference, Ayestas informed the Director that, though he was not withdrawing the November 7 ROGs, he was no longer pursuing the victim-related information contained therein and was thus *releasing* the Director from his December 14 objection/response deadline. *See id*.; *see also* ECF No. 169, at 55. Relying on Ayestas's representations, the Director did not seek a hearing before the Court and did not file objections or responses by the December 14 deadline. *See* Ex. B, at 1.

**II.    Recent Developments**

The parties then litigated Ayestas's timely discovery requests, and in March 2024, the Director produced spreadsheets of defendant demographic information for the entire timeframe. Aside from obtaining funds for an expert, *see* ECF Nos. 185, 186, nothing else occurred in the case for four months, until on July 1, 2024, Ayestas inquired with the Director whether he would now be willing to produce the victim data. *See* Ex. C, at 5. Undersigned counsel sought to clarify what information Ayestas was seeking, given Ayestas had obtained victim name and age from the Harris County District Attorney's Office (Harris County) before December 2023. *See id*. at 4. Undersigned

counsel also informed Ayestas that a change at the General Counsel's Office at TDCJ might mean some time to investigate would be required. *Id*. Still different from his prior victim information requests—which focused on age, gender, and name—Ayestas stated he was seeking that information *and* victim address and zip code. *Id*. at 3.

On July 18, 2024, the Director informed Ayestas that he was investigating what information TDCJ had in its database since a lack of such information could avoid litigation surrounding the threshold Rule 6 and timeliness issues. *See id*. at 2. Eight days later, undersigned counsel requested a meet-and-confer to explain the fruits of her investigation. *Id*. at 1.

The parties met virtually on July 31, 2024. During that conference, undersigned counsel informed Ayestas that TDCJ did not track in its database any information related to victim address and zip code. As it related to victim race and gender, undersigned counsel stated TDCJ had no policy of tracking that information; instead, a freeform field within its database sometimes contained offense information, which in turn contained victim race or gender. Because TDCJ had no policy about what information is entered into that freeform field, however, it had no idea who entered the information, where the information was obtained, or why it was entered. As such, the database field was only populated with information about sixty percent of the time, and not all those populated entries relate to offense or victim information. More importantly, TDCJ cannot verify whether the victim information in that field pertains to the victim of the *murder*, as opposed to other convictions the inmate entered TDCJ with or earned while there. Undersigned counsel informed Ayestas that, given those limitations on the

6

data, and given the previously stated Rule 6 and timeliness objections, the Director would ask Ayestas to seek a court order.

A week later, Ayestas noticed this Court of his discovery efforts and informed the Court a motion compelling production of the relevant victim data from the Director and Harris County was likely forthcoming. *See* ECF No. 193. In that notice, Ayestas revealed that, though he was aware the Director believed his victim-related discovery requests were outside the scope of the Court's discovery grant and were untimely since October 2023, and though he relieved the Director of his obligations to the November 7 ROGs in early December 2023, he apparently made no effort to obtain that data via other means until April 23, 2024, when he served an open records request on the Harris County District Clerk's Office. *Id*. at 2. Moreover, he did not attempt to ask Harris County for the same victim information until a month after that. *Id*. And though, upon information and belief, Harris County has repeatedly stated it would provide Ayestas defendant case files if he would identify specific defendants whose files he would like—the same case files he claims he wanted in part to obtain victim information—he has not, to the Director's knowledge, done so.

Still, Ayestas did nothing further in the case for another six weeks, and his only effort then was to ask the Director if he would amend the protective order so he could provide Harris County with TDCJ's defendant data spreadsheets "so that they have all of the information that they may need to collect and produce certain defendant case files[.]" *See* Ex. D, at 4. Upon further inquiry, including several telephone calls, the Director learned Ayestas had not once spoken to Harris County about the need for the confidential data. *See, e.g., id*. at 1 ("Neither party has knowledge of which specific

7

[Harris County] employees would be searching through defendant files[.]"). During a final call on the matter on October 11, 2024, undersigned counsel informed Ayestas that Harris County had reaffirmed it would pull case files for Ayestas if he provided a list of cases and that it did not need TDCJ's confidential information since all it required was a defendant's identification number. Ayestas agreed that amendment of the protective order no longer seemed necessary, but he would consult with his experts to verify and would follow up with undersigned counsel soon.

Instead, and without any further communication, Ayestas filed the instant motion to compel the victim data several weeks later. To the undersigned's knowledge, Ayestas has still made no efforts to obtain the defendant case files. Ayestas's motion was referred back to Magistrate Judge Christina Bryan,[2] *see* ECF No. 195, and this response follows.

## STANDARD OF REVIEW

The Federal Rules "vest[] the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). The court may "limit the time, place, and manner of discovery, or even bar discovery altogether on certain subjects[.]" *Id.* at 599. "[D]istrict courts must be mindful of the limitations placed on the frequency and extent of discovery under the federal rules, particularly Rule 26(b)." *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011). This includes limiting "otherwise permissible discovery if it determines that 'the burden or expense of the proposed discovery outweighs its likely

---

[2] On July 24, 2024, the Court terminated its prior order referring the case to Magistrate Judge Bryan because "previously disputed discovery materials have been produced and additional discovery efforts are moving forward." *See* ECF No. 192.

benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.'" *Id.* (quoting former Fed. R. Civ. P. 26(b)(2)(C)(ii), now Fed. R. Civ. P. 26(b)(1)). And "district courts must monitor discovery closely" in those cases where the statutory framework limits judicial review of certain types of claims. *See id.* (discussing limitations on judicial review of administrative agency decisions under Employee Retirement Income Security Act of 1974 (ERISA)). "Rule 26(b) 'has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition.'" *Id.* (quoting *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010)). Courts must thus "guard against abusive discovery." *Id.*

## ARGUMENT

**I. Ayestas's New Discovery Requests Exceed the Scope of This Court's Rule 6 Order and are Untimely, and He has Not Shown Good Cause for the Discovery He Seeks.**

Ayestas's November 7 ROGs are outside the scope of this Court's Rule 6 Order and violate this Court's scheduling order, so his motion to compel the production of the victim information should be denied. Ayestas resists this conclusion by arguing: 1) he has always sought victim demographic information "[f]rom the inception of discovery in this litigation" because he sought charging memoranda and case files, which may include victim information, *see* Mot. 11–12; and 2) his August 7, 2023 discovery requests included charging memoranda and case files, so he is free to reframe and serve new discovery requests after the Court's deadline so long as the information he seeks may be contained within those documents, *see id.* at 12–13. Ayestas alternatively argues that, if his November 7 ROGs are considered outside the scope of the Rule 6 Order and

9

untimely, he should be granted leave to seek this discovery. *Id*. at 13–15. Ayestas is wrong, and his motion to compel and motion for discovery should be denied for several reasons.

*First*, at no point in his ten-page motion for discovery under Rule 6 did he reference victim demographic data. *See generally* ECF No. 126. Indeed, Ayestas makes a full-throated argument for why such victim data is now crucial to his ability to meet his similarly situated burden via a statistical analysis. *See* Mot. 8–9 (citing *McCleskey v. Kemp*, 481 U.S. 279 (1987)). Though he disclaimed relying on such an analysis in the state courts, *see* ECF No. 28, at 24, he now claims this victim information—which he did not actively seek from any party for nearly half a year after knowing the Director believed it outside the scope of discovery—is "in line with best statistical practice since *McCleskey*," *see* Mot. 9. Ayestas was free to make this argument in his motion for discovery under Rule 6, but he did not, and he never once mentioned the victims at all. Indeed, he did not even comply with Rule 6(b)'s requirements to propose interrogatories with his request, so it cannot be said that the Court's Rule 6 Order authorized ROGs in perpetuity so long as Ayestas can conceive of any piece of data that may be contained within the voluminous documents he sought, particularly when the only specific information he ever requested was defendant demographic information.

*Second*, this Court ordered Ayestas to serve any and all discovery requests by August 7, 2023, and Ayestas's November 7 ROGs violated the Court's order. *See* ECF No. 142. Ayestas could have framed his timely discovery requests in terms of victim data if that's what he wanted and if he believed the Court had already granted him permission to do so, but it is clear he did not even conceive of needing that information

10

until he decided to explore the entire universe of information TDCJ might have in its database at the court-ordered meet-and-confer in October 2023. That's likely why none of his seven August 7 ROGs mentioned anything other than defendant demographic data, i.e., race, ethnicity, national origin, and citizenship. Ayestas's November 7 ROGs were undoubtedly new, and they were therefore untimely.

*Third*, Ayestas's suggestion that his motion for discovery and August 7 discovery requests are "continuing in nature," ECF No. 169, at 47, is fundamentally incompatible with AEDPA's strict limitations on evidentiary development. *See Harris v. Nelson*, 394 U.S. 286, 297 (1969) (noting that while Rule 26(b) "has been generously construed to provide a great deal of latitude for discovery," "[s]uch a broad-ranging preliminary inquiry is neither necessary nor appropriate in the context of a habeas proceeding"); *see also Shinn v. Martinez Ramirez*, 596 U.S. 366, 371 (2022) ("Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the standard to expand the state-court record is a stringent one. . . . In all but the[] [most] extraordinary cases, AEDPA 'bars evidentiary hearings in federal habeas proceedings initiated by state prisoners.'"); *Shoop v. Twyford*, 596 U.S. 811, 821 (2022) ("A writ that enables a prisoner to gather evidence that would not be admissible would 'needlessly prolong' resolution of the federal habeas case and frustrate the 'State's interest[] in finality.'" (citations omitted)); *Romero v. Beard*, No. CIV.A. 08-0528, 2011 WL 3862317, at *4 (E.D. Pa. Aug. 31, 2011) ("Because of the nature of federal habeas corpus, the expansive construction of relevance in civil cases-to embrace all information 'reasonably calculated to lead to the discovery of admissible evidence,' as specified in Federal Rule of Civil Procedure 26(b)(1), is not appropriate.").

*Fourth*, Ayestas has not shown good cause for the discovery he seeks for all the reasons the Director has previously argued, *see* Director's Opp'n Mot. Disc. 15–25, but in particular here, Ayestas has not established a prima facie case for relief in light of *United States v. Armstrong*, 517 U.S. 456, 465 (1996).[3] Indeed, of the various issues of fact this Court identified when it denied the Director's motion for summary judgment, Ayestas has developed no evidence addressing those issues. *See, e.g.*, ECF No. 131, at 10 (acknowledging that, while true that undocumented immigrants are by definition not citizens, it is at least as likely that the memo referred to Ayestas's ethnicity or national origin as immigration status), 12–13 (noting the record does not establish who struck through the statement, when it was struck through, the meaning of the strike, what role the other three decisionmakers in Ayestas's case played, and whether his alienage was a factor when the District Attorney handwrote a note authorizing plea agreements for non-triggerman accomplices of the same citizenship status). These questions were the impetus behind Ayestas seeking discovery in the first place, *see* Director's Opp'n Mot. Disc. 20–26, and no justification is provided for his continued fishing expedition into statistical data that has no bearing on those questions, particularly when he argued the memo was direct evidence of discrimination *on its face. Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000) ("Simply put, Rule 6 does not authorize fishing expeditions.").

In short, Ayestas has for the last two years abused the discovery process to uncover pointless information that has done nothing to move the case forward. His

---

[3] The Director acknowledges that, despite Ayestas's admissions that he's never met *Armstrong*'s similarly situated requirement, this Court has overruled the Director's arguments on this point on several occasions. The Director preserves this point for appeal, however.

November 7 ROGs were not encompassed within his motion for discovery, were served in violation of the Court's orders, and do not establish good cause for continuing this years-long fishing expedition. Ayestas's motion to compel should be denied.

## II. Ayestas's New Discovery Requests Exceed the Scope of Discovery.

Assuming Ayestas's discovery requests were appropriately within the Court's Rule 6 order and are not untimely, Ayestas's instant motion to compel is premature because he absolved the Director from objecting or responding to his November 7 ROGs, and the Director has thus never had an opportunity to raise objections under the Federal Rules of Civil Procedure. Nonetheless, the Director does not raise a burden objection to the production of this data but, for preservation purposes, continues to object to the relevance and scope of Ayestas's instant requests. *See* ECF No. 170, at 21–25.

Specifically, the Director continues to assert that, in light of Ayestas's consistent failure to identify any similarly situated defendant as required under *Armstrong*, thirty-years' worth of *victim* data clearly exceeds the scope of relevant discovery. This is particularly true given the limitations of the data at issue here—TDCJ has *no* policy regarding tracking this data; it therefore has no idea who, how, or why it is sometimes entered into its database; and it is unknown whether the victim information is even related to the victim of the *murder* at issue. This victim information not only doesn't move the needle, but it has the potential to hurt or confuse the issues. *See* Fed. R. Civ. P. 26(b)(1), advisory committee's note to 2000 amendment (courts "ha[ve] the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings"); *see also Kennicott v. Sandia Corp.*, 327

13

F.R.D. 454, 467 (D. New Mex. 2018) ("The 'two effects' of the 2000 amendments might, thus, be only one effect: directing district judges to roll up their sleeves and manage discovery, and to do so on a relevance basis.").

Ayestas has continued to engage on a fishing expedition that has no limits—so long as he can conceive of *any* piece of data contained in case files he's never actually tried to obtain, there is no end to the discovery Ayestas will seek. *See Rivera v. DJO, LLC*, No. 11-1119, 2012 WL 3860744, at *1 (D.N.M. Aug. 27, 2012) ("Discovery . . . is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support." (quoting *Tottenham v. Trans World Gaming Corp.*, No. 00-7697, 2002 WL 1967023, at *2 (S.D.N.Y. 2002))). This fishing expedition was clear once Ayestas—at a court-ordered meet-and-confer intended to narrow the disputes—asked TDCJ to just tell him every field of information it contains in its database, on the off-chance Ayestas might be able to make an argument that such information may also appear somewhere in a case file he requested in August 2023. The Director thus preserves for appeal his arguments that Ayestas's instant discovery requests, like his prior and likely future ones, exceed the scope of discovery, and his motion to compel should be thus denied.

### III.  If the Court Denies Ayestas's Motion, It Should Enter a Protective Order.

Should the Court deny Ayestas's motion to compel, the Court has the authority to issue—and the Director respectfully requests it issue—a protective order. *See* Fed. R. Civ. P. 37(a)(5)(B); *see also Treadway v. Otero*, No. 2:19-CV-244, 2020 WL 602225, at *4 (S.D. Tex. Feb. 7, 2020). A protective order is appropriate if good cause exists to protect the Director from annoyance, oppression, undue burden, or expense. Fed. R. Civ. P.

26(c). If the Court finds good cause exists, it may forbid disclosure of discovery, specify the term of time for disclosure or discovery, and/or limit the scope of discovery. Given Ayestas's numerous discovery abuses in this case generally and as it applies to the victim information specifically, the Director respectfully requests the Court enter a protective order to protect the Director from any further discovery in this case.

## CONCLUSION

The Director respectfully requests that the Court deny Ayestas's motion to compel discovery and enter a protective order.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
for Criminal Justice

EDWARD L. MARSHALL
Assistant Attorney General
Chief, Criminal Appeals Division

s/ Gwendolyn S. Vindell
GWENDOLYN S. VINDELL*
*Lead Attorney        Assistant Attorney General
State Bar No. 24088591
Southern ID No. 2202376

P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 936-1400
Facsimile No. (512) 936-1280

ATTORNEYS FOR RESPONDENT

15

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing pleading was served by placing same in the United States Mail, postage prepaid, on this the November 20, 2024, addressed to:

Sheri L. Johnson
Cornell University
School of Law
240 Myron Taylor Hall
Ithaca, NY 14853-4901

Lee Benjamin Kovarsky
Phillips Black, Inc.
727 East Dean Keeton Street
Jon 6.222
Austin, TX 78705

                                                s/ Gwendolyn S. Vindell
                                                GWENDOLYN S. VINDELL
                                                Assistant Attorney General